PAUL J. PASCUZZI, State Bar No. 148810
JASON E. RIOS, State Bar No. 190086
THOMAS R. PHINNEY, State Bar No. 159435
FELDERSTEIN FITZGERALD
WILLOUGHBY PASCUZZI & RIOS LLP
500 Capitol Mall, Suite 2250
Sacramento, CA 95814
Telephone: (916) 329-7400
Facsimile: (916) 329-7435
ppascuzzi@ffwplaw.com
jrios@ffwplaw.com
tphinney@ffwplaw.com

Proposed Attorneys for
The Roman Catholic Bishop of Santa Rosa

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SANTA ROSA DIVISION

| | |
|---|---|
| In re:<br><br>THE ROMAN CATHOLIC BISHOP OF SANTA ROSA,<br><br>        Debtor-In-Possession. | CASE NO. 23-10113<br><br>Chapter 11<br><br>Date: March 16, 2023<br>Time: 1:00 p.m.<br>Location: 1300 Clay Street, Ctrm. 215<br>           Oakland, CA<br>           [In person or via Zoom]<br>Judge: Hon. Charles Novack<br><br>Order Shortening Time |

**DECLARATION OF DEACON JOE OBERTING IN SUPPORT OF MOTION FOR ORDER (1) AUTHORIZING CONTINUED USE OF EXISTING CASH MANAGEMENT SYSTEM, OPERATIONAL BANK ACCOUNTS AND RELATED INVESTMENT ACCOUNTS; (2) EXCUSING COMPLIANCE WITH SECTION 345(b); AND (3) AUTHORIZING CONTINUED USE OF CURRENT INVESTMENT POLICY**

I, Deacon Joe Oberting, hereby declare under penalty of perjury as follows:

1.      I am the Chief Financial Officer ("CFO") of The Roman Catholic Bishop of Santa Rosa ("RCBSR"), the Debtor and Debtor in Possession herein (the "Debtor in Possession"). As the CFO, I am generally familiar with the RCBSR's day-to-day operations, business affairs and books and records.

2.      On March 13, 2023 (the "Petition Date"), the RCBSR filed its voluntary petition for relief under chapter 11 of the United States Bankruptcy Code (the "Bankruptcy Code").

J. OBERTING DECLARATION IN SUPPORT OF
MOTION FOR ORDER AUTHORIZING CONTINUED USE
OF EXISTING CASH MANAGEMENT SYSTEM, ETC.
- 1 -

Case: 23-10113   Doc# 5-1   Filed: 03/13/23   Entered: 03/13/23 11:56:56   Page 1 of 25

3.     All facts set forth in this Declaration are based on my personal knowledge, upon information supplied to me by people who report to me, upon information supplied to me by RCBSR's professionals and consultants, upon my review of relevant documents, or upon my opinion based on my experience and knowledge with respect to RCBSR's operations, financial condition and related business issues. The documents submitted herewith, referenced herein or otherwise relied upon by me for purposes of this Declaration are the business records of RCBSR, prepared and kept in ordinary and regularly conducted business activity of RCBSR, and used by me for those purposes. If I were called upon to testify, I could and would testify competently to the facts set forth herein, and I am authorized to submit this Declaration on behalf of RCBSR.

4.     I make this declaration in support of the Debtor in Possession's Motion for Order (1) Authorizing Continued Use of Existing Cash Management System, Operational Bank Accounts, and Related Investment Account, (2) Excusing Compliance with Section 345(b), and (3) Authorizing Continued Use of Current Investment Policy (the "Motion"). All terms not otherwise defined herein have the same meaning as set forth in the Motion.

5.     The RCBSR filed this case in order to reorganize its financial affairs pursuant to a plan of reorganization that will, among other things, fairly, justly, and equitably compensate survivors of sexual abuse by clergy or others associated with the RCBSR and bring healing to survivors, parishioners and others affected by past acts of sexual abuse. The RCBSR has limited funds with which to respond to the variety of demands from its creditors. The RCBSR requires the bankruptcy court's protection and the protection of the bankruptcy laws to make fair and equitable payment on all of the claims against it, including the claims by survivors of abuse, trade creditors, the parishes and others, while continuing its ministries and support it offers to Catholic parishes and communities. Additional detailed background information on the RCBSR can be found in my Declaration of Deacon Joe Oberting in Support of Chapter 11 Petition and First Day Motions filed on the Petition Date ("Oberting Background Decl.").

