PAUL J. PASCUZZI, State Bar No. 148810
JASON E. RIOS, State Bar No. 190086
THOMAS R. PHINNEY, State Bar No. 159435
FELDERSTEIN FITZGERALD
WILLOUGHBY PASCUZZI & RIOS LLP
500 Capitol Mall, Suite 2250
Sacramento, CA 95814
Telephone: (916) 329-7400
Facsimile: (916) 329-7435
ppascuzzi@ffwplaw.com
jrios@ffwplaw.com
tphinney@ffwplaw.com

Proposed Attorneys for
The Roman Catholic Bishop of Santa Rosa

# UNITED STATES BANKRUPTCY COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SANTA ROSA DIVISION

| | |
|---|---|
| In re:<br><br>THE ROMAN CATHOLIC BISHOP OF SANTA ROSA,<br><br>          Debtor In Possession. | CASE NO. 23-10113<br><br>Chapter 11<br><br>Date:      March 16, 2023<br>Time:     1:00 p.m.<br>Location: 1300 Clay Street, Ctrm. 215<br>          Oakland, CA<br>          [In person or via Zoom]<br>Judge:   Hon. Charles Novack<br><br>Order Shortening Time |

**MOTION FOR ORDER (1) AUTHORIZING PAYMENT OF PREPETITION WAGES, SALARIES, AND EMPLOYEE EXPENSES; (2) TO PAY ACCRUED EMPLOYEE BENEFITS AND TAXES; AND (3) DIRECTING BANKS TO HONOR PAYROLL AND EXPENSE CHECKS**

# TABLE OF CONTENTS

JURISDICTION ...................................................................................................................... 1

RELIEF REQUESTED ........................................................................................................... 1

BACKGROUND ..................................................................................................................... 2

PROCEDURAL POSITION OF THIS MOTION ................................................................... 3

FACTUAL BACKGROUND FOR RELIEF REQUESTED .................................................. 3

      Overview of Payroll and Employee Benefits ............................................................ 4

      Pre-petition payroll ................................................................................................... 5

      Other Non-Wage Employee Benefits ....................................................................... 7

      Self-funded medical insurance plan ......................................................................... 7

      Vacation Pay Obligations .......................................................................................... 9

      Other Employee Benefits ........................................................................................ 10

      Retirement Benefit Plans ........................................................................................ 11

      Pre-petition Amounts Withheld from Employee Paychecks and Related
         Deductions and Payments ................................................................................. 12

      Reimbursable Expenses .......................................................................................... 13

      Summary ................................................................................................................. 13

LEGAL ANALYSIS ............................................................................................................. 13

    A.     Immediate Payment of Withheld Amounts and Deductions that Are Not
          Property of the Estate Should Be Allowed. .......................................................... 14

    B.     Immediate Payment of Pre-Petition Employee Wages, Compensation and
          Benefits is Necessary and is Authorized by 11 U.S.C. §§ 363(b), 507(a)
          and 105(a). ............................................................................................................ 15

    C.     The Payment of Pre-Petition Employee Wages, Compensation and Benefits
          is Necessary Under Federal Rule of Bankruptcy Procedure 6003. ...................... 19

CONCLUSION ...................................................................................................................... 20

**CASES**

*Burchinol v. Central Washington Bank (In re Adam's Apple, Inc.)*
    829 F.2d 1484 (9th Cir, 1987)..............................................................................18, 19

*In re B & W Enterprises, Inc.*
    713 F.2d 534 (9th Cir. 1983)..............................................................................18

*In re Barbeques Galore, Inc.*
    Case No. 08-16036 (Bankr. C.D. Cal. Aug. 20, 2008) ............................................19

*In re Columbia Gas Systems, Inc.*
    171 B.R. 189 (Bankr. D. Del. 1994) ........................................................................18

*In re CoServ*
    273 B.R. 487 (Bankr. N.D. Tex. 2002)....................................................................15

*In re Frontier Airlines Holdings, Inc.*
    Case No. 08-11298 (Bankr. S.D.N.Y. Apr. 14, 2008) ............................................19

*In re Gottschalks Inc.*
    09-10157 (Bankr. D. Del. Feb. 10, 2009) ..............................................................19

*In re Gulf Air*
    112 B.R. 152 (Bankr. W.D. La. 1989) ....................................................................19

*In re Ionosphere Clubs, Inc.*
    98 B.R. 174 (Bankr. S.D.N.Y. 1989) ......................................................17, 18, 19

*In re Just for Feet, Inc.*
    242 B.R. 821 (Bankr. D. Del. 1999) ......................................................................19

*In re Norwich Roman Catholic Diocesan Corporation*
    Case No. 21-20687 (Bankr. D. Conn. July 22, 2021[Dkt No. 61])........................19

*In re Penn Central Transp. Co.*
    467 F.2d 100 (3d Cir. 1972)..................................................................................18

*In re Roman Catholic Bishop of Stockton*
    Case No. 14-20371-C-11 (Bankr. E.D. Cal. Jan. 24, 2014 order) ..........................19

*In re Western Pipeline, Inc.*
    Case No. 09-21792 (Bankr. E.D. Cal. Apr. 6, 2009) ..............................................19

*In re ZF in Liquidation LLC fka Zacky Farms, LLC*, Case No. 12-37961-B-11
    (Bankr. E.D. Cal. Nov. 5, 2012) ............................................................................19

*Northwest Engineering Co. v. United States Steel Workers*
    863 F.2d 1313 (7th Cir. 1988)..............................................................................17

**STATUTES**

Title 11, United States Code §105 ................................................................15, 16, 17

Title 11, United States Code §1129 ...................................................................17

Title 11, United States Code §365 ....................................................................19

Title 11, United States Code §541 ................................................................14, 15

**RULES**

Rule 6003, Federal Rules of Bankruptcy Procedure.................................................20

Rule 6004, Federal Rules of Bankruptcy Procedure.................................................20

MOTION FOR ORDER AUTHORIZING PAYMENT OF
PRE-PETITION WAGES AND HONOR BENEFITS

Case: 23-10113    Doc# 6    Filed: 03/13/23    Entered: 03/13/23 12:32:52    Page 4 of 30

The Roman Catholic Bishop of Santa Rosa (the "RCBSR" or the "Debtor in Possession"), debtor in possession, hereby moves the Court for Authority to Pay Prepetition Wages, Salaries and Employee Expenses, to Pay Accrued Employee Benefits and Taxes, and Directing Banks to Honor Payroll and Expense Checks (the "Motion"). In support of this Motion, the Debtor relies upon the Declaration of Deacon Joe Oberting in Support of Petition and First Day Motions ("Oberting Background Decl."), the Declaration of Deacon Joe Oberting in support of this Motion ("Oberting Decl."), the Declaration of Adrienne Moran in Support of Chapter 11 Petition and First Day Motions ("Moran Decl.") and all exhibits filed in support thereof. In further support of this Motion, Debtor relies upon the following points and authorities:

## JURISDICTION

1. This Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334, and Local Rule 9014-1(f)(4). This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory bases for the relief requested herein are 11 U.S.C. §§ 363(b), 507(a) and 105(a).

