PAUL J. PASCUZZI, State Bar No. 148810
JASON E. RIOS, State Bar No. 190086
THOMAS R. PHINNEY, State Bar No. 159435
FELDERSTEIN FITZGERALD
WILLOUGHBY PASCUZZI & RIOS LLP
500 Capitol Mall, Suite 2250
Sacramento, CA 95814
Telephone: (916) 329-7400
Facsimile: (916) 329-7435
ppascuzzi@ffwplaw.com

Proposed Attorneys for
The Roman Catholic Bishop of Santa Rosa

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SANTA ROSA DIVISION

| | |
|---|---|
| In re:<br><br>THE ROMAN CATHOLIC BISHOP OF SANTA ROSA,<br><br>Debtor In Possession. | CASE NO. 23-10113<br><br>Chapter 11<br><br>Date: March 16, 2023<br>Time: 1:00 p.m.<br>Location: 1300 Clay Street, Ctrm. 215<br>Oakland, CA<br>[In person or via Zoom]<br>Judge: Hon. Charles Novack<br><br>Order Shortening Time |

**DECLARATION OF DEACON JOE OBERTING IN SUPPORT OF MOTION FOR ORDER (1) AUTHORIZING PAYMENT OF PREPETITION WAGES, SALARIES, AND EMPLOYEE EXPENSES; (2) TO PAY ACCRUED EMPLOYEE BENEFITS AND TAXES; AND (3) DIRECTING BANKS TO HONOR PAYROLL AND EXPENSE CHECKS**

I, Deacon Joe Oberting, hereby declare under penalty of perjury as follows:

1. I am the Chief Financial Officer ("CFO") of The Roman Catholic Bishop of Santa Rosa, a California, corporation sole ("RCBSR"), the Debtor and Debtor in Possession herein (the "Debtor in Possession"). As the CFO, I am generally familiar with the RCBSR's day-to-day operations, business affairs and books and records.

2. On March 13, 2023 (the "Petition Date"), the RCBSR filed its voluntary petition for

relief under chapter 11 of the United States Bankruptcy Code (the "Bankruptcy Code").

3. All facts set forth in this Declaration are based on my personal knowledge, upon information supplied to me by people who report to me, upon information supplied to me by RCBSR's professionals and consultants, upon my review of relevant documents, or upon my opinion based on my experience and knowledge with respect to RCBSR's operations, financial condition and related business issues. The documents submitted herewith, referenced herein or otherwise relied upon by me for purposes of this Declaration are the business records of RCBSR, prepared and kept in ordinary and regularly conducted business activity of RCBSR, and used by me for those purposes. If I were called upon to testify, I could and would testify competently to the facts set forth herein, and I am authorized to submit this Declaration on behalf of RCBSR.

4. I make this declaration in support of the RCBSR's Motion for Order (1) Authorizing and Approving Payment of Prepetition Wages, Salaries, and Employee Expenses; (2) To Pay Accrued Employee Benefits and Taxes; and (3) Directing Banks to Honor Payroll and Expense Checks (the "Motion").

5. The RCBSR filed this case in order to reorganize its financial affairs pursuant to a plan of reorganization that will, among other things, fairly, justly, and equitably compensate survivors of sexual abuse by clergy or others associated with the RCBSR and bring healing to survivors, parishioners and others affected by past acts of sexual abuse. The RCBSR has limited funds with which to respond to the variety of demands from its creditors. The RCBSR requires the bankruptcy court's protection and the protection of the bankruptcy laws to make fair and equitable payment on all of the claims against it, including the claims by survivors of abuse, trade creditors, the parishes and others, while continuing its ministries and support it offers to Catholic parishes and communities. Additional detailed background information on the RCBSR can be found in my Declaration of Deacon Joe Oberting in Support of Chapter 11 Petition and First Day Motions filed on the Petition Date ("Oberting Background Decl."), and the Declaration of Adrienne Moran in support of Chapter 11 Petition and First Day Motions, also filed on the Petition Date ("Moran Decl").

///

**Overview of Payroll and Employee Benefits**

6.      As further discussed in the Oberting Background Decl., the RCBSR provides certain administrative services and pooling arrangements for the various components of the RCBSR, as well as for the various Non-Debtor Catholic Entities pursuant to service management agreements (collectively, the "Services Agreements") and otherwise.[1]  The RCBSR receives fees for the services the RCBSR provides under the Services Agreements.  For example, RCBSR assesses each Parish an annual service fee based on its gross receipts.