6.     As further discussed in the Oberting Background Decl., the RCBSR provides certain administrative services and pooling arrangements for the various components of the RCBSR, as well as for numerous Non-Debtor Catholic Entities pursuant to service management agreements

J. OBERTING DECLARATION IN SUPPORT OF
MOTION FOR ORDER AUTHORIZING CONTINUED USE
OF EXISTING CASH MANAGEMENT SYSTEM, ETC.
-2-

Case: 23-10113   Doc# 5-1   Filed: 03/13/23   Entered: 03/13/23 11:56:56   Page 2 of 25

(collectively, the "Services Agreements") and otherwise.[1]  The RCBSR provides services including appointment of priests and permanent deacons, maintains the remuneration policy for priests (including retirement plans and health insurance plan), while the parishes pay for these items organized and administered by the RCBSR.  The RCBSR provides a defined contribution retirement plan and health and life insurance plans for lay personnel for which the parishes pay. Insurance coverage packages for buildings, liability, workers compensation, and earthquake are also provided from a pooled insurance plan.  Parishes are provided with retained legal services and human resources management as well as financial guidance in the form of human resource and financial management handbooks, backed by personnel in the chancery office to assist as questions arise.  In addition, the Services Agreements ensure compliance with Canon Law and promotes consistent policies and procedures within the Diocese of Santa Rosa.  Each Parish pays the RCBSR a service fee as compensation for the services provided currently set at approximately 9.1% of the Parishes' annual total revenue from the prior year.  The Service Agreements are a significant source of the RCBSR's annual funding.

**Bank Accounts Related to Debtor's Cash Management System**

7.      In the ordinary course of business, the Debtor utilizes a centralized cash management system (the "Cash Management System") to facilitate the financial operation of its central administrative offices.  The Debtor in Possession has bank accounts with a number of financial institutions (the "Banks") in order to facilitate the Cash Management System.  A list of the Debtor in Possession's bank accounts is attached hereto as Exhibit A (the "Bank Accounts").

8.      A diagram setting forth the flow of funds among the Bank Accounts and summarizing the Cash Management System, as it exists on the Petition Date, is attached hereto as Exhibit B.

9.      The RCBSR's Bank Accounts are held at West America Bank, Wells Fargo Bank, Summit State Bank, U.S. Bank, and Merrill Lynch.  There are also funds at PNC Institutional Asset Management, which is a marketing name for The PNC Financial Services Group, Inc. as the parent

---

[1]  The Non-Debtor Catholic Entities are described in the Oberting Background Decl. and include the Parishes, RCWC, CCF, Catholic Charities, CNHS, and Cemeteries.

of PNC Bank, National Association ("PNC Bank"). Except for Merrill Lynch, these banks are all FDIC insured banking institutions which have complied with the United States special depository procedures under Bankruptcy Code section 345 and are on the United States Trustee's list of authorized depositories for the Northern District of California. While Merrill Lynch is not an FDIC insured banking institution, it is a subsidiary of Bank of America, the third largest bank in the United States.

10. The RCBSR also has funds in a pooled account with Catholic Extension, an independent 501(c)(3) organization that is not a FDIC insured institution. Catholic Extension operates a pooled investment fund on behalf of certain Catholic Dioceses (the "Mission Dioceses"), named the Mission Diocese Fund. In 2014, the RCBSR deposited $1,000,000 into this fund, which funds are managed by Catholic Extension and invested by Cambridge Associates. The RCBSR has neither deposited nor withdrawn funds since it made its initial deposit. Information about Mission Diocese Fund is attached hereto as Exhibit C. I am informed and believe that other Catholic dioceses that have filed chapter 11 have been able to maintain their funds in Mission Diocese Fund.

11. The Bank Accounts maintained by the RCBSR contain property of the estate and property administered for others under the various Services Agreements or held in trust for others, which is not property of the estate. Further, many of the funds in the Bank Accounts are subject to charitable restrictions and constitute restricted funds, which are not available to creditors of the estate. The RCBSR maintains records to account for the differing character of the funds it holds, as described above.

12. In the ordinary course of business, the RCBSR maintains the Bank Accounts described herein to facilitate the financial operations of its central administrative offices.

Debtor's General Operating Accounts

13. The RCBSR maintains an operating bank checking account and money market account at Wells Fargo (#7582 and #4305, respectively) (collectively, the "General Fund"). The General Fund acts as the Debtor's central repository of funds and is the primary payor account for substantially all of the Debtor's expenses. The General Fund is funded from multiple sources including fees and deposits pursuant to the Parish Services Agreements (including assessments),

J. OBERTING DECLARATION IN SUPPORT OF
MOTION FOR ORDER AUTHORIZING CONTINUED USE
OF EXISTING CASH MANAGEMENT SYSTEM, ETC.
-4-

Case: 23-10113   Doc# 5-1   Filed: 03/13/23   Entered: 03/13/23 11:56:56   Page 4 of
25

certain contributions from the Annual Ministry Appeal ("AMA"), funds for projects and ministries operated by the RCBSR, and from grants.