2. The RCB does not, by filing its petition for relief and other documents in this bankruptcy case, waive any of its rights under any applicable law, including, without limitation, the Code of Canon law, the First Amendment of the United States Constitution, the Constitution for the State of California, California's law on corporations sole (California Corporations Code §§ 10000-10015), the Religious Freedom Restoration Act, the church autonomy doctrine, charitable trust law, California trust law, and the rights to object to disclosure of information and to contend that certain assets discussed in the Motion are not property of the estate.

## RELIEF REQUESTED

3. By this Motion, the Debtor requests entry of an order that (i) authorizes but does not direct the Debtor to pay Employee Obligations, Employee Deductions and Employee Expenses (each as defined below), (ii) authorizes but does not direct the Debtor to continue its practices, programs and policies in effect as of the Petition Date with respect to all Employee Obligations (including allowing employees to use time off accrued, but unused, as of the Petition Date), Employee Deductions and Employee Expenses and (iii) authorizes and directs the bank at

which the Debtor maintains an account from which the Debtor's payroll obligations are disbursed and all other banks or lending institutions maintaining payroll and employee benefits accounts to honor and pay all pre-petition and post-petition checks issued or to be issued and fund transfers requested or to be requested, by the Debtor in respect of the Employee Obligations, Employee Deductions and Employee Expenses. The Debtor also seeks authority to issue new post-petition checks or fund transfer requests with respect to pre-petition obligations that may have been dishonored by the banks relating to the Employee Obligations, Employee Deductions and Employee Expenses, if necessary.

4. This Motion seeks authorization to pay only such amounts that are entitled to priority claim status up to $15,150 under the provisions of section 507(a)(4) and (a)(5) of the Bankruptcy Code.[1] The RCBSR believes that approval of the motion is critical to the operations of the Debtor in Possession, and that the amounts at issue are fairly de minimus in the context of this case.

5. The RCBSR has 25 salaried employees and 6 hourly employees. The Debtor in Possession projects it will have under $15,000 in accrued and unpaid pre-petition payroll. Debtor in Possession projects it will have $42,000 in accrued and unpaid vacation pay entitled to priority (to be paid in the future as such time is taken). Debtor in Possession further seeks authority to continue other employee benefits, which RCBSR believes are current.

6. A copy of the proposed order on this Motion is attached hereto as Exhibit A.

**BACKGROUND**

7. On March 13, 2023, the RCBSR commenced its chapter 11 reorganization case. The RCBSR filed this case to reorganize its financial affairs pursuant to a plan of reorganization that will, among other things, fairly, justly, and equitably compensate survivors of sexual abuse by clergy or others associated with the RCBSR and bring healing to survivors, parishioners and others affected by past acts of sexual abuse. The RCBSR has limited funds with which to respond to the variety of demands from its creditors. The RCBSR requires the bankruptcy court's protection and the protection of the bankruptcy laws to make fair and equitable payment on all of

---

[1] All section references hereafter are to Title 11 of the United States Code unless noted otherwise.

Case: 23-10113   Doc# 6   Filed: 03/13/23   Entered: 03/13/23 12:32:52   Page 6 of 30

the claims against it, including the claims by survivors of abuse, trade creditors, the parishes and others, while continuing its ministries and support it offers to Catholic parishes and communities. Additional detailed background information on the RCBSR can be found in the Oberting Background Decl. and the Moran Decl.

8. In each diocesan bankruptcy where a plan of reorganization has been confirmed, the plan confirmed by the bankruptcy court was a pot plan negotiated through extensive mediation, after exchanging information with the Creditors Committee, among the interested parties in the case which settled disputes over what was property of the bankruptcy estate and provided for a settlement of the claims of Abuse survivors. The RCBSR intends to negotiate a pot plan of reorganization as early as possible which will: (a) allocate the RCBSR's remaining assets fairly among the legitimate competing interests for such property; (b) provide a process to fully, fairly and expeditiously liquidate claims of Abuse survivors; and (c) permit the RCBSR to carry on the RCBSR's essential ministries and services so the RCBSR can continue to meet the needs of the Non-Debtor Catholic Entities, parishioners, and others who rely on the RCBSR's ministry, education, and charitable outreach.

## PROCEDURAL POSITION OF THIS MOTION

9. Pursuant to sections 1107 and 1108, the Debtor continues to operate its business and manage its property as a debtor-in-possession. No trustee or examiner has been requested or appointed in this case.

10. Notice of this Motion has been provided to the 20 largest unsecured creditors, the secured creditors if any, the Office of the United States Trustee, the Internal Revenue Service, corresponding state agencies, as well as other governmental agencies, to the extent required by the Bankruptcy Rules and the Local Rules for the United States Bankruptcy Court for the Northern District of California, and those persons who have formally appeared and requested service in this case pursuant to Bankruptcy Rule 2002. Given the nature of the relief requested, the Debtor in Possession submits that no further notice of this Motion is necessary.

## FACTUAL BACKGROUND FOR RELIEF REQUESTED

11. As further discussed in the Oberting Background Decl., the RCBSR provides

certain administrative services and pooling arrangements for the various components of the RCBSR, as well as for the various Non-Debtor Catholic Entities pursuant to service management agreements (collectively, the "Services Agreements") and otherwise.[2] The RCBSR receives fees for the services the RCBSR provides under the Services Agreements. For example, RCBSR assesses each Parish an annual service fee based on its gross receipts. Oberting Decl., ¶6.

**Overview of Payroll and Employee Benefits**

12. The employees of the RCBSR include both lay employees (the "Lay Employees") as well as priests (which includes the Bishop) (the "Priests"). The RCBSR has approximately twenty-five salaried employees and six hourly employees. In addition to the Lay Employees and the Priests, the RCBSR also processes and pays payroll for most of the Parishes, although some administer their own payrolls funded by those entities. The RCBSR bills and is reimbursed the amounts paid on behalf of the respective Parish entity. In general as described below, RCBSR manages employee benefits such as payroll, health insurance and retirement, for the benefit of its employees and for the benefit of the Non-Debtor Catholic Entities. Unless otherwise specified, "Employees" as used herein refers only to RCBSR's employees. The RCBSR does not make any payments that benefit, directly or indirectly, any credibly accused perpetrator of abuse, whether for wages, support, housing, prepetition claims, retirement or otherwise. Oberting Decl., ¶7.

13. The Employees are essential to the Debtor's ability to preserve its existing ministries, provide administrative and other services to the Non-Debtor Catholic Entities, and reorganize successfully. The experience and knowledge of the Employees are critical to Debtor's ongoing service. Oberting Decl., ¶8.

14. As a result of the commencement of the Debtor's chapter 11 case, and in the absence of an order of the Court providing otherwise, the Debtor will be prohibited from paying or otherwise satisfying its pre-petition obligations to the Employees, including its obligations under various wage, salary, retirement, healthcare, and other benefit programs (collectively, the "Employee Obligations"). In addition, checks, wire transfers and direct deposit transfers issued

---

[2] The Non-Debtor Catholic Entities are described in the Oberting Background Decl. and include the Parishes, RCWC, CCF, Catholic Charities, CNHS, and Cemeteries.