7.      The employees of the RCBSR include both lay employees (the "Lay Employees") as well as priests (which includes the Bishop) (the "Priests").  The RCBSR has approximately twenty-five salaried employees and six hourly employees.  In addition to the Lay Employees and the Priests, the RCBSR also processes and pays payroll for most of the Parishes, although some administer their own payrolls funded by those entities.  The RCBSR bills and is reimbursed the amounts paid on behalf of the respective Parish entity.  In general as described below, RCBSR manages employee benefits such as payroll, health insurance and retirement, for the benefit of its employees and for the benefit of the Non-Debtor Catholic Entities.  Unless otherwise specified. "Employees" as used herein refers to RCBSR's employees.  The RCBSR does not make any payments that benefit, directly or indirectly, any credibly accused perpetrator of abuse, whether for wages, support, housing, prepetition claims, retirement or otherwise.

8.      The Employees are essential to the Debtor's ability to preserve its existing ministries, provide administrative and other services to the Non-Debtor Catholic Entities, and reorganize successfully.  The experience and knowledge of the Employees are critical to Debtor's ongoing service.

9.      As a result of the commencement of the Debtor's chapter 11 case, and in the absence of an order of the Court providing otherwise, the Debtor will be prohibited from paying or otherwise satisfying its pre-petition obligations to the Employees, including its obligations under various wage, salary, retirement, healthcare, and other benefit programs (collectively, the

---

[1] The Non-Debtor Catholic Entities are described in the Oberting Background Decl. and include the Parishes, RCWC, CCF, Catholic Charities, CNHS, and Cemeteries.

"Employee Obligations"). In addition, checks, wire transfers and direct deposit transfers issued in respect of the Employee Obligations will be dishonored.

10. The Debtor's petition for relief under chapter 11 of the Bankruptcy Code will very likely cause the Employees to question their future with the Debtor. Commensurate with the mission of the RCBSR to maximize the needs of those who rely on the RCBSR's ministry, education, and charitable outreach, the Employees, especially the Priests, are paid modest salaries. The Debtor submits that if it fails to pay the pre-petition obligations and continue the employee benefits, its Employees will suffer significant hardship and may be unable to meet their personal living expenses. Such a result would obviously have a negative impact on employee morale and would likely result in unmanageable turnover and loss. The Debtor must demonstrate its ability to continue paying its Employees and providing those benefits that have been promised to them as a condition of their employment with the Debtor.

11. To maintain Employee morale at this critical time for the Debtor, and to minimize the personal hardship the Employees would suffer if pre-petition Employee Obligations, Employee Deductions (defined below) and Employee Expenses (defined below) are not paid or honored when due, the Debtor seeks to continue the regular payment of wages, salaries, and employment-related benefits and expenses as they come due in the ordinary course, including Employee Obligations, Employee Deductions and Employee Expenses that were incurred pre-petition but which come due for payment post-petition. The amounts requested are within the priority claim amounts set forth in the Bankruptcy Code. The Debtor believes the timely payment of Employee Obligations, Employee Deductions and Employee Expenses is necessary and desirable to the Debtor's successful reorganization and that such payments are in the best interests of creditors and the estate.

**Pre-petition payroll**

12. The Debtor contracts with IBS to prepare the payroll for its Lay Employees and Priests. In the ordinary course of its business, the Debtor issues payroll checks on two different schedules. Lay Employees are paid on the 15th and the last day of the month. Priests are paid on the same schedule as Lay Employees. Some Priests will have pre-petition amounts accrued as of

the Petition Date and some Lay Employees may have pre-petition amounts accrued as of the Petition Date.

13. The RCBSR does not generally issue payroll checks itself, as these are issued by IBS. Infrequently, RCBSR will issue payroll checks to individuals who are involuntarily terminated, or to individuals whose information was not received in time for a processing cutoff for payroll processing. In such cases, a manual check is prepared. One of our parishes recently hired an employee who insists on a physical check, so that individual will receive a manual check every payday. The general practice of RCBSR is that IBS withdraws the amounts due on the 15th and the last day of the month from RCBSR's payroll account. Salaried employees are paid on the 15th of each month for the period from 1st to 15th and on the last day of the month for the period from 16th to end of each month. Hourly employees submit their time sheets on 8th and 23rd each month and are hence paid with a delay of seven days.

14. RCBSR adjusted its regular schedule in light of the bankruptcy filing so that payroll for all Employees prior to the Petition Date was processed and paid on March, 10, 2023, and relates to the pay period from March 1, 2023 through March 15, 2023 for salaried employees and February 24, 2023 through March 15, 2023 for the hourly employees. Amounts for hourly employees were estimated based on the times sheets received on March 8, 2023. The next payday for all Employees will be March 31, 2023, and will relate to the pay period from March 16, 2023 through March 31, 2023 for salaried employees and March 16 through March 23, 2023 for hourly employees. The March 31, 2023 payroll may also include unreported pay for the period prior to March 13, 2023 due to the necessity of estimating hours through March 15th.