14.    The General Fund checking account generally has less than $250,000. Funds in excess of this amount are transferred to the General Fund's money market account and moved back into the General Fund as needed to fund disbursements.

Payroll Account

15.    The RCBSR maintains a payroll account at West America Bank (#8396). The payroll account is funded from the General Fund for payroll expenses of RCBSR employees, including the payment of payroll taxes, and employee contributions for the 403(b) Lay Pension defined contribution plan. The RCBSR also administers payroll for most of the Parishes, although some administer their own payrolls funded by those entities, and RCBSR is reimbursed for amounts paid on behalf of the Parishes. The Debtor in Possession is filing a separate motion to approve payment of any unpaid pre-petition wages and benefits up to the priority amounts for its employees, although the RCBSR has prepaid its payroll so there may be no pre-petition wages owed.

Health Insurance Accounts

16.    The RCBSR maintains two accounts at Wells Fargo (#5567) ("Health Insurance Checking") and (#4306) ("Health Insurance Money Market") to administer and pay expenses for health insurance.

17.    For health insurance, the RCBSR is insured through the Reta Trust ("RETA"). RETA provides healthcare-related benefits to U.S. dioceses and Catholic organizations that are aligned with the teachings of the Roman Catholic Church.[2] RETA manages contracts and provider networks with national health plans including Blue Cross Blue Shield organizations, Kaiser Permanente, Delta Dental and VSP Vision Care. All plans are self-insured, and RETA sets the contribution funding rates.

---

[2] I have served on the Board of Trustees of RETA since March 2022. I also have served on the Health/Benefits Subcommittee since March 2021.

18.     On about the 20th day of the month for the upcoming month, RETA sends an invoice to the RCBSR which includes the health insurance premiums for the RCBSR and certain of the Non-Debtor Catholic Entities (Parishes, Catholic Charities, Cemeteries and CNHS).  On the 2nd or 3rd day of the month, RETA withdraws via ACH the entire amount of the invoice in the approximate amount of $500,000 (100%, including the other entities' portions) from the Health Insurance Checking account.  RETA also withdraws from the accounts of the applicable Non-Debtor Catholic Entities the allocated amount owed by such entity (thus RETA is initially collecting twice).  However, if RETA is unable to pull the full amount owing from one of the other entities, the RCBSR will bill that entity for the amount it advanced on its behalf.  On the 15th of the month, RETA performs a reconciliation and refunds to the RCBSR Health Insurance Checking account the amounts it collected from the other entities, which is typically the full amount (approximately $500,000).

19.     When RETA has approval from its Board of Trustees, as a result of reviewing its own cash reserves, it has in the past refunded a portion of health benefits premiums on a monthly basis.  The last such refund received by RCBSR was in September 2022.

20.     When there are excess funds in the Health Insurance Checking account, the RCBSR transfers such funds to the Health Insurance Money Market account to maximize interest accrual.

21.     Toward the end of the fiscal year, the funding of the Health Insurance account is reviewed.  If it is determined there are sufficient excess funds, the RCBSR will inform the appropriate entity or entities that an upcoming monthly billing cycle will be skipped.

Self-Insurance – Property, Liability, Earthquake, Auto, and Workers Compensation Insurance accounts

22.     The RCBSR maintains bank accounts at Wells Fargo (#1339) ("Self-Insurance Checking Account") (#3724) ("Self-Insurance Money Market Account") to manage insurance programs for property, liability, earthquake, and auto insurance and for worker's compensation insurance for the RCBSR and the Non-Debtor Catholic Entities.  As noted below in paragraph 29, the RCBSR also has Self-Insurance funds held at PNC Bank in investment accounts overseen by CAPTRUST, an advisor for the RCBSR for the self-insurance reserves.

Case: 23-10113   Doc# 5-1   Filed: 03/13/23   Entered: 03/13/23 11:56:56   Page 6 of 25

23.     The RCBSR and Non-Debtor Catholic Entities are partially self-insured for property, liability, earthquake, and auto insurance and for worker's compensation coverage. The RCBSR participates in a pool of insureds managed by Catholic Mutual Insurance Company ("Catholic Mutual"). Being a part of a pool allows for additional buying and negotiating power.

24.     The RCBSR collects and maintains funds on behalf of the Non-Debtor Catholic Entities and other participating entities pursuant to the RCBSR's performance under the Services Agreements. If the RCBSR or a Non-Debtor Catholic Entity were to terminate its participation in the pooled insurance, that entity would be entitled to the percentage portion of that entity's funds transferred to that account during the last insurance year, divided by the total funds contributed to the account over the last insurance year. The insurance year runs from July 1 to June 30.