MOTION FOR ORDER AUTHORIZING PAYMENT OF PRE-PETITION WAGES AND HONOR BENEFITS

in respect of the Employee Obligations will be dishonored.

15.     The Debtor's petition for relief under chapter 11 of the Bankruptcy Code will very likely cause the Employees to question their future with the Debtor. Commensurate with the mission of the RCBSR to maximize the needs of those who rely on the RCBSR's ministry, education, and charitable outreach, the Employees, especially the Priests, are paid modest salaries. The Debtor submits that if it fails to pay the pre-petition obligations and continue the employee benefits, its Employees will suffer significant hardship and may be unable to meet their personal living expenses. Such a result would obviously have a negative impact on employee morale and would likely result in unmanageable turnover and loss. The Debtor must demonstrate its ability to continue paying its Employees and providing those benefits that have been promised to them as a condition of their employment with the Debtor. Oberting Decl., ¶10.

16.     To maintain Employee morale at this critical time for the Debtor, and to minimize the personal hardship the Employees would suffer if pre-petition Employee Obligations, Employee Deductions (defined below) and Employee Expenses (defined below) are not paid or honored when due, the Debtor seeks to continue the regular payment of wages, salaries, and employment-related benefits and expenses as they come due in the ordinary course, including Employee Obligations, Employee Deductions and Employee Expenses that were incurred pre-petition but which come due for payment post-petition. The amounts requested are within the priority claim amounts set forth in the Bankruptcy Code. The Debtor believes the timely payment of Employee Obligations, Employee Deductions and Employee Expenses is necessary and desirable to the Debtor's successful reorganization and that such payments are in the best interests of creditors and the estate. Oberting Decl., ¶11.

**Pre-petition payroll**

17.     The Debtor contracts with IBS to prepare the payroll for its Lay Employees and Priests. In the ordinary course of its business, the Debtor issues payroll checks on two different schedules. Lay Employees are paid on the 15th and the last day of the month. Priests are paid on the same schedule as Lay Employees. Some Priests will have pre-petition amounts accrued as of the Petition Date and some Lay Employees may have pre-petition amounts accrued as of the

Petition Date.  Oberting Decl., ¶12.

18.     The RCBSR does not generally issue payroll checks itself, as these are issued by IBS.  Infrequently, RCBSR will issue payroll checks to individuals who are involuntarily terminated, or to individuals whose information was not received in time for a processing cutoff for payroll processing.  In such cases, a manual check is prepared.  One of RCBSR's parishes recently hired an employee who insists on a physical check, so that individual will receive a manual check every payday.  The general practice of RCBSR is that IBS withdraws the amounts due on the 15th and the last day of the month from RCBSR's payroll account.  Salaried employees are paid on the 15th of each month for the period from 1st to 15th and on the last day of the month for the period from 16th to end of each month.  Hourly employees submit their time sheets on the 8th and 23rd of each month and are hence paid with a delay of seven days.  Oberting Decl., ¶13.

19.     RCBSR adjusted its regular schedule in light of the bankruptcy filing so that payroll for all Employees prior to the Petition Date was processed and paid on March 10, 2023, and relates to the pay period from March 1, 2023 through March 15, 2023 for salaried employees and February 24, 2023 through March 15, 2023 for the hourly employees.  Amounts for hourly employees were estimated based on the times sheets received on March 8, 2023.  The next payday for all Employees will be March 31, 2023, and will relate to the pay period from March 16, 2023, through March 31, 2023, for salaried employees and March 16 through March 23, 2023, for hourly employees.  The March 31, 2023, payroll may also include unreported pay for the period prior to March 13, 2023, due to the necessity of estimating hours through March 15th.  Oberting Decl., ¶14.

20.     It is vital to obtain authorization for the Debtor to pay the pre-petition payroll to all Employees with the post-petition amounts due on time and without delay.  None of the payments to any particular Employee exceed the amount entitled to priority of $15,150 per claim in Bankruptcy Code section 507(a)(4).  Oberting Decl., ¶15.

21.     The total projected accrued and unpaid pre-petition payroll expenses together with any applicable payroll withholding taxes to be disbursed post-petition is expected to be under $15,000.  Oberting Decl., ¶16.

**Other Non-Wage Employee Benefits**

22.     As described in detail below, RCBSR also provides other benefits to Lay Employees and Priests in the form of health insurance, sick and vacation pay, life insurance and retirement benefits and related benefits.  RCBSR requests authority to continue to pay all such benefits in the ordinary course of business.  The projected accrued and unpaid pre-petition employee benefits other than payroll to be disbursed post-petition is further discussed below.  The RCSBR is only seeking authority to pay combined wages or benefits payments to any particular Employee up to the amount entitled to priority of $15,150 per claim in Bankruptcy Code section 507(a)(5).  Oberting Decl., ¶17.

**Self-funded medical insurance plan**

23.     The RCBSR administers a self-insured health plan ("Health Plan") for its employees and the employees of most of the Non-Debtor Catholic Entities, as discussed below. For health insurance, RCBSR is insured through the Reta Trust ("RETA").  RETA provides healthcare-related benefits to U.S. dioceses and Catholic organizations that are aligned with the teachings of the Roman Catholic Church.  RETA manages contracts and provider networks with national health plans including Blue Cross Blue Shield organizations, Kaiser Permanente, Delta Dental and VSP Vision Care.  All plans are self-insured, and RETA sets the contribution funding rates.  Oberting Decl., ¶18.

24.     On about the 20th day of the month for the upcoming month, RETA sends an invoice to the RCBSR which includes the health insurance premiums for the RCBSR and certain of the Non-Debtor Catholic Entities (Parishes, Catholic Charities, Cemeteries and CNHS).  On the 2nd or 3rd day of the month, RETA withdraws via ACH the entire amount of the invoice in the approximate amount of $500,000 (100%, including the other entities' portions) from the Health Insurance Checking account.  RETA also withdraws from the accounts of the applicable Non-Debtor Catholic Entities the allocated amount owed by such entity (thus RETA is initially collecting twice).  However, if RETA is unable to pull the full amount from one of the other entities, the RCBSR will bill that entity for the amount it advanced on its behalf.  On the 15th of the month, RETA performs a reconciliation and refunds to the RCBSR Health Insurance Checking

account the amounts it collected from the other entities, which is typically the full amount (approximately $500,000). Oberting Decl., ¶19.

25.     When RETA has approval from its Board of Trustees, as a result of reviewing its own cash reserves, it has in the past refunded a portion of health benefits premiums on a monthly basis. The last such refund received by RCBSR was in September 2022. Oberting Decl., ¶20.

26.     When there are excess funds in the Health Insurance Checking account, the RCBSR transfers such funds to the Health Insurance Money Market account to maximize interest accrual. Oberting Decl., ¶21.