15. It is vital to obtain authorization for the Debtor to pay the pre-petition payroll to all Employees with the post-petition amounts due on time and without delay. None of the payments to any particular Employee exceed the amount entitled to priority of $15,150 per claim in Bankruptcy Code section 507(a)(4).

16. The total projected accrued and unpaid pre-petition payroll expenses together with any applicable payroll withholding taxes to be disbursed post-petition is expected to be under $15,000.

**Other Non-Wage Employee Benefits**

17. As described in detail below, RCBSR also provides other benefits to Lay Employees and Priests in the form of health insurance, sick and vacation pay, life insurance and retirement benefits and related benefits. RCBSR requests authority to continue to pay all such benefits in the ordinary course of business. The projected accrued and unpaid pre-petition employee benefits other than payroll to be disbursed post-petition is further discussed below. The RCSBR is only seeking authority to pay combined wages or benefits payments to any particular Employee up to the amount entitled to priority of $15,150 per claim in Bankruptcy Code section 507(a)(5).

**Self-funded medical insurance plan**

18. The RCBSR administers a self-insured health plan ("Health Plan") for its employees and the employees of most of the Non-Debtor Catholic Entities, as discussed below. For health insurance, RCBSR is insured through the Reta Trust ("RETA"). RETA provides healthcare-related benefits to U.S. dioceses and Catholic organizations that are aligned with the teachings of the Roman Catholic Church. RETA manages contracts and provider networks with national health plans including Blue Cross Blue Shield organizations, Kaiser Permanente, Delta Dental and VSP Vision Care. All plans are self-insured, and RETA sets the contribution funding rates.

19. On about the 20th day of the month for the upcoming month, RETA sends an invoice to the RCBSR which includes the health insurance premiums for the RCBSR and certain of the Non-Debtor Catholic Entities (Parishes, Catholic Charities, Cemeteries and CNHS). On the 2nd or 3rd day of the month, RETA withdraws via ACH the entire amount of the invoice in the approximate amount of $500,000 (100%, including the other entities' portions) from the Health Insurance Checking account. RETA also withdraws from the accounts of the applicable Non-Debtor Catholic Entities the allocated amount owed by such entity (thus RETA is initially collecting twice). However, if RETA is unable to pull the full amount owing from one of the other entities, the RCBSR will bill that entity for the amount it advanced on its behalf. On the 15th of the month, RETA performs a reconciliation and refunds to the RCBSR Health Insurance Checking account the

1 amounts it collected from the other entities, which is typically the full amount (approximately $500,000).

20. When RETA has approval from its Board of Trustees, as a result of reviewing its own cash reserves, it has in the past refunded a portion of health benefits premiums on a monthly basis. The last such refund received by RCBSR was in September 2022.

21. When there are excess funds in the Health Insurance Checking account, the RCBSR transfers such funds to the Health Insurance Money Market account to maximize interest accrual.

22. Toward the end of the fiscal year, the funding of the Health Insurance account is reviewed. If it is determined there are sufficient excess funds, the RCBSR will inform the appropriate entity or entities that an upcoming monthly billing cycle will be skipped, thus passing on the accumulated refunds back to the entities.

23. The RCBSR has 17 employees participating in the Health Plan. There are 79 Parish Priests, three seminarians and six Marian Sisters also participating in the Health Plan. There are two employees utilizing COBRA, one RCBSR and one Non-RCBSR employee. There are a total of 440 employees participating in the Health Plan.

24. If the fees are not paid for the services of Blue Shield, Kaiser, Delta and VSP (collectively, "Health Plan Administrators") and there is no authorization for the Health Plan Administrators to pay claims as due in the ordinary course of business, it is probable that the discounts provided by each of the Health Plan Administrators will be lost and the RCBSR, the Employees, the Non-Debtor Catholic Entities, and their employees will be presented with significantly higher provider costs than what is currently paid.

25. Because the payments to the Health Plan Administrators on behalf of the Employees will be section 507(a)(5) priority claims, a failure to fund the payments in the near future could significantly harm the creditors of the bankruptcy estate. In addition, the agreements with the Health Plan Administrators constitute executory contracts and any post-petition obligations under such contracts will have administrative priority until the contracts are ultimately rejected or, will have to be paid in full if the RCBSR seeks to assume those contracts.

26. Additionally, all the reasons for avoiding Employee turmoil apply with equal or even greater force to continuing the Health Plan.