25.     The payment of the premiums and other fees is made from the Self Insurance Checking Account to Catholic Mutual. If at the end of the year, the balance of the account is determined to have created a surplus, then such surplus is applied toward reducing the increase in premium the following year.

26.     The RCBSR pays approximately $2 million annually in July of each year to Catholic Mutual for property, liability, earthquake, and auto insurance coverage. The RCBSR bills each entity its allocated share of the current year's premiums, allocated based on the value of covered property.

27.     For worker's compensation coverage, the RCBSR pays approximately $625,000 annually to Church Mutual. The RCBSR notifies the participating entities in March what their portion of the expense is, and the entities then pay their share of the insurance premium, similar to how the property, liability, earthquake, and auto insurance coverage is handled as described above.

28.     The RCBSR pays the property, liability, earthquake, and auto insurance and worker's compensation premiums in aggregate upon receipt of the invoices and is reimbursed by the participating entities over the course of the following year. The Self-Insurance pooled funds also pay for attorneys, advisors, and settlements for the applicable liabilities.

///

///

J. OBERTING DECLARATION IN SUPPORT OF
MOTION FOR ORDER AUTHORIZING CONTINUED USE
OF EXISTING CASH MANAGEMENT SYSTEM, ETC.

-7-

Case: 23-10113   Doc# 5-1   Filed: 03/13/23   Entered: 03/13/23 11:56:56   Page 7 of
25

Self-Insurance Investment Accounts

29.     The RCBSR maintains Self-Insurance Investment Accounts (Mission Diocese Fund account #1002 and PNC Investment #0465).  In or about 1999, the RCBSR held a campaign to raise funds to cover potential losses that may not be covered by insurance.  These self-insurance funds (and other funds added since the major campaigns) are held in the Self-Insurance Investment Accounts.

Stock Transfer Account

30.     The RCBSR maintains a Stock Transfer Account (Broker Account) at Merrill Lynch (#4A15).  This account is used to monetize donations of stock.  The funds are then sent to the designated parish or other intended donee.

Restricted Accounts

31.     The RCBSR maintains multiple restricted accounts related to four general categories: Restricted AMA funds, Restricted Retirement funds, Restricted Lay Pension 403(b) and Life Insurance and Other Restricted funds.

32.      Restricted funds may not be used for any purpose inconsistent with the intent of the donation or the intent of the priest of lay benefit.  These funds are tracked specifically in the RCBSR's books and records and maintained in a separate bank account.

Restricted Annual Ministry Appeal Accounts

33.     The RCBSR maintains three bank accounts to manage funds raised in connection with the Annual Ministry Appeal ("AMA"): Wells Fargo Checking Account (#7632) ("AMA Checking Account"), Wells Fargo money market account (#4732) ("AMA Money Market Account"), and Summit State Bank account (#1944) ("Summit AMA Account").  The AMA is an annual appeal commencing in February or March of each year to raise restricted funds for certain specified ministries of the Diocese.

34.     The target amount of the AMA is established as a goal by the Bishop annually and communicated to the Parishes.  Historically, the AMA has raised approximately $900,000 each year.  The AMA goal for 2023 is $897,111.  There are numerous purposes, programs and campaigns utilized to raise the funds.

35.     Money raised by the parishes remitted in the form of checks and cash are deposited into the AMA Checking Account at Wells Fargo. Receipts in the form of credit card payments or direct deposit are deposited into the Summit AMA Account.

36.     If any parish remits more than its target fund-raising goal, the excess is refunded to such parish from the AMA bank account annually.

37.     Each month during the fiscal year, approximately $75,000 (1/12th of $900,000) is transferred from the AMA Checking Account to the Chancery General Fund, which funds are disbursed exclusively for the benefit of the various diocesan ministries. Income and expenses of each ministry is tracked within the RCBSR main accounting system. None of the AMA funds are retained or disbursed for the benefit of the RCBSR. AMA funding supports less than half of the budgets of all ministries collectively. Ministries also are charged with seeking funding from grants, various fees and other donations.

Restricted Retirement Accounts

38.     The RCBSR maintains two bank accounts at Wells Fargo (#5160) ("Priests Retirement Checking Account"), and (#4731) ("Priests Retirement Money Market") for funds held relating to its Priest Retirement Plan. There also is a Bishop Retirement SERP at U.S. Bank (#5400) ("Bishop SERP Account") and a "frozen" Defined Benefit Lay Pension Plan with funds held at PNC Bank.

39.     The RCBSR, Parishes and other entities contribute collectively $1,125 per priest per month for retirement for those priests serving them. The RCBSR contributes for the benefit of the Bishop ($5,978 as per the actuarial report) and the Vicar General and sends a check from the General Fund to the Priests Retirement Checking Account. The RCBSR, the parishes and schools each send their portion to the Priests Retirement Checking Account. In the event a priest provides services to more than one entity, the $1,125 is allocated to each entity via a formula.