27.     Toward the end of the fiscal year, the funding of the Health Insurance account is reviewed. If it is determined there are sufficient excess funds, the RCBSR will inform the appropriate entity or entities that an upcoming monthly billing cycle will be skipped, thus passing on the accumulated refunds back to the entities. Oberting Decl., ¶22.

28.     The RCBSR has 17 employees participating in the Health Plan. There are 79 Parish Priests, three seminarians and six Marian Sisters also participating in the Health Plan. There are two employees utilizing COBRA, one RCBSR and one Non-RCBSR employee. There are a total of 440 employees participating in the Health Plan. Oberting Decl., ¶23.

29.     If the fees are not paid for the services of Blue Shield, Kaiser, Delta and VSP (collectively, "Health Plan Administrators") and there is no authorization for the Health Plan Administrators to pay claims as due in the ordinary course of business, it is probable that the discounts provided by each of the Health Plan Administrators will be lost and the RCBSR, the Employees, the Non-Debtor Catholic Entities, and their employees will be presented with significantly higher provider costs than what is currently paid. Oberting Decl., ¶24.

30.     Because the payments to the Health Plan Administrators on behalf of the Employees will be section 507(a)(5) priority claims, a failure to fund the payments in the near future could significantly harm the creditors of the bankruptcy estate. In addition, the agreements with the Health Plan Administrators constitute executory contracts and any post-petition obligations under such contracts will have administrative priority until the contracts are ultimately rejected or, will have to be paid in full if the RCBSR seeks to assume those contracts. Oberting

Case: 23-10113   Doc# 6   Filed: 03/13/23   Entered: 03/13/23 12:52:52   Page 12 of 30

Decl., ¶25.

31.     Additionally, all the reasons for avoiding Employee turmoil apply with equal or even greater force to continuing the Health Plan.  Oberting Decl., ¶26.

32.     The Health Plan has several expense components including: (a) the monthly cost of the administrative contracts with the Health Plan Administrators; (b) the monthly premiums for the Blue Shield stop-loss insurance; and (c) expenses that must be paid on behalf of or to Employees and Non-RCBSR employees under the Health Plan.  Oberting Decl., ¶27.

33.     In addition to continuing the Health Plan with respect to the Employees, the RCBSR also needs to continue to administer the health benefits and insurance programs for the Non-Debtor Catholic Entities pursuant to its duties under the Servicing Agreements.  Requiring the RCBSR to change its current practices for its Employees, while continuing to administer the Non-Debtor Catholic Entities health benefits and insurance programs under the current structure, would be unduly burdensome and disruptive to the RCBSR's operations.  Oberting Decl., ¶28.

**Vacation Pay Obligations**

34.     The Debtor also seeks authority, but not direction, to permit Employees to use vacation time and other paid time off subject to the Bankruptcy Code priority limitations, whether accrued before or after the Petition Date, in accordance with the Debtor's pre-petition policies. Oberting Decl., ¶29.

35.     **Vacation Time:**  Regular Employees accrue paid vacation time ("Vacation Time") based upon their position and the length of their employment.  While not subject to forfeiture, vacation benefits are subject to a maximum accumulation of 1.5 times the yearly accrual amount. Oberting Decl., ¶30.

36.     The Debtor seeks authority, but not direction, to allow Employees to utilize accrued unused vacation time in the ordinary course of business as well as to pay an Employee for accrued unused vacation upon termination at his/her final rate of pay, subject to the statutory cap of $15,150 (including any other pre-petition wages) per Employee for any such vacation accrued pre-petition.  As of the Petition Date, the Debtor estimates that it owes over $100,000 in total unused vacation pay, of which Debtor estimates approximately $42,000 is potentially entitled to

priority. Oberting Decl., ¶31.

37.   **Holidays:**   Regular full-time or part-time (working at least 20 hours a week) employees receive 11 paid holidays a year. Oberting Decl., ¶32.

**Other Employee Benefits**

38.   As part of the Debtor's Employee Obligations, the Debtor also has established a variety of benefit plans and programs (the "Employee Benefits") designed to assist its Employees and its Employees' eligible dependents in meeting certain financial burdens, including those that arise from illness, disability and death. The Debtor believes that all amounts and obligations related to Employee Benefits that were owed prior to the Petition Date have been paid in full except as noted herein. However, out of an abundance of caution, the Debtor seeks authorization, but not direction, to pay or otherwise honor these Employee Benefits. Oberting Decl., ¶33.

39.   As explained above, the RCBSR maintains a self-funded Health Plan. All full time Employees who have met the applicable pre-enrollment eligibility requirements as described above are eligible to enroll in the Health Plan coverage. Employee contributions are made on pre-tax basis for Health Plan coverage and either a pre-tax or post-tax basis for Life Insurance. The Debtor requests authority to pay any pre-petition costs related to the Health Plan in the ordinary course of business. Oberting Decl., ¶34.

40.   **Continuation of Benefits**: The Debtor seeks to provide continuation of benefits ("COB") to former Employees and former Non-RCBSR Entity employees. The Debtor contracts with RETA to administer the COB. Former Employees and former Non-Debtor Catholic Entities' employees enrolling in COB pay a premium directly to COBRA. COBRA pays these premiums to the Health Plan for the continued health coverage of these former Employees and former Non-RCBSR Entity employees after deducting an administrative fee. The Health Plan claims of the former Employees and former Non-Debtor Entities employees are paid in the ordinary course of business including Blue Cross Blue Shield organizations, Kaiser Permanente, Delta Dental and VSP Vision Care. The Debtor requests authority to pay any pre-petition costs related to COB benefits in the ordinary course of business. Oberting Decl., ¶35.

41.   **Life Insurance:**   The RCBSR provides life insurance through Unum Group

Case: 23-10113   Doc# 6   Filed: 03/13/23   Entered: 03/13/23 12:52:52   Page 14 of 30

("Unum") for the benefit of the RCBSR, its components and the Non-Debtor Catholic entities CNHS, Catholic charities and cemeteries. Unum calculates the premium due once a month and sends an invoice to the Diocese once a month for the previous month's premium. The parishes each pay 0.3% of their gross payroll, which amount is transferred to the Diocese Restricted Fund. The Chancery also pays 0.3% of its gross payroll from the Chancery Operating Fund to the same restricted account. A check is then written from the restricted account to Unum Life. Oberting Decl., ¶36.

**Retirement Benefit Plans**

42. Lay Employees are eligible to contribute to a 403(b) plan ("403(b) Plan"). Contributions to the 403(b) Plan are made both by Employees and RCBSR. The RCBSR makes contributions directly to the Lay Pension Plan on behalf of each eligible Employee. The RCBSR makes an employer contribution to the Plan in the amount of 5.5% of gross payroll for each eligible employee. These amounts are billed to the Schools and Parishes and then deposited into the restricted Diocese Restricted Fund at Wells Fargo. The RCBSR also makes contributions directly to the Qualified Priest Pension Plan on behalf of the Priests. The Non-Debtor Catholic Entities also participate in these retirement plans ("Plans") and make contributions directly to the respective Plans. The 403(b) Plan is administered through OneAmerica. Both the Lay Pension Plan and the Qualified Priest Pension Plan are administered through Wells Fargo Bank. Oberting Decl., ¶37.