27. The Health Plan has several expense components including: (a) the monthly cost of the administrative contracts with the Health Plan Administrators; (b) the monthly premiums for the Blue Shield stop-loss insurance; and (c) expenses that must be paid on behalf of or to Employees and Non-RCBSR employees under the Health Plan.

28. In addition to continuing the Health Plan with respect to the Employees, the RCBSR also needs to continue to administer the health benefits and insurance programs for the Non-Debtor Catholic Entities pursuant to its duties under the Servicing Agreements. Requiring the RCBSR to change its current practices for its Employees, while continuing to administer the Non-Debtor Catholic Entities health benefits and insurance programs under the current structure, would be unduly burdensome and disruptive to the RCBSR's operations.

**Vacation Pay Obligations**

29. The Debtor also seeks authority, but not direction, to permit Employees to use vacation time and other paid time off subject to the Bankruptcy Code priority limitations, whether accrued before or after the Petition Date, in accordance with the Debtor's pre-petition policies.

30. **Vacation Time:** Regular Employees accrue paid vacation time ("Vacation Time") based upon their position and the length of their employment. While not subject to forfeiture, vacation benefits are subject to a maximum accumulation of 1.5 times the yearly accrual amount.

31. The Debtor seeks authority, but not direction, to allow Employees to utilize accrued unused vacation time in the ordinary course of business as well as to pay an Employee for accrued unused vacation upon termination at his/her final rate of pay, subject to the statutory cap of $15,150 (including any other pre-petition wages) per Employee for any such vacation accrued pre-petition. As of the Petition Date, the Debtor estimates that it owes over $100,000 in total unused vacation pay, of which I estimate approximately $42,000 is potentially entitled to priority.

32. **Holidays:** Regular full-time or part-time (working at least 20 hours a week) employees receive 11 paid holidays a year.

///

**Other Employee Benefits**

33. As part of the Debtor's Employee Obligations, the Debtor also has established a variety of benefit plans and programs (the "Employee Benefits") designed to assist its Employees and its Employees' eligible dependents in meeting certain financial burdens, including those that arise from illness, disability and death. The Debtor believes that all amounts and obligations related to Employee Benefits that were owed prior to the Petition Date have been paid in full except as noted herein. However, out of an abundance of caution, the Debtor seeks authorization, but not direction, to pay or otherwise honor these Employee Benefits.

34. As explained above, the RCBSR maintains a self-funded Health Plan. All full time Employees who have met the applicable pre-enrollment eligibility requirements as described above are eligible to enroll in the Health Plan coverage. Employee contributions are made on pre-tax basis for Health Plan coverage and either a pre-tax or post-tax basis for Life Insurance. The Debtor requests authority to pay any pre-petition costs related to the Health Plan in the ordinary course of business.

35. **Continuation of Benefits**: The Debtor seeks to provide continuation of benefits ("COB") to former Employees and former Non-RCBSR Entity employees. The Debtor contracts with RETA to administer the COB. Former Employees and former Non-Debtor Catholic Entities' employees enrolling in COB pay a premium directly to COBRA. COBRA pays these premiums to the Health Plan for the continued health coverage of these former Employees and former Non-RCBSR Entity employees after deducting an administrative fee. The Health Plan claims of the former Employees and former Non-RCBSR employees are paid in the ordinary course of business including Blue Cross Blue Shield organizations, Kaiser Permanente, Delta Dental and VSP Vision Care. The Debtor requests authority to pay any pre-petition costs related to COB benefits in the ordinary course of business.

36. **Life Insurance:** RCBSR provides life insurance through Unum Group ("Unum"), for the benefit of the RCBSR and its components, and for the benefit of the Non-Debtor Catholic Entities CNHS, Catholic Charities, and Cemeteries. Unum calculates the premium due once a month and sends an invoice to the Diocese once a month for the previous month's premium. The

parishes each pay 0.3% of its gross payroll, which amount is transferred to the Diocese Restricted Fund. The Chancery also pays 0.3% of its gross payroll from the Chancery Operating Fund to the same restricted account. A check is then written from the restricted account to Unum Life.

**Retirement Benefit Plans**

37. Lay Employees are eligible to contribute to a 403(b) plan ("403(b) Plan"). Contributions to the 403(b) Plan are made both by Employees and RCBSR. The RCBSR makes contributions directly to the Lay Pension Plan on behalf of each eligible Employee. The RCBSR makes an employer contribution to the Plan in the amount of 5.5% of gross payroll for each eligible employee. These amounts are billed to the Schools and Parishes and then deposited into the restricted Diocese Restricted Fund at Wells Fargo. The RCBSR also makes contributions directly to the Qualified Priest Pension Plan on behalf of the Priests. The Non-Debtor Catholic Entities also participate in these retirement plans ("Plans") and make contributions directly to the respective Plans. The 403(b) Plan is administered through OneAmerica. Both the Lay Pension Plan and the Qualified Priest Pension Plan are administered through Wells Fargo Bank.