40.     Certain monthly disbursements are made from the Priests Retirement Checking Account, including retirement funds for certain unincardinated priests and long-term care and life insurance costs for retired or unassigned priests. Contributions to the Bishop's SERP are

-9-

J. OBERTING DECLARATION IN SUPPORT OF MOTION FOR ORDER AUTHORIZING CONTINUED USE OF EXISTING CASH MANAGEMENT SYSTEM, ETC.

Case: 23-10113   Doc# 5-1   Filed: 03/13/23   Entered: 03/13/23 11:56:56   Page 9 of 25

transferred from this account to the Bishop SERP account at U.S. Bank (#5400). Any remaining balance in this account are transferred to the Priest Pension fund.

41. The RCBSR maintains a SERP pension plan for the benefit of the Bishop via the Bishop SERP Account. The RCBSR currently has one living retired bishop who is receiving monthly benefit payments, and one active bishop who would be a beneficiary upon his retirement. The actuary retained by the RCBSR, Nicolay Consulting Group, provides actuarial reports annually which indicate how much money should be deposited into the Bishop SERP Account. This amount is transferred via check monthly from the Priests Retirement Checking Account into the Bishop Retirement SERP Account at U.S. Bank (#5400).

42. The RCBSR maintained a Diocesan Defined Benefit Lay Pension Plan until 2014, at which time it was frozen. A new plan was formed as the Defined Contribution Plan. Effective June 20, 2014, and facing a high unfunded pension liability, the Diocesan Defined Benefit Lay Plan was "frozen," meaning each participant's defined pension benefit was determined as of the freeze date and remains unchanged regardless of future pay increases or length of service.

43. The Diocesan Defined Benefit Lay Pension Plan remains underfunded, and the RCBSR and certain of the Non-Debtor Catholic Entities pay annual premiums towards the underfunded balance. Each of these entities pays 3.6% of its gross payroll into a restricted account. Nicolay Consulting Services also serves as the actuary for the frozen plan. Nicolay provides actuarial reports annually which indicate how much money should be deposited into the frozen plan. The trust fund for the frozen plan is held in custodial accounts at PNC Bank, so when deposits are made into the plan they are sent to PNC Bank.

Restricted Lay Pension 403(b) and Life Insurance

44. The RCBSR maintains two restricted funds bank accounts at Wells Fargo Bank Account (#5152 (checking) and #4308 (money market) collectively, "Diocese Restricted Funds Accounts"). On July 1, 2014, the Diocese implemented a Defined Contribution Plan covering eligible lay employees. These employees are eligible upon attaining one year of service and are scheduled to work at least 20 hours per week. The RCBSR, parishes and schools make employer contributions to the Defined Contribution Plan in the amount of 5.5% of gross payroll for each

J. OBERTING DECLARATION IN SUPPORT OF
MOTION FOR ORDER AUTHORIZING CONTINUED USE
OF EXISTING CASH MANAGEMENT SYSTEM, ETC.
-10-

Case: 23-10113   Doc# 5-1   Filed: 03/13/23   Entered: 03/13/23 11:56:56   Page 10 of
25

eligible employee. The RCBSR portion is paid from the General Fund and the parishes and schools are billed. The parishes and schools pay their portions 45 days after month-end. These funds are deposited into the Diocese Restricted Fund checking account.

45.     The RCBSR's 403(b) plan is administered by OneAmerica Financial Partners ("OneAmerica"). Employer contributions are sent to OneAmerica via ACH debit from the Diocese Restricted Fund account. Employee contributions are sent to OneAmerica via ACH debit from the payroll account at West America Bank (#8396).

Other Restricted Funds

46.     There is a restricted Capital Campaign account held at Summit State Bank (#1951), which contains the remaining $1,000 raised in conjunction with a prior capital campaign. The balance has not changed in several years. In addition, there is a restricted Catholic Cursio Movement account held at Summit State Bank (#9518) containing earmarked residual funds from a prior fundraising campaign. The balance has not materially changed in several years.

47.     The Diocese Restricted Funds Accounts also are used to hold funds that are in trust and donor restricted, including Second Collections, which are funds collected at the parish level and earmarked for specific charitable causes or organizations. Payments for pension contributions for lay personnel, life insurance, and certain other expenses relating to memorials, funerals, priest welfare, and consulting are paid from this account monthly.