43. The RCBSR deducts 403(b) Plan contributions from Employees' paychecks and OneAmerica automatically deducts the withheld 403(b) Plan contributions from the RCBSR's payroll account. The Debtor does not believe that unremitted 403(b) Plan contributions are property of the Debtor's bankruptcy estate. The RCBSR estimates that there will be approximately one pay period worth of deducted but unremitted 403(b) Plan contributions as of the Petition Date and requests the authority to pay such amounts to the 403(b) Plan administrator. Oberting Decl., ¶38.

44. Effective June 20, 2014, the Diocesan Defined Benefit Lay Plan was frozen. The need to freeze the plan was driven by the high unfunded pension liability as of June 20, 2013.

"Frozen" means that each individual's pension benefit was determined and fixed as of the freeze date. This amount remains unchanged regardless of future pay increases or length of service. The RCBSR and the parishes pay premiums to Pension Services equal to 3.6% of payroll towards reduction of the actuarially determined underfunded pension liability. Such payments are made into the Wells Fargo Account Restricted Fund and then transferred to the Lay Pension restricted bank account at PNC, monthly. Oberting Decl., ¶39.

45.     The RCBSR also maintains a Supplemental Employee Retirement Plan ("SERP") solely for the benefit of the Bishop. The actuary retained by the Dioceses, Nicolay Pension Services, provides actuarial reports which indicate how much money should be deposited into the SERP annually. The SERP funds are held at US Bank and the source of the funding is from the Priests Retirement Plan fund at Wells Fargo. Oberting Decl., ¶40.

46.     The Debtor believes that maintaining the Retirement Plans described above is critical in maintaining Employee morale. Accordingly, the Debtor seeks authority to continue in its discretion the Plans, and to pay administrative and other related expenses to maintain the Plans. Oberting Decl., ¶41.

**Pre-petition Amounts Withheld from Employee Paychecks and Related Deductions and Payments**

47.     The RCBSR deducts from Employees' paychecks (as applicable): (i) payroll taxes and the Employee's portion of FICA and disability taxes; (ii) Employee contributions for health and disability-related benefits and flexible spending accounts; (iii) Employee contributions to the 403(b) Plan; (iv) legally ordered deductions such as wage garnishments, child support and tax levies; and (v) miscellaneous other items (collectively, the "Employee Deductions"). The RCBSR forwards amounts equal to the Employee Deductions from the appropriate withholding account to the appropriate third party recipients. The Debtor does not believe that any funds deducted from Employee paychecks for Employee Deductions are property of the RCBSR's bankruptcy estate. The Debtor seeks authority to forward to the appropriate parties any Employee Deductions not forwarded due to the commencement of this chapter 11 case. Oberting Decl., ¶42.

**Reimbursable Expenses**

48.     Eligible Employees may submit certain business-related expenses to the RCBSR for reimbursement (collectively, "Employee Expenses"). Employee Expenses include, but are not limited to, car, hotel stay, meals, parking and other travel expenses and business-related costs. As of the Petition Date, the Debtor does not anticipate owing any Employee Expenses. However, the Debtor seeks authority, but not direction, to pay such Employee Expenses and to continue to pay them post-petition in the ordinary course of business. Oberting Decl., ¶43.

**Summary**

49.     The Debtor submits that the amounts to be paid pursuant to this Motion are de minimis in light of the importance and necessity of preserving the Employees' services and morale and the difficulties and losses the Debtor and its estate will suffer if Employees leave in significant numbers. Further, many of these obligations are not immediate, such as accrued paid leave benefits, but rather will be satisfied over an extended period of time. The Debtor also submits that there is ample justification for its belief that even the slightest delay in providing this relief to its Employees will hamper its operations and damage its estate and, as a consequence, the Debtor is anxious to reassure the Employees. Oberting Decl., ¶44.

50.     The Debtor has filed a motion contemporaneously herewith asking the Court to authorize it to continue using its pre-petition bank accounts post-petition. The banks where those accounts are located should be ordered to honor the payroll and expense checks drawn on those accounts as such checks are presented for payment. Oberting Decl., ¶45.

51.     The Debtor further seeks authority to pay any and all local, state, and federal withholding and payroll-related taxes relating to pre-petition periods and post-petition periods relating to the Debtor's Employees. The Debtor is current on all such taxes due through the Petition Date. Oberting Decl., ¶46.

## LEGAL ANALYSIS

As a result of the commencement of the Debtor's chapter 11 case, and in the absence of an order of the Court providing otherwise, the Debtor will be prohibited from paying or otherwise satisfying its pre-petition obligations regarding Employee Obligations, Employee Deductions and

Employee Expenses, and the checks and direct deposit transfers issued in respect of the Employee Obligations, Employee Deductions and Employee Expenses will be dishonored. Any delay in payment of the Employees' wages and salaries will be detrimental to the Debtor's relationship with its Employees and its ability to maintain a stable workforce. The Debtor faces the possibility that its ability to continue providing the services it provides, servicing the Service Agreements and carrying on its ministry and mission would be significantly impaired if its Employees do not report for work or choose to look for alternative employment. At this early stage in the case, the Debtor cannot risk any disruption in its ministry to the faithful and providing support services, including those ministering to the poor, hungry, and homeless caused by its inability to maintain a stable work force. The amounts requested in the Motion are reasonable and necessary when viewed in the context of the number of Employees, the importance of preserving Employee services and morale, and the harm to the Debtor, the creditors, and the estate if these amounts are not paid. To maintain Employee morale at this critical time for the Debtor, and to minimize the personal hardship the Employees would suffer if pre-petition Employee-related obligations are not paid or honored when due, the Debtor seeks authority to honor in its discretion such obligations.

A.    **Immediate Payment of Withheld Amounts and Deductions that Are Not Property of the Estate Should Be Allowed.**

Section 541 (b)(7) of the Bankruptcy Code excludes from property of the estate money withheld from an employee's wages for contributions employee benefit plans, such as a 403(b) plan or health insurance plan. 11 U.S.C. § 541 (b)(7). Section 541 (d) of the Bankruptcy Code excludes "[p]roperty in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest." 11 U.S.C. § 541(d). Deductions such as legally ordered wage garnishments, child support payments and Employee pension plan contributions as well as money withheld by the Debtor from Employees' paychecks on account of various federal, state and local income, FICA, Medicare and other taxes (collectively, "Withholdings") fall within Sections 541(b)(7) or 541**Error! Bookmark not defined.**(d) and do not constitute property of the estate. To avoid disruption to the Debtor's business operations, and the interest charges that could result

Case: 23-10113    Doc# 6    Filed: 03/13/23    Entered: 03/13/23 12:52:52    Page 18 of 30

from the nonpayment of the Withholdings, the Court should permit the Withholdings to be paid to the appropriate third parties.