38. The RCBSR deducts 403(b) Plan contributions from Employees' paychecks and OneAmerica automatically deducts the withheld 403(b) Plan contributions from the RCBSR's payroll account. The Debtor does not believe that unremitted 403(b) Plan contributions are property of the Debtor's bankruptcy estate. The RCBSR estimates that there will be approximately one pay period worth of deducted but unremitted 403(b) Plan contributions as of the Petition Date and requests the authority to pay such amounts to the 403(b) Plan administrator.

39. Effective June 20, 2014, the Diocesan Defined Benefit Lay Plan was frozen. The need to freeze the plan was driven by the high unfunded pension liability as of June 20, 2013. "Frozen" means that each individual's pension benefit was determined and fixed as of the freeze date. This amount remains unchanged regardless of future pay increases or length of service. The RCBSR and the parishes pay premiums to Pension Services equal to 3.6% of payroll towards reduction of the actuarially determined underfunded pension liability. Such payments are made into the Wells Fargo Account Restricted Fund and then transferred to the Lay Pension restricted bank account at PNC, monthly.

40. RCBSR also maintains a Supplemental Employee Retirement Plan ("SERP") solely for the benefit of the Bishop. The actuary retained by the Dioceses, Nicolay Pension Services, provides actuarial reports which indicate how much money should be deposited into the SERP annually. The SERP funds are held at US Bank and the source of the funding is from the Priests Retirement Plan fund at Wells Fargo.

41. The Debtor believes that maintaining the Retirement Plans described above is critical in maintaining Employee morale. Accordingly, the Debtor seeks authority to continue in its discretion the Plans, and to pay administrative and other related expenses to maintain the Plans.

**Pre-petition Amounts Withheld from Employee Paychecks and Related Deductions and Payments**

42. The RCBSR deducts from Employees' paychecks (as applicable): (i) payroll taxes and the Employee's portion of FICA and disability taxes; (ii) Employee contributions for health and disability-related benefits and flexible spending accounts; (iii) Employee contributions to the 403(b) Plan; (iv) legally ordered deductions such as wage garnishments, child support and tax levies; and (v) miscellaneous other items (collectively, the "Employee Deductions"). The RCBSR forwards amounts equal to the Employee Deductions from the appropriate withholding account to the appropriate third party recipients. The Debtor does not believe that any funds deducted from Employee paychecks for Employee Deductions are property of the RCBSR's bankruptcy estate. The Debtor seeks authority to forward to the appropriate parties any Employee Deductions not forwarded due to the commencement of this chapter 11 case.

**Reimbursable Expenses**

43. Eligible Employees may submit certain business-related expenses to the RCBSR for reimbursement (collectively, "Employee Expenses"). Employee Expenses include, but are not limited to, car, hotel stay, meals, parking and other travel expenses and business-related costs. As of the Petition Date, the Debtor does not anticipate owing any Employee Expenses. However, the Debtor seeks authority, but not direction, to pay such Employee Expenses and to continue to pay them post-petition in the ordinary course of business.

///

**Summary**

44. The Debtor submits that the amounts to be paid pursuant to this Motion are de minimis in light of the importance and necessity of preserving the Employees' services and morale and the difficulties and losses the Debtor and its estate will suffer if Employees leave in significant numbers. Further, many of these obligations are not immediate, such as accrued paid leave benefits, but rather will be satisfied over an extended period of time. The Debtor also submits that there is ample justification for its belief that even the slightest delay in providing this relief to its Employees will hamper its operations and damage its estate and, as a consequence, the Debtor is anxious to reassure the Employees.

45. The Debtor has filed a motion contemporaneously herewith asking the Court to authorize it to continue using its pre-petition bank accounts post-petition. The banks where those accounts are located should be ordered to honor the payroll and expense checks drawn on those accounts as such checks are presented for payment.

46. The Debtor further seeks authority to pay any and all local, state, and federal withholding and payroll-related taxes relating to pre-petition periods and post-petition periods relating to the Debtor's Employees. The Debtor is current on all such taxes due through the Petition Date.

I declare under penalty of perjury that the foregoing it true and correct. Executed on March 13, 2023 at Santa Rosa, California.

                                              _/s/ Joe Oberting_
                                              Deacon Joe Oberting