RCBSR Funds at the Catholic Community Foundation

48.     The RCBSR has certain funds invested with the Catholic Community Foundation ("CCF"), an independent entity and non-debtor, which funds were received (a) as a directed donation from one family and (b) from closure of a camp many years ago. The funds are held in trust for the benefit of parishes, schools and various CCF funded programs. Funds are held in two CCF accounts at Summit State Bank: checking account (#6427) and a certificate of deposit (#2796).

49.     The RCBSR collects a management fee from each of the 70 accounts within the fund on behalf of CCF. Those fees are deposited into account #6427.

**Necessity of Keeping the Cash Management System in Place**

50.     The Cash Management System permits the RCBSR to fulfill its obligation to donors

to keep restricted funds, funds held in trust for others, or funds donated for a specific purpose segregated from the RCBSR's operating and unrestricted funds. The RCBSR's employees are familiar and comfortable with the current Cash Management System.

51. The Debtor in Possession has filed a motion contemporaneously herewith requesting entry of an order (the "Payroll Order") authorizing it to pay all prepetition wages, salaries, and related benefits which were due, owing, or accrued but were not yet paid as of the Petition Date. Payments for payroll-related taxes and benefits sought to be authorized by entry of the Payroll Order, including payroll taxes and payments relating to medical, dental, and other benefits, will be drawn on the existing payroll account, Health Insurance Account and Self-Insurance Account at Wells Fargo and West America Bank.

**Compelling Reasons to Maintain the Debtor's Cash Management System and Accounting Policies and Practices**

52. I am aware of the requirement under the Local Rule 2015-1(a) and UST Guideline 4.4.6 that, upon filing a petition for relief under chapter 11, the debtor must close its existing bank accounts and open new debtor-in-possession accounts marked to show that the debtor is operating as a debtor-in-possession. However, the Debtor in Possession believes it should be excused from this requirement in this unique situation for the compelling reasons that complying with Local Rule 2015-1(a) and UST Guideline 4.4.6 would be unduly costly, overly burdensome, not to the benefit of any party in interest, and detrimental to the overall administration of the estate and creditors.

53. The Debtor in Possession's Cash Management System is maintained in the ordinary course and is essential to the Debtor in Possession's ongoing operations. The Cash Management System provides significant benefits to the Debtor in Possession, including, among other things, the ability to: (i) account properly for restricted funds and funds held in trust; (ii) control funds; (iii) perform its duties under the Servicing Agreements; (iv) ensure the maximum availability of funds when necessary; (v) maximize interest on deposit accounts by utilizing sweep accounts; (vi) reduce administrative expenses and operational disruption by facilitating the movement of funds and the development of more timely and accurate account balance information; and (vii) continue accounting practices and operational procedures familiar to the Debtor in

J. OBERTING DECLARATION IN SUPPORT OF
MOTION FOR ORDER AUTHORIZING CONTINUED USE
OF EXISTING CASH MANAGEMENT SYSTEM, ETC.
-12-

Case: 23-10113    Doc# 5-1    Filed: 03/13/23    Entered: 03/13/23 11:56:56    Page 12 of 25

Possession's staff. As a practical matter, because of the Debtor in Possession's financial structure, it would be extremely difficult and prohibitively expensive to establish and maintain a separate postpetition cash management system.

54. The delay and disruption caused by closing the existing Bank Accounts and opening new accounts would delay the Debtor in Possession's postpetition payment of its ordinary course expenses and put a strain on the Debtor in Possession's relations with its accounting staff, the Non-Debtor Catholic Entities served by the Debtor in Possession under the Servicing Agreements, donors, key suppliers, and employees. By preserving continuity and avoiding the disruption and delay to the Debtor in Possession's activities under the Servicing Agreements, payroll obligations and ministries that would necessarily result from closing the existing Bank Accounts and opening new accounts, all parties in interest, including Non-Debtor Catholic Entities, employees, donors and vendors, will be best served. Furthermore, the administrative burden of overseeing such a transition would place a substantial burden on the Debtor in Possession's management and personnel at a critical time in this case. The inevitable delays and confusion would further impede the Debtor in Possession's ability to pay operating expenses in the ordinary course, potentially compromising relationships with Non-Debtor Catholic Entities, donors, vendors, suppliers and employees. This could seriously jeopardize the Debtor in Possession's reorganization efforts.

55. The Debtor in Possession requires the ability to continue to utilize its Cash Management System so that it may continue its operations uninterrupted. The Debtor in Possession's Cash Management System is maintained through well-established relationships at the various financial institutions and series of related accounts which allow the Debtor in Possession to manage and control receipts and disbursements and to account for all transactions.

56. Closing such accounts will delay the services provided by the Debtor in Possession under the Servicing Agreement, payment of payroll and other ordinary course expenses, will increase the cost of administration, impede the Debtor in Possession's efforts to continue to operate in the normal course of business, potentially undermine the confidence of donors that their donated funds are being held in trust and used for the intended uses, and will be a significant distraction to the Debtor in Possession's management and accounting staff.