**B.     Immediate Payment of Pre-Petition Employee Wages, Compensation and Benefits is Necessary and is Authorized by 11 U.S.C. §§ 363(b), 507(a) and 105(a).**

Courts routinely recognize the justifications set forth above for allowing a debtor to pay pre-petition wages, compensation and benefits.  The Debtor has the right to adopt reasonable employment policies pursuant to sections 1107 and 1108 of the Bankruptcy Code and may use property of the estate to continue its operations under section 363(b).  Section 363(b)(1) of the Bankruptcy Code provides that "[t]he trustee, after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate…"  11 U.S.C. §363(b)(1).  Section 363(c)(1) allows the Debtor to use property of the estate in the ordinary course of business without court approval.  Furthermore, courts recognize that a debtor-in-possession has a fiduciary duty to, among other things, protect and preserve the bankruptcy estate. *In re CoServ*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002).

In addition, section 507(a) of the Bankruptcy Code provides a list of priorities in distribution of the estate of the debtor.  The fourth and fifth priorities are for the wages and benefits of employees of the debtor, respectively, up to $15,150, for unpaid wages and benefits earned within 180 days before the Petition Date; the eighth priority relates to employment taxes.  These priority claims are paid in full before the general unsecured creditors of the estate receive a dividend.

(a)     The following expenses and claims have priority in the following order:

> (4)     Fourth, allowed unsecured claims, but only to the extent of $15,150 for each individual or corporation, as the case may be, earned within 180 days before the date of the filing of the petition or the date of the cessation of the debtor's business, whichever occurs first, for –
>
> > (A)     wages, salaries, or commissions, including vacation, severance, and sick leave pay earned by an individual; or . . .
>
> (5)     Fifth, allowed unsecured claims for contributions to an employee benefit plan –

MOTION FOR ORDER AUTHORIZING PAYMENT OF
PRE-PETITION WAGES AND HONOR BENEFITS

(A) arising from services rendered within 180 days before the date of the filing of the petition or the date of the cessation of the debtor's business, whichever occurs first; but only

(B) for each such plan, to the extent of –

(i) the number of employees covered by each such plan multiplied by $15,150; less

(ii) the aggregate amount paid to such employees under paragraph (4) of this subsection, plus the aggregate amount paid by the estate on behalf of such employees to any other employee benefit plan. . . .

(8) Eighth, allowed unsecured claims of governmental units, only to the extent that such claims are for –

(C) a tax required to be collected or withheld and for which the Debtor is liable in whatever capacity;

(D) an employment tax on a wage, salary, or commission of a kind specified in paragraph (4) of this subsection earned from the Debtor before the date of filing of the petition, whether or not actually paid before such date, for which a return is last due, under applicable law or under any extension, after three years before the date of the filing of the petition;

(b) Furthermore, section 105(a) of the Bankruptcy Code grants courts broad authority to carry out and enforce the provisions of Title 11 using equitable doctrines.

The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

11 U.S.C. §105(a).

The Debtor believes it is advisable, prudent and necessary under the circumstances described above to pay the pre-petition wages, compensation and benefits due to its Employees as proposed. Priority payment to employees is authorized under section 507(a) and the requested relief merely affects the timing of such payment. The wages, salaries, commissions, sick leave and other Employee benefits that the Debtor seeks to pay or otherwise honor generally constitute priority claims under the Bankruptcy Code to the extent of $15,150 per Employee. Because a significant portion of the wages, salaries, commissions, sick leave and other Employee benefits that the Debtor seek to pay or otherwise honor likely constitute priority claims pursuant to section

507(a), which must be paid in full pursuant to section 1129(a)(9) of the Bankruptcy Code in order to confirm a plan of reorganization, such priority claims will be paid either now or in the near future. Making such payments now will not only prevent disruption of the Debtor's ministry and services to the community as well as personal harm to Employees, but also will reduce the administrative burden that otherwise would be imposed in this case.[3]

Furthermore, authorizing payment of such pre-petition employment expenses is an appropriate exercise of the court's discretion under sections 363(b) and 105(a). *In re Ionosphere Clubs, Inc.,* 98 B.R. 174, 175-76 (Bankr. S.D.N.Y. 1989); *see also Northwest Engineering Co. v. United States Steel Workers*, 863 F.2d 1313, 1315 (7th Cir. 1988) ("If employees were treated in all respects as unsecured creditors, they would be inclined to desert a leaky ship, speeding up the firm's collapse. . ."). Pursuant to Bankruptcy Code section 105(a), courts have invoked the "necessity of payment" doctrine[4] to authorize the immediate payment of a debtor's pre-petition obligations to unsecured creditors before plan confirmation when such payment is essential to the continued operation of the debtor in a chapter 11 reorganization. *See In re Columbia Gas Systems, Inc.*, 171 B.R. 189, 192 (Bankr. D. Del. 1994) (to justify payment of one class of pre-petition creditors in advance of a confirmed plan, the debtor must show that payment is essential to the continued operation of the business); *In re Penn Central Transp. Co.*, 467 F.2d 100, 102 and n.1 (3d Cir. 1972) (pre-Code case recognizing "necessity of payment" cases permitting immediate payment of claims of creditors where those creditors will not supply services or material essential to the conduct of the business until their pre-reorganization claims shall have been paid).

The Ninth Circuit has recognized the "necessity of payment" doctrine. In *Burchinol v. Central Washington Bank (In re Adam's Apple, Inc.)*, 829 F.2d 1484, 1490 (9th Cir, 1987), the Ninth Circuit discussed the existence of two competing "fundamental tenets" of bankruptcy: (1) equality in the treatment of all creditors; and (2) the rehabilitation of Debtor. The court stated that the rehabilitation of a debtor "may supersede the policy of equal treatment" of creditors, and went on to describe such situations, specifically mentioning the payment of pre-petition wages

---

[3] The Debtor will not pay any pre-petition wage or other claims in excess of the statutory cap.

[4] Alternatively called the "necessity of payment" rule.

Case: 23-10113  Doc# 6  Filed: 03/13/23  Entered: 03/13/23 12:52:52  Page 21 of 30

and benefits to employees. *Id.* ("Cases have permitted unequal treatment of pre-petition debts when necessary for rehabilitation, in such contexts as (i) pre-petition wages to key employees; (ii) hospital malpractice premiums incurred prior to filing; (iii) debts to providers of unique and irreplaceable supplies; and (iv) peripheral benefits under labor contracts.").[5] Furthermore, the court went on to state that section 364(d), for example, "illustrates a Congressional willingness to subordinate the interests of pre-petition creditors to the goal of rehabilitation." *Id.*

In its discussion, the *Adam's Apple* court did not mention an earlier Ninth Circuit case, *In re B & W Enterprises, Inc.*, 713 F.2d 534 (9th Cir. 1983), which questioned whether the "necessity of payment" doctrine survived the 1978 changes to the Bankruptcy Code, and stated that, if it did, the court would apply the doctrine only to railroad cases "absent compelling reasons." *Id.* at 537. Ultimately, the court in that case declined to apply the doctrine because the appellants had not presented "sufficient justification" for extending the doctrine to the (non-railroad) debtor. *Id.* Numerous courts throughout the country have held that the doctrine did survive the 1978 Bankruptcy Code changes and can apply to non-railroad Debtor. *See In re Ionosphere Clubs, Inc., supra,* at 175-176; *In re Just for Feet, Inc.*, 242 B.R. 821 (Bankr. D. Del. 1999); *In re Gulf Air*, 112 B.R. 152, 153 (Bankr. W.D. La. 1989) (finding that payment of pre-petition wage and benefit obligations was in the best interest of creditors and necessary for the successful reorganization of the debtor, the court granted the debtor's motion to pay pre-petition employee related expenses). Moreover, the *Adam's Apple* court in its discussion did not limit the doctrine to railroad cases only.