J. OBERTING DECLARATION IN SUPPORT OF
MOTION FOR ORDER AUTHORIZING CONTINUED USE
OF EXISTING CASH MANAGEMENT SYSTEM, ETC.
-13-

Case: 23-10113    Doc# 5-1    Filed: 03/13/23    Entered: 03/13/23 11:56:56    Page 13 of
25

1    57.    Finally, each year the RCBSR's financial statements are audited by a public

2    accounting firm and the closing of the Debtor in Possession's Bank Accounts or any significant

3    switch in accounting policies and practices would significantly complicate and interfere with that

4    process.

5        I declare under penalty of perjury that the foregoing it true and correct.  Executed on March

6    13, 2023 at Santa Rosa, California.

7                              *Deacon Joe Oberting*

8                              Deacon Joe Oberting

# EXHIBIT A

# Roman Catholic Bishop of Santa Rosa

**Bank Account Listing**          Debtor's Bank Accounts

Description

| # | | Bank | Acct # |
|---|---|---|---|
| | ***Unrestricted Bank Accounts*** | | |
| 1 | Payroll Account | West America Bank | ***8396 |
| 2 | Chancery Operating Fund Checking | Wells Fargo | ***7582 |
| 3 | Chancery Operating MM | Wells Fargo | ***4305 |
| 4 | Merrill Lynch Stock Transfer Acct | Merrill Lynch | ***4A15 |
| 5 | Health Insurance Checking | Wells Fargo | ***5567 |
| 6 | Health Insurance MM | Wells Fargo | ***4306 |
| 7 | Self Insurance Checking | Wells Fargo | ***1339 |
| 8 | Self Insurance MM | Wells Fargo | ***3724 |
| | | | |
| | ***Unrestricted Investment Accounts*** | | |
| 9 | Self Insurance Investment | Mission Diocese Fund, LLC | ***1002 |
| 10 | Self Insurance PNC Investment | PNC | ***0465 |
| | | | |
| | ***Restricted Other Bank Accounts*** | | |
| 11 | Diocese Restricted Fund Checking | Wells Fargo | ***5152 |
| 12 | Diocese Restricted Fund MM | Wells Fargo | ***4308 |
| 13 | Capital Campaign | Summit State Bank | ***1951 |
| 14 | Catholic Cursio Movement | Summit State Bank | ***9518 |
| 15 | Restricted Debtor Funds Managed at CCF Checking | Summit State Bank | ***6427 |
| 16 | Restricted Debtor Funds Managed at CCF CD | Summit State Bank | ***2796 |
| | | | |
| | ***Restricted Annual Ministry Appeal ("AMA") Bank Accounts*** | | |
| 17 | AMA Wells Fargo Checking | Wells Fargo | ***7632 |
| 18 | AMA Wells Fargo MM | Wells Fargo | ***4732 |
| 19 | AMA Summit Bank | Summit State Bank | ***1944 |
| | | | |
| | ***Restricted Debtor Retirement Bank Accounts*** | | |
| 20 | Priests Retirement Plan Checking | Wells Fargo | ***5160 |
| 21 | Priests Retirement Plan MM | Wells Fargo | ***4731 |
| 22 | Bishop Retirement SERP | US Bank | ***5400 |

# EXHIBIT B

# RCBSR – Overview of Bank Accounts



B | RILEY Advisory Services | 1

# EXHIBIT C



DONATE

# Mission Diocese Fund, LLC

THE FOLLOWING IS CONFIDENTIAL INFORMATION THAT IS PROVIDED TO YOU FOR GENERAL INFORMATION. IT DOES NOT CONSTITUTE AN OFFER TO SELL NOR A SOLICITATION OF ANY OFFER TO BUY ANY SECURITIES IN THE MISSION DIOCESE FUND.

## BACKGROUND

The stock market turmoil in 2008 subjected Mission Dioceses to significant volatility and losses to their endowments. Based on the concern raised at the Mission Bishop Conference in the fall of 2008, Catholic Extension surveyed their investment needs, especially regarding long-term assets. The findings indicated that most dioceses had limited investment options and incurred high fees due to relatively low investment balances. Mission Bishops and CFOs asked Catholic Extension to address this situation, as management of these investments directly affected their financial viability in the long-term. As a result, Catholic Extension formed a pooled investment fund on behalf of the Mission Dioceses, named the Mission Diocese Fund ("Fund"), to invest long-term assets such as endowments, priest pension plans and cemetery care funds. The rationale was that access to a world-class institutional investing strategy would help build greater capacity for long-term financial stability and viability than could be achieved individually.