In numerous other recent chapter 11 cases, bankruptcy courts have approved payment of pre-petition claims for wages, compensation, benefits and expenses pursuant to section 105(a) in this and in other districts. *See In re Roman Catholic Bishop of Stockton*, Case No. 14-20371-C-11 (Bankr. E.D. Cal. Jan. 24, 2014 [Dkt. No. 66]); *In re Hansaben Investments, LLC*, Case No. 22-30258 (Bankr. N.D. Cal. May 27, 2022[Dkt. No. 26]); *In re Norwich Roman Catholic Diocesan*

---

[5] *See also In re Ionosphere Clubs, Inc., supra,* at 176 ("The policy of equality among creditors… may be of significance in liquidation cases under Chapter 7, however, the paramount policy and goal of Chapter 11, to which all other bankruptcy policies are subordinated, is the rehabilitation of the debtor.").

*Corporation,* Case No. 21-20687 (Bankr. D. Conn. July 22, 2021[Dkt No. 61]); *In re ZF in Liquidation LLC fka Zacky Farms, LLC*, Case No. 12-37961-B-11 (Bankr. E.D. Cal. Nov. 5, 2012); *In re Western Pipeline, Inc.*, Case No. 09-21792 (Bankr. E.D. Cal. Apr. 6, 2009); *In re Barbeques Galore, Inc.*, Case No. 08-16036 (Bankr. C.D. Cal. Aug. 20, 2008); *In re Gottschalks Inc.*, 09-10157 (Bankr. D. Del. Feb. 10, 2009); *In re Frontier Airlines Holdings, Inc.*, Case No. 08-11298 (Bankr. S.D.N.Y. Apr. 14, 2008).

With respect to the accrued and unpaid Employee Obligations, Employee Deductions and Employee Expenses, the Debtor request that, to the extent practicable, the applicable banks be directed to honor checks or fund transfer requests regardless of whether they were issued prior to or after the Petition Date. The Debtor has or will have on deposit sufficient funds in its disbursement account to satisfy all the Employee Obligations, Employee Deductions and Employee Expenses so that the bank will not be prejudiced by an order directing it to honor the Debtor's checks or fund transfer requests with respect to such amounts.

Finally, authorization of the payment of the pre-petition Employee Obligations shall not be deemed to constitute post-petition assumption or adoption of any policy, plan, program, or employee agreement pursuant to section 365 of the Bankruptcy Code. The Debtor is in the process of reviewing these matters and reserving all of its rights under the Bankruptcy Code with respect thereto.

The Debtor seeks to avail itself of the protection and flexibility provided by the bankruptcy laws to reorganize and address the financial crisis that has befallen the Debtor. Wherefore, the Debtor seeks this Court's permission to honor its pre-petition obligations to its employees in order to prevent employee defection and harm to the Debtor's business, and to implement a seamless transition into chapter 11.

### C. The Payment of Pre-Petition Employee Wages, Compensation and Benefits is Necessary Under Federal Rule of Bankruptcy Procedure 6003.

Pursuant to Rule 6003 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the Court may grant relief regarding a motion to pay all or part of a pre-petition claim within 21 days after the Petition Date if the relief is necessary to avoid immediate and irreparable

harm. As described above, the Debtor's Employees are integral to the Debtor's operations. Failure to satisfy obligations with respect to the Employees in the ordinary course of business during the first 21 days of this chapter 11 case will jeopardize their loyalty and trust, causing Employees to leave the Debtor's employ and severely disrupting the Debtor's operations at this critical juncture, as well as harming the Debtor's going concern value. Moreover, the Employees rely on their compensation, benefits and reimbursement of expenses to pay their living expenses and the effect could be financially ruinous if the Debtor cannot pay them in the ordinary course of business. Accordingly, the Debtor submits that it has satisfied the requirements of Bankruptcy Rule 6003 to support immediate payment of its Employee Obligations.

To the extent the fourteen day stay of Bankruptcy Rule 6004(h) may be construed to apply to the subject matter of this Motion, the Debtor requests that such stay be waived.

## CONCLUSION

The RCBSR does not seek to liquidate its operations. The Debtor seeks to avail itself of the protection and flexibility provided by the bankruptcy laws to reorganize and address the financial and abuse crises that have befallen the RCBSR. In order to keep ministering to the faithful and providing support services to those ministering to the poor, hungry, and homeless, the RCBSR must maintain its current workforce. The RCBSR seeks this Court's permission to honor its pre-petition obligations to its Employees in order to prevent employee defection and to implement a seamless transition into chapter 11.

WHEREFORE, the Debtor respectfully requests entry of an order:

1.    Authorizing the Debtor to pay or otherwise honor pre-petition payroll obligations;

2.    Authorizing the Debtor to continue post-petition the employee benefit plans and programs in effect prior to the Petition Date, and to pay all sums due (including accrued pre-petition payment obligations) in the ordinary course;

3.    Permitting the Debtor to continue payment of all local, state, and federal withholding and payroll taxes (including those accrued for pre-petition periods) or have such taxes paid by third party payroll administrators;

4.    Directing its banks to honor all pre-petition payroll and employee expense checks;

Case: 23-10113    Doc# 6    Filed: 03/13/23    Entered: 03/13/23 12:52:52    Page 24 of 30

1          5.     Authorizing the Debtor to continue to administer the insurance programs and

2     Health Plan pursuant to the Servicing Agreements; and

3          6.     For such other and further relief as the Court deems just and proper.