## STRUCTURE

The Mission Diocese Fund, LLC is a limited liability company where the Mission Dioceses and associated organizations are the Members and Catholic Extension serves as Manager. The risk to each Member is limited

Case: 23-10113    Doc# 5-1    Filed: 03/13/23    Entered: 03/13/23 11:56:56    Page 20 of 25

to its pro rata share of ownership of the Fund. Governance is through the Chancellor and the Investment Committee of Catholic Extension. The offering of interests in the Fund is not subject to securities laws because of exemptions for entities such as the Fund that are organized and operated exclusively for charitable purposes. The eligible Members can only be Mission Dioceses and those organizations associated with Mission Dioceses that are exempt from federal income taxation under Section 501(c)(3) of the Internal Revenue Code. Without this structure and the securities law exemptions, it would not have been possible for Catholic Extension to provide this unique opportunity to Mission Dioceses.

# BENEFITS

The Fund's Operating Agreement provides various services through Catholic Extension, thereby subsidizing some of the costs of the Fund. The investments primarily mirror those of Catholic Extension's $120 million portfolio (See Figure 1). Cambridge Associates, the investment consultant, has a long, successful track record of advising large endowments on asset allocation strategies that allow portfolios to grow over the long-term while providing income to fund mission objectives. The Fund's current performance, (See Figure 2) has outperformed the policy benchmark in the long term.

(Figure 1)



(Figure 2)

Case: 23-10113    Doc# 5-1    Filed: 03/13/23    Entered: 03/13/23 11:56:56    Page 21 of 25

| Performance as of June 30, 2022 | Quarter | 1 Year | 3 Year | 5 Year | Annualized Since Inception (January 1, 2012) |
|---|---|---|---|---|---|
| **Fund, net of capped fees** | (11.9)% | (14.5)% | 3.9% | 4.6% | 5.7% |
| **Policy Benchmark, gross return\*** | (10.0)% | (10.5)% | 5.2% | 5.4% | 5.7% |

Past performance is no guarantee of future results.

By pooling assets, the Fund can invest in world-class fund managers that are otherwise closed to smaller portfolios, such as:

- Eagle Capital
- William Blair
- Johnston International Equity
- Kiltearn Global Equity
- Matrix
- Coatue, Ltd.
- H.G. Vora Special Opportunities Fund, Ltd.
- Chatham High Yield, Ltd.

The Fund applies the USCCB Socially Responsible Investing guidelines in its investment decisions.

To emphasize that this represents a service from Catholic Extension to the mission dioceses, the Fund's annual "all-in" expenses are capped at 0.55% of the asset balances. Investments may be contributed at the start of each quarter, and distributions are made at the end of each quarter.

# PARTNERS

- Cambridge Associates, LLC
- State Street Corporation
- Deloitte & Touche, LLP
- MSCI, ESG Research

Case: 23-10113   Doc# 5-1   Filed: 03/13/23   Entered: 03/13/23 11:56:56   Page 22 of 25

- NRS, Trust Product Administration

# Frequently Asked Questions

**1. Why should a mission diocese consider investing in the Mission Diocese Fund?**

▼

**2. Who is eligible to subscribe to the Fund?**

▼

**3. How do we invest in the Fund?**

▼

**4. When are contributions accepted?**

▼

**5. Can sub-accounts be established?**

▼

**6. Can regular distributions be taken?**

Case: 23-10113    Doc# 5-1    Filed: 03/13/23    Entered: 03/13/23 11:56:56    Page 23 of 25

▼
_____

**7. Can I take other withdrawals?**


▼
_____

**8. What expenses will the fund incur?**


▼
_____

**9. How is the Mission Diocese Fund managed?**


▼
_____

**10. How does the Mission Diocese Fund meet the Socially Responsible Investment guidelines?**


▼
_____

**11. How are the Member's interest represented?**


▼
_____


Print-ready PDF: Mission Diocese Fund Frequently Asked Questions

# For More Information

Kevin McGowan, Chief Financial Officer, at **312.795.5133** or kmcgowan@catholicextension.org

Tom Riordan, Director Mission Partnerships, at **831-645-2827** or [triordan@catholicextension.org](mailto:triordan@catholicextension.org)

## Donate Today
## Struggling faith communities need your help.

DONATE

**Catholic Extension**

150 South Wacker Drive, Suite 2000, Chicago, IL 60606

**Call now: 800.842.7804**

Catholic Extension is a registered 501 ( c ) ( 3 ) nonprofit organization
Donations are tax deductible as allowed by law.

© Copyright 2023 Catholic Extension

## Get email updates and stay updated

your first name

your last name

your e-mail

SUBMIT

Privacy Policy  /  501(c)(3) Compliance