4     Dated: March 13, 2023

5                                     FELDERSTEIN FITZGERALD
                                WILLOUGHBY PASCUZZI & RIOS LLP

6

7                         By:*/s/ Paul J. Pascuzzi*
                          PAUL J. PASCUZZI
                          Proposed Attorneys for

8                               Debtor and Debtor-In-Possession,
                          The Roman Catholic Bishop of Santa Rosa

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MOTION FOR ORDER AUTHORIZING PAYMENT OF
PRE-PETITION WAGES AND HONOR BENEFITS

# EXHIBIT A

Case: 23-10113    Doc# 6    Filed: 03/13/23    Entered: 03/13/23 12:32:52    Page 26 of 30

PAUL J. PASCUZZI, State Bar No. 148810
JASON E. RIOS, State Bar No. 190086
THOMAS R. PHINNEY, State Bar No. 159435
FELDERSTEIN FITZGERALD
WILLOUGHBY PASCUZZI & RIOS LLP
500 Capitol Mall, Suite 2250
Sacramento, CA 95814
Telephone: (916) 329-7400
Facsimile: (916) 329-7435
ppascuzzi@ffwplaw.com
jrios@ffwplaw.com
tphinney@ffwplaw.com

Proposed Attorneys for
The Roman Catholic Bishop of Santa Rosa

# UNITED STATES BANKRUPTCY COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SANTA ROSA DIVISION

| | |
|---|---|
| In re:<br><br>THE ROMAN CATHOLIC BISHOP OF SANTA ROSA,<br><br>Debtor In Possession. | CASE NO. 23-10113<br><br>Chapter 11<br><br>Date: March 16, 2023<br>Time: 1:00 p.m.<br>Location: 1300 Clay Street, Ctrm. 215<br>Oakland, CA<br>[In person or via Zoom]<br>Judge: Hon. Charles Novack<br><br>Order Shortening Time |

## INTERIM ORDER AUTHORIZING DEBTOR TO PAY PRE-PETITION WAGES, SALARIES AND EMPLOYEE EXPENSES, TO PAY ACCRUED EMPLOYEE BENEFITS AND TAXES, AND DIRECTING BANKS TO HONOR PAYROLL AND EXPENSE CHECKS

The motion of The Roman Catholic Bishop of Stockton ("Debtor in Possession") seeking entry of an order authorizing the Debtor in Possession to pay prepetition wages, salaries and employee expenses, to pay accrued employee benefits and taxes, and directing banks to honor payroll and expense checks (the "Motion"), came on for hearing on March ___, 2023, at ___:00 a.m., in Courtroom ___ of the United States Bankruptcy Court for the Northern District of

ORDER AUTHORIZING DEBTOR TO PAY PREPETITION WAGES, SALARIES AND EMPLOYEE EXPENSES

California. The Debtor in Possession appeared through its counsel, Paul J. Pascuzzi. Other appearances were noted on the record. All capitalized terms used but not defined in this Order shall have the meanings given to them in the Motion.

The Court has considered the Motion, the Declaration of Joe Oberting regarding description of Debtor in Possession and Pre-Filing History filed on March 13, 2023, the Declaration of Joe Oberting filed in support of this Motion, and the matters reflected in the record of the hearing held on the Motion on March __, 2023. The Court having found that it has jurisdiction over this proceeding; that this is a core proceeding; that notice of the Motion has been given to the Office of the United States Trustee, the twenty largest unsecured creditors, all secured creditors, and any applicable governmental entities; that no further notice is necessary; that the relief sought in the Motion is in the best interests of the Debtor in Possession, its estate, and its creditors; and that good and sufficient cause exists for such relief.

Accordingly, it is hereby ORDERED as follows:

1. The Motion (docket no.__) is GRANTED subject to the provisions hereof below.[1]

2. The Debtor in Possession is authorized, but not directed, to pay to its Employees all Employee Obligations, Employee Deductions and Employee Expenses that have accrued by virtue of the services rendered by its Employees prior to the Petition Date up to the amounts entitled to priority claim status under the provisions of section 507(a) of the Bankruptcy Code. The Employee Obligations, Employee Deductions and Employee Expenses that the Debtor is authorized to pay are described in the Motion and include, without limitation, the following: wages, salary, retirement, healthcare and other benefit programs up to the amounts entitled to priority claim status under the provisions of section 507(a) of the Bankruptcy Code.

3. The Debtor in Possession is authorized, but not directed, to pay all local, state, and federal withholding and payroll taxes (including those accrued for pre-petition periods) or have such taxes paid by third-party payroll administrators.

4. The Debtor in Possession is authorized, but not directed, to continue its practices, programs and policies in effect as of the Petition Date with respect to all Employee Obligations

---

[1] Capitalized terms have the definitions referenced in the Motion unless otherwise defined herein.

ORDER AUTHORIZING DEBTOR TO PAY PREPETITION WAGES, SALARIES AND EMPLOYEE EXPENSES

Case: 23-10113   Doc# 6   Filed: 03/13/23   Entered: 03/13/23 12:32:52   Page 28 of 30

(including allowing employees to use time off accrued, but unused, as of the Petition Date) up to the amounts entitled to priority claim status under the provisions of section 507(a) of the Bankruptcy Code.

5.     The bank at which the Debtor in Possession maintains an account from which the Debtor in Possession's payroll obligations are disbursed and all other banks or lending institutions maintaining payroll and employee benefits accounts are authorized, but not directed, to honor and pay all pre-petition and post-petition checks issued or to be issued and fund transfers requested or to be requested, by the Debtor in Possession in respect of the Employee Obligations, Employee Deductions and Employee Expenses.

6.     The Debtor in Possession is authorized, but not directed, to issue new post-petition checks or fund transfer requests with respect to pre-petition obligations that may have been dishonored by the banks relating to the Employee Obligations, Employee Deductions and Employee Expenses, if necessary, to the extent such are up to the amounts entitled to priority claim status under the provisions of section 507(a) of the Bankruptcy Code.

7.     The Debtor in Possession is authorized, but not directed, to continue to administer the insurance programs and Health Plan pursuant to the Servicing Agreements.

8.     Nothing in this Order authorizes the Debtor in Possession to make any payments that benefit, directly or indirectly, any credibly accused perpetrator of abuse, whether for wages, support, housing, prepetition claims, retirement or otherwise.

9.     The Debtor in Possession shall provide the U.S. Trustee a list of Employees to be paid under this Order including accrual dates and amounts to be paid to each Employee.

10.    The Court shall retain jurisdiction to hear and determine all matters arising from the implementation of this Order.

11.    To the extent the fourteen day stay of Bankruptcy Rule 6004(h) may be construed to apply to the subject matter of this Order, such stay is hereby waived.

12.    The final hearing on the Motion shall be heard on _____, 2023, at _____ _.m.  Opposition, if any, to the granting of the Motion on a final basis shall be filed by _____, 2023.  The Debtor's reply to any opposition shall be filed by _____,

1   2023.

2       13.     Counsel to the Debtor in Possession is directed to serve a copy of this Order on all

3   parties on the Limited Service List as defined in the Debtor's Motion For Order Establishing

4   Notice Procedures and to File Confidential Information Under Seal on file herein within three (3)

5   days of the entry of this Order and to file a certificate of service with the Clerk of the Court.

6   APPROVED AS TO FORM.

7   OFFICE OF THE UNITED STATES
    TRUSTEE

8   /s/ _____

9

10                          * * * END OF ORDER * * *

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORDER AUTHORIZING DEBTOR TO PAY PREPETITION
WAGES, SALARIES AND EMPLOYEE EXPENSES

Case: 23-10113   Doc# 6   Filed: 03/13/23   Entered: 03/13/23 12:32:52   Page 30 of 30