PAUL J. PASCUZZI, State Bar No. 148810
JASON E. RIOS, State Bar No. 190086
THOMAS R. PHINNEY, State Bar No. 159435
FELDERSTEIN FITZGERALD
WILLOUGHBY PASCUZZI & RIOS LLP
500 Capitol Mall, Suite 2250
Sacramento, CA 95814
Telephone: (916) 329-7400
Facsimile: (916) 329-7435
ppascuzzi@ffwplaw.com
jrios@ffwplaw.com
tphinney@ffwplaw.com

Proposed Attorneys for
The Roman Catholic Bishop of Santa Rosa

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SANTA ROSA DIVISION

| | |
|---|---|
| In re:<br><br>THE ROMAN CATHOLIC BISHOP OF SANTA ROSA,<br><br>    Debtor In Possession. | CASE NO. 23-10113<br><br>Chapter 11<br><br>Date: March 16, 2023<br>Time: 1:00 p.m.<br>Location: 1300 Clay Street, Ctrm. 215<br>         Oakland, CA<br>         [In person or via Zoom]<br>Judge: Hon. Charles Novack<br><br>Order Shortening Time |

**DEBTOR'S MOTION FOR ORDER (1) PROHIBITING UTILITY COMPANIES FROM ALTERING, REFUSING OR DISCONTINUING SERVICE, (2) DETERMINING ADEQUATE ASSURANCE OF PAYMENT FOR POSTPETITION UTILITY SERVICES UNDER 11 U.S.C. § 366, (3) ESTABLISHING PROCEDURES FOR DETERMINING ADEQUATE ASSURANCE OF PAYMENT, AND (4) SCHEDULING A FINAL HEARING**

The Roman Catholic Bishop of Santa Rosa ("RCBSR" or "Debtor in Possession"), hereby moves (the "Motion") for entry of an order after an interim hearing (1) prohibiting utility companies from altering, refusing or discontinuing service; (2) determining that the Debtor in Possession's furnishing of deposits to utility companies listed on Exhibit 1 attached hereto constitutes adequate

assurance of payment; (3) establishing procedures for assurance requests by the affected utilities and for determining adequate assurance of payment; and (4) scheduling a final hearing thereon. In support of this Motion, the Debtor in Possession relies upon the Declaration of Deacon Joe Oberting in Support of Chapter 11 Petition and First Day Motions filed on the Petition Date ("Oberting Background Decl."), the Declaration of Deacon Joe Oberting filed in support of this Motion ("Oberting Decl."), as well as all exhibits filed in support of both declarations. In further support of this Motion, the Debtor in Possession respectfully represent as follows:

## JURISDICTION

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (O). The statutory bases for the relief requested herein are 11 U.S.C. §§ 105(a) and 366.

The RCBSR does not, by filing its petition for relief and other documents in this bankruptcy case, waive any of its rights under any applicable law, including, without limitation, the Code of Canon law, the First Amendment of the United States Constitution, the Constitution for the State of California, California's law on corporations sole (California Corporations Code §§ 10000-10015), the Religious Freedom Restoration Act, the church autonomy doctrine, charitable trust law, California trust law, and the rights to object to disclosure of information and to contend that certain assets discussed in the Motion are not property of the estate.

## RELIEF REQUESTED

The Debtor in Possession's ongoing business operations require it to maintain uninterrupted utility services including electricity, natural gas, telephone, water, waste removal, internet and other services. Termination of a utility service would cause immediate and irreparable harm to the Debtor in Possession's operations and critical reorganization efforts.

The Debtor in Possession has multiple facilities and receives utility services from numerous utility companies. These facilities include the Chancery Office located at 985 Airway Ct., Santa Rosa, the residence of the Bishop at 1240 Manhattan Way, Santa Rosa, the Newman Center located near the campus of Sonoma State University at 1798 E Cotati Ave, Penngrove, and offices at

Cardinal Newman High School, located at 24 Ursuline Road, Santa Rosa. A list of the utility companies ("Utility Companies") and the Debtor in Possession's corresponding utility company accounts is listed on Exhibit 1 hereto.[1] None of the Utility Companies hold prepetition deposits. Prior to the Petition Date, the Debtor in Possession timely remitted payments on monthly utility service obligations. Average monthly utility bills are approximately $3,500. Oberting Decl.

Pursuant to section 366(c), the Debtor in Possession proposes to provide its Utility Companies adequate assurance of payment as follows:

(a) The Debtor in Possession will provide each Utility Company a cash deposit (the "Deposit") in an amount equal to fifty percent of the Debtor in Possession's estimated monthly cost of its utility consumption from each Utility Company, less any amounts, if any, for prepetition existing utility deposits. The estimated monthly cost will be calculated using the average of monthly invoices for the past year. If a Utility Company provides the Debtor in Possession with services under multiple accounts, then the Debtor in Possession may provide that Utility Company with one deposit that equals the aggregate estimated monthly usage under all of the Debtor in Possession's accounts with that Utility Company. The Deposit shall be provided within 10 court days of the receipt by the Debtor in Possession or its bankruptcy counsel of a written request from a Utility Company for adequate assurance under the Bankruptcy Code.

(b) In the event that a Utility Company believes that the Debtor in Possession's utility Deposit does not constitute adequate assurance of payment that is "satisfactory" to that Utility Company in accordance with section 366(c)(2), within 45 calendar days of entry of the Court's order approving the Motion, the Utility Company must serve upon the Debtor in Possession and its counsel, and file with the Court a specific request for adequate assurance ("Assurance Request"). The Assurance Request must include: (i) the location and account number(s) for which utility services are provided; (ii) the outstanding balance on the account and a summary of the Debtor in Possession's payment history; (iii) the reasons why the Deposit does not constitute satisfactory adequate assurance of payment; and (iv) a proposal of what would constitute

---

[1] The Debtor in Possession reserves the right to supplement the list of utility companies, and also reserves the right to argue that any of the listed utility companies do not fall under the purview of 11 U.S.C. § 366 as a "utility."

satisfactory adequate assurance of payment. Without further order of the Court, the Debtor in Possession may enter into agreements granting additional adequate assurance to a Utility Company which timely files and serves an Assurance Request. Failure by a Utility Company to timely file and serve an Assurance Request shall result in such Utility Company being deemed to have received satisfactory adequate assurance of payment, and shall be prohibited from altering, refusing, or discontinuing service to the Debtor in Possession.

(c) In the event that one or more Utility Companies submit an Assurance Request that is determined by the Debtor in Possession to be unreasonable, within twenty-one days of receipt of such Assurance Request the Debtor in Possession will schedule a hearing on shortened notice and serve notice of such hearing on the affected Utility Companies. The Utility Companies shall be prohibited from altering, refusing or discontinuing service to the Debtor in Possession until, after a hearing on adequate assurance, the Court issues an order authorizing such action.

The Debtor in Possession submits that the above proposed adequate assurance to Utility Companies sufficiently addresses the requirements of section 366. A copy of the proposed Interim Order granting this Motion is attached hereto as <u>Exhibit 2</u>.

## BACKGROUND

On March 13, 2023, the RCBSR filed a voluntary Chapter 11 petition ("Petition Date"). The Debtor in Possession remains in possession of its estate, no trustee having been appointed. The Debtor in Possession is operating and managing its business as a debtor in possession pursuant to the provisions of Sections 1107 and 1108 of the Bankruptcy Code.

The RCBSR filed this case in order to reorganize its financial affairs pursuant to a plan of reorganization that will, among other things, fairly, justly, and equitably compensate survivors of sexual abuse by clergy or others associated with the RCBSR and bring healing to survivors, parishioners and others affected by past acts of sexual abuse. The RCBSR has limited funds with which to respond to the voluminous abuse claims. The RCBSR requires the bankruptcy court's protection and the protection of the bankruptcy laws to make fair and equitable payment on all of the claims against it, including the claims by survivors of abuse, trade creditors, parishes and others, while continuing its ministries and support it offers to Catholic parishes and communities.

The Diocese of Santa Rosa (the "Diocese")[2] was created from portions of the Sacramento Diocese and San Francisco Archdiocese in 1962, and now includes 42 parishes, some of which have missions associated with them ("Parishes"). The current Bishop of the RCBSR is Bishop Robert F. Vasa, who was appointed June 30, 2011. The Diocese consists of approximately 178,443 Catholics in the counties of Sonoma, Napa, Mendocino, Lake, Humboldt, and Del Norte covering approximately 11,711 square miles. While the Diocese is geographically large and very diverse, demographically it remains the smallest of California's dioceses. Diocesan priests and permanent deacons, along with priests, brothers and nuns from more than 20 religious orders serve parishes, schools, Catholic hospitals and do other outreach within the Santa Rosa Diocese.

The primary role of the RCBSR is to provide resources, spiritual leadership, direction, support, planning, programming, leadership development and other services to individuals of the Roman Catholic faith, the 42 Parishes, two Catholic high schools (Cardinal Newman High School in Santa Rosa and parish school St. Vincent de Paul High School in Petaluma), numerous elementary schools, private schools, cemeteries and various other Catholic-based social and community service organizations that operate in the Diocese. The RCBSR has 22 lay employees.

As a religious organization, the RCBSR has no significant ongoing for-profit business activities or business income. Revenue for the RCBSR principally comes from the annual ministry appeal (held in trust for named ministries only), fees for services provided to the Non-Debtor Catholic Entities (defined below), donations, grants, and RCBSR ministry revenue. The RCBSR's fiscal 2023 operating budget is approximately $12.5 million. The RCBSR operates on a fiscal year ending June 30.

Additional information regarding the circumstances leading to the commencement of the Chapter 11 Case and information regarding the Debtor in Possession's operations and structure is set forth in the Oberting Background Decl.

///

///

---

[2] The term "Diocese" is used herein exclusively to refer to geographic territory under the jurisdiction of the RCBSR, and the terms RCBSR, Debtor, or Debtor in Possession are used herein exclusively to refer to the secular legal embodiment of the Diocese.

## LEGAL AUTHORITIES

In general, courts view utility services as a necessary minimum for rehabilitation in a chapter 11 case. *See Whittaker v. Phila. Elec. Co. (In re Whittaker)*, 882 F.2d 791, 794 (3d Cir. 1989). Because utility companies generally exercise practical monopoly power in providing essential services, utility companies may force a bankruptcy debtor to capitulate to payment demands by threatening to terminate service. *See In re Woodland Corp.*, 48 B.R. 623, 624 (Bankr. D.N.M. 1985); *In re Tel-Net Hawaii, Inc.*, 131 B.R. 723, 727 (Bankr. D. Haw. 1991); *see also* Bertrand Pan and Jennifer Taylor, *Sustaining Power: Applying 11 U.S.C. § 366 in Chapter 11 Post-BAPCPA*, 22 BANKR. DEV. J. 371, 373 (2006).

In protecting a debtor from a termination in utility services, section 366(a) works as an injunction and provides, in part, that a "utility may not alter, refuse, or discontinue service to, or discriminate against, the trustee or the debtor solely on the basis of the commencement of a case under this title or that a debt owed by the debtor to such utility for service rendered before the order for relief was not paid when due." 11 U.S.C. § 366(a).

At the same time, in ensuring adequate assurance of payment to a utility, section 366(b) requires that the utility may alter, refuse, or discontinue service if the debtor, within 20 days after the petition date, does not furnish "adequate assurance of payment, in the form of a deposit or other security, for service after such date." 11 U.S.C. § 366(b). "Adequate assurance of payment" does not require an absolute guaranty of payment. *In re Utica Floor Maintenance, Inc.*, 25 B.R. 1010, 1014 (N.D.N.Y. 1982).

In addition, by the enactment of the Bankruptcy Abuse and Consumer Protection Act of 2005 ("BAPCPA"), section 366 was expanded to include subsection (c), which provides that the chapter 11 debtor must provide assurance of payment "satisfactory" to the utility within 30 days of the petition date, and limits the types of security that are acceptable as assurance of payment. *See* 11 U.S.C. § 366(c)(1)(A).[3] After notice and a hearing, a court has the authority to modify the

---

[3] The term "assurance of payment" is limited to: (i) a cash deposit; (ii) a letter of credit; (iii) a certificate of deposit; (iv) a surety bond; (v) a prepayment of utility consumption; or (vi) another form of security that is mutually agreed on between the utility and the debtor or the trustee. 11 U.S.C. § 366(c)(1)(A).

amount of an assurance of payment. 11 U.S.C. § 366(c)(2). However, subsection (c), while specifying proper forms of "assurance of payment," leaves to the court's discretion the question of the proper monetary amounts for "assurance of payment."

The assurances to utility companies set forth under subsections (b) and (c) of section 366 are not mutually exclusive. *In re Lucre, Inc.*, 333 B.R. 151, 155 (Bankr. E.D. Mich. 2005). However, 11 U.S.C. § 366(c) applies only in chapter 11 cases. *In re Astle*, 338 B.R. 855, 859 (Bankr. D. Idaho 2006); *see also* Pan, *supra*, at 387-88 (discussing that a debtor may be able to comply with both subsections (b) and (c), but may be impractical due to differing 20-30 day deadlines, and therefore, subsection (c) would be the better approach in chapter 11 cases).

The pre-BAPCPA legislative history of section 366 indicates that Congress sought to achieve the dual purpose of giving Debtor protection from a termination of utility service, while protecting utility companies through adequate assurance of payment. *See In re Gehrke*, 57 B.R. 97, 98 (Bankr. D. Or. 1985). The 2005 amendments did not amend the balance of § 366, and therefore, pre-BAPCPA case law interpreting section 366 remains applicable. *Astle*, 338 B.R. at 861.

The bankruptcy court exercises great discretion and flexibility in applying section 366. *Marion Steel Co. v. Ohio Edison Co. (In re Marion Steel Co.)*, 35 B.R. 188, 195 (Bankr. N.D. Ohio 1983); *see also In re Astle*, 338 B.R. at 861. The bankruptcy court's authority is further supported by section 105, which allows for the court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions" of Title 11. *See e.g., In re George C. Frye Co.*, 7 B.R. 856, 857 n.2 (Bankr. D. Me. 1980). A determination under § 366 is necessarily fact-intensive and looks to the totality of the circumstances. *Marion Steel*, 35 B.R. at 198 (citations omitted); *see also Astle*, 338 B.R. at 861.

Here, the Debtor in Possession proposes to provide each Utility Company that so requests a cash deposit equal to fifty percent of one month's average historical invoice amount, calculated over the past year. Courts have previously approved a debtor's deposits in the amount of fifty percent of one month's worth of service as adequate. *In re Best Products Co.*, 203 B.R. 51, 54

-7-

DEBTOR'S MOTION REGARDING UTILITY PROCEDURES

Case: 23-10113   Doc# 7   Filed: 03/13/23   Entered: 03/13/23 12:37:42   Page 7 of 19

(Bankr. E.D. Va. 1996).[4] Adequate funds have been budgeted for payment of anticipated post-petition utility services. Oberting Motion Decl.

The Debtor in Possession submits that it satisfies the requirements of section 366 by proposing an acceptable form of adequate assurance of payment. The Debtor in Possession also has proposed reasonable procedures that will allow for a Utility Company to submit an Assurance Request and for the scheduling of a hearing thereon. The Debtor in Possession anticipates that in conjunction with the proposed Deposits, the Debtor in Possession will maintain postpetition liquidity, and therefore, the Utility Companies will not suffer any prejudice. Therefore, Utility Companies which receive a Deposit should not be permitted to alter, refuse, or discontinue service to the Debtor in Possession absent further order from the Court. Any alteration of service would severely impact and hamper the Debtor in Possession's operations and reorganization efforts.

**NOTICE**

No trustee, examiner or creditors' committee has been appointed in this chapter 11 case. Notice of the hearing on this Motion has been provided to the Office of the United States Trustee, the Debtor in Possession's secured creditors if any, the holders of the 20 largest unsecured claims against the Debtor in Possession as indicated in its petition, and the Utility Companies. Because of the nature of the relief requested, Debtor in Possession respectfully submits that no further notice is necessary or required.

**CONCLUSION**

For the reasons set forth above, the Debtor in Possession respectfully request that this Court enter an order:

1. Prohibiting utility companies from altering, refusing or discontinuing service;

2. Determining on an interim basis that the Debtor in Possession's furnishing of deposits to utility companies listed on Exhibit A hereto constitutes adequate assurance of payment

///

///

---

[4] Bankruptcy courts in California have granted similar relief in chapter 11 cases such as *In re Roman Catholic Bishop of Stockton,* Case No. 14-20371 (Bankr. E.D.Cal. 2014) at Dkt. Nos 65 and 168.

-8-

DEBTOR'S MOTION REGARDING UTILITY PROCEDURES

under section 366;

    3.    Establishing procedures for assurance requests by affected utility companies, and for determining adequate assurance of payment as provided herein;

    4.    Scheduling a final hearing on the Motion; and

    5.    For such further relief as the Court deems necessary.

Dated: March 13, 2023

                  FELDERSTEIN FITZGERALD
                  WILLOUGHBY PASCUZZI & RIOS LLP

                  By: */s/ Paul J. Pascuzzi*
                      PAUL J. PASCUZZI
                      Proposed Attorneys for The Roman Catholic Bishop of Santa Rosa, a California corporation sole

# EXHIBIT 1

Case: 23-10113    Doc# 7    Filed: 03/13/23    Entered: 03/13/23 12:37:42    Page 10 of 19

**Exhibit 1: List of Utility Companies and Accounts**

| Name and Address of Utility | Type of Service/ Account No. | Property Address Where Utility Provided (if applicable) |
|---|---|---|
| AT&T Mobility<br>P.O. Box 6463<br>Carol Stream, IL  60197-6463 | Mobile phones<br>Acct# 8750444301 | |
| AT&T Teleconference Services<br>P.O. Box 5002<br>Carol Stream, IL  60197-5002 | Shared Conferencing<br>Acct# 43884495-00001 | |
| Bay Alarm<br>P.O. BOX 51041<br>Los Angeles, CA  90051 | Office alarm system | 985 Airway Ct, Santa Rosa |
| City of Santa Rosa<br>P.O. Box 1658<br>Santa Rosa, CA  95402-1658 | Water<br>Acct# 008817 | Newman Center 1798 E Cotati Ave, Penngrove and 1240 Manhattan Way, Santa Rosa |
| Comcast<br>P.O. Box 60533<br>City Of Industry, CA  91716-0533 | Phone service<br>Acct# 960197914 | 24 Ursuline Rd., Santa Rosa<br>Phones for several offices (campus of Cardinal Newman High School, several chancery ministries have offices there) |
| Comcast Business<br>P.O. Box 37601<br>Philadelphia, PA  19101-0601 | Internet service<br>Acct# 815530021-0174793 | 24 Ursuline Rd., Santa Rosa<br>Internet for several offices (campus of Cardinal Newman High School, and several chancery ministries have offices there) |
| Mitel<br>P.O. Box 53230<br>Phoenix, AZ  85072-3230 | Phone system<br>Acct# 15222 | 985 Airway Ct, Santa Rosa |
| Penngrove Water<br>4982 Sonoma Hwy<br>Santa Rosa, CA  95409-4247 | Water<br>Acct# CM-685 | Newman Center 1798 E Cotati Ave, Penngrove, CA |
| PG&E<br>P.O. BOX 997300<br>Sacramento, CA  95899-7300 | Gas & Electric<br>Acct# 4780611722-3 & 3939888946-7 | 1240 Manhattan Way (bishop's residence) and Newman Center 1798 E Cotati Ave, Penngrove |
| Recology<br>P.O. BOX 51219<br>Los Angeles, CA  90051-5519 | Compost and recycling, waste<br>Acct# 1810791798 | 1240 Manhattan Way (bishop's residence) and Newman Center 1798 E Cotati Ave, Penngrove |
| Sonicnet Inc. | Internet<br>Ref# ssunewman | Newman Center 1798 E Cotati Ave, Penngrove, CA |
| TPX Communications<br>P.O. BOX 509013<br>San Diego, CA  92150-9013 | Internet (incl. hardware) and data storage<br>Acct# 166854 | 985 Airway Ct, Santa Rosa |

# EXHIBIT 2

Case: 23-10113  Doc# 7  Filed: 03/13/23  Entered: 03/13/23 12:37:42  Page 12 of 19

```
 1  PAUL J. PASCUZZI, State Bar No. 148810
    JASON E. RIOS, State Bar No. 190086
 2  THOMAS R. PHINNEY, State Bar No. 159435
    FELDERSTEIN FITZGERALD
 3  WILLOUGHBY PASCUZZI & RIOS LLP
    500 Capitol Mall, Suite 2250
 4  Sacramento, CA  95814
    Telephone: (916) 329-7400
 5  Facsimile: (916) 329-7435
    ppascuzzi@ffwplaw.com
 6  jrios@ffwplaw.com
    tphinney@ffwplaw.com
 7
    Proposed Attorneys for
 8  The Roman Catholic Bishop of Santa Rosa
```

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SANTA ROSA DIVISION

| | |
|---|---|
| In re:<br><br>THE ROMAN CATHOLIC BISHOP OF SANTA ROSA,<br><br>      Debtor In Possession. | CASE NO. 23-10113<br><br>Chapter 11<br><br>Date:     March 16, 2023<br>Time:    1:00 p.m.<br>Location: 1300 Clay Street, Ctrm. 215<br>           Oakland, CA<br>           [In person or via Zoom]<br>Judge:   Hon. Charles Novack |

**INTERIM ORDER GRANTING DEBTOR'S MOTION FOR ORDER
(1) PROHIBITING UTILITY COMPANIES FROM ALTERING, REFUSING
OR DISCONTINUING SERVICE, (2) DETERMINING ADEQUATE ASSURANCE
OF PAYMENT FOR POSTPETITION UTILITY SERVICES UNDER 11 U.S.C.
§ 366, AND (3) ESTABLISHING PROCEDURES FOR DETERMINING
ADEQUATE ASSURANCE OF PAYMENT (4) SCHEDULING A FINAL HEARING**

The motion of The Roman Catholic Bishop of Santa Rosa ("RCBSR" or "Debtor in Possession"), for an Order (1) Prohibiting Utility Companies from Altering, Refusing or Discontinuing Service; (2) Determining that the Debtor in Possession's Furnishing of Deposits to Utility Companies listed on <u>Exhibit 1</u> (attached to the Motion) in an amount that represents fifty percent of the debtor's estimated average monthly usage over the past twelve months of such utility respectively constitutes adequate assurance of payment; (3) Establishing Procedures for

-1-

ORDER ON DEBTOR'S MOTION REGARDING UTILITY PROCEDURES

Case: 23-10113    Doc# 7    Filed: 03/13/23    Entered: 03/13/23 12:37:42    Page 13 of 19

Assurance Requests by the Affected Utilities and for Determining Adequate Assurance of Payment; and (4) Scheduling a final hearing (the "Motion") came on for hearing on an interim basis on March 16, 2023, at 1:00 p.m., in Courtroom 215 of the United States Bankruptcy Court for the Northern District of California. The Debtor in Possession appeared through its counsel, Paul J. Pascuzzi. Other appearances were noted on the record. All capitalized terms used but not defined in this Order shall have the meanings given to them in the Motion.

The Court having considered the Motion, the Declaration of Joe Oberting regarding description of Debtor in Possession and Pre-Filing History filed on the Petition Date, the Declaration of Joe Oberting filed in support of this Motion, and the matters reflected in the record of the hearing, and the Court having found that it has jurisdiction over this proceeding; that this is a core proceeding; that notice of the Motion has been given to the Office of the United States Trustee, the twenty largest unsecured creditors, all secured creditors, and any applicable governmental entities; that no further notice is necessary; that the relief sought in the Motion is in the best interests of the Debtor in Possession, its estate, and its creditors; and that good and sufficient cause exists for such relief,

Accordingly, it is hereby ORDERED as follows:

1. The Motion (Docket No. __) is GRANTED on an interim basis as provided herein.

2. Within five (5) business days of the Court's entry of this Order, the Debtor in Possession shall serve each Utility Company listed on <u>Exhibit 1</u> to this Order with a copy of this Order via first class mail, and the Debtor in Possession shall serve all persons requesting special notice herein, counsel for any statutory committee(s), if one has been appointed or, if not, on the 20 largest unsecured creditors for the Debtor in Possession as identified in the Debtor in Possession's petition, on the Office of the United States Trustee for the Northern District of California, and counsel for the secured creditors, pursuant to Federal Rules of Bankruptcy Procedure Rule 4001(b).

3. The Debtor in Possession is authorized, but not required, to timely remit payments for undisputed invoices for postpetition services by the Utility Companies in accordance with the Debtor in Possession's prepetition practices.

4. Within ten (10) court days of the receipt by the Debtor in Possession or its bankruptcy counsel of a written request from a Utility Company for adequate assurance under the Bankruptcy Code, the Debtor in Possession will provide each Utility Company a cash deposit (the "Deposit") in an amount equal to fifty percent of the Debtor in Possession's estimated monthly cost of its utility consumption from each Utility Company, less any amounts for prepetition existing utility deposits. If a Utility Company provides the Debtor in Possession with services under multiple accounts, then the Debtor in Possession may provide that Utility Company with one deposit that equals fifty percent of the aggregate estimated monthly usage under all of the Debtor in Possession's accounts with that Utility Company.

5. Except in accordance with the procedures set forth herein, and absent further order of the Court, each Utility Company is prohibited from (a) altering, refusing, or discontinuing utility services solely on the basis of the commencement of Debtor in Possession's case under the Bankruptcy Code or on account of any unpaid prepetition invoice for utility services, and (b) requiring the payment of any additional deposit or other security to the Utility Companies for the continued provision of utility services.

6. If a Utility Company is not satisfied with the assurance of future payment provided by the Debtor in Possession, the Utility Company must serve upon counsel for the Debtor in Possession a written request for adequate assurance ("Assurance Request"), setting forth (i) the location and account number(s) for which utility services are provided; (ii) the outstanding balance on the account and a summary of the Debtor in Possession's payment history; (iii) the reasons why the Deposit does not constitute satisfactory adequate assurance of payment; and (iv) a proposal of what would constitute satisfactory adequate assurance of payment.

7. The Assurance Request must be received by the Debtor in Possession's counsel, Felderstein Fitzgerald Willoughby Pascuzzi & Rios LLP, 500 Capitol Mall, Suite 2250, Sacramento, California 95814 (Attention: Paul J. Pascuzzi) within forty-five (45) calendar days of the date a Final Order granting the Motion is entered.

8. Without further order of the Court, the Debtor in Possession may enter into agreements granting additional adequate assurance to a Utility Company serving an Assurance

Request, if the Debtor in Possession, in its discretion, determines that the request is reasonable.

9. If the Debtor in Possession determines that an Assurance Request is unreasonable, then the Debtor in Possession shall, within twenty-one (21) days of receipt of such Assurance Request, file a motion ("Determination Motion") pursuant to 11 U.S.C. § 366(c)(3) seeking a determination from the Court that the Deposit, plus any additional consideration offered by Debtor in Possession, constitutes adequate assurance of payment and set the Determination Motion for hearing on shortened time. Pending notice and a hearing on the Determination Motion, the Utility Company that is the subject of the unresolved Assurance Request may not alter, refuse, or discontinue services to the Debtor in Possession or recover or setoff against a prepetition deposit.

10. Nothing set forth herein is intended to, nor shall it, modify or alter the burdens of proof in connection with a Determination Motion.

11. Based on the establishment of the Deposit, a Utility Company will be deemed to have adequate assurance of payment unless and until a future order of this Court is entered requiring further assurance of payment.

12. The deadline by which objections to the Motion must be filed is _____, 2023, and such objections must be filed with the Clerk of the Bankruptcy Court and served upon counsel to the Debtor in Possession, counsel to the secured creditors, the Office of the United States Trustee for the Northern District of California, and counsel to any statutory committee(s) appointed in this case. A final hearing, if required, on the Motion before the undersigned United States Bankruptcy Judge will be held on _____, 2023 at _____.m. (PT). If no objections are filed to the Motion, the Court may enter the Final Order without further notice or hearing.

13. The Debtor in Possession is authorized, in its sole discretion, to amend the list of Utility Companies attached as <u>Exhibit 1</u> to add or delete any Utility Company.

14. Nothing in the Motion, Exhibit 1 thereto or this Order constitutes a finding that any entity is or is not a utility company hereunder or under section 366 of the Bankruptcy Code.

15. Notwithstanding the relief granted herein and any actions taken pursuant hereto, nothing herein shall be deemed: (i) an admission as to the validity of any claim against the Debtor in Possession; (ii) a waiver of the Debtor in Possession's rights to dispute any claim on any grounds;

(iii) a promise or requirement to pay any claim; (iv) an implication or admission that any particular claim is of a type specified or defined hereunder; (v) a request or authorization to assume any agreement, contract or lease pursuant to section 365 of title 11 of the Bankruptcy Code; or (vi) a waiver of the Debtor in Possession's rights under the Bankruptcy Code or any other applicable law.

16. This Court shall retain jurisdiction over all matters arising from or related to the interpretation or implementation of this Order.

17. The Debtor in Possession and its employees and agents are authorized to take or refrain from taking such acts as are necessary and appropriate to implement and effectuate the relief granted herein.

APPROVED AS TO FORM.

OFFICE OF THE UNITED STATES TRUSTEE

_____

***END OF ORDER***

# EXHIBIT 1

**Exhibit 1: List of Utility Companies and Accounts**

| Name and Address of Utility | Type of Service/ Account No. | Property Address Where Utility Provided (if applicable) |
|---|---|---|
| AT&T Mobility<br>P.O. Box 6463<br>Carol Stream, IL  60197-6463 | Mobile phones<br>Acct# 8750444301 | |
| AT&T Teleconference Services<br>P.O. Box 5002<br>Carol Stream, IL  60197-5002 | Shared Conferencing<br>Acct# 43884495-00001 | |
| Bay Alarm<br>P.O. BOX 51041<br>Los Angeles, CA  90051 | Office alarm system | 985 Airway Ct, Santa Rosa |
| City of Santa Rosa<br>P.O. Box 1658<br>Santa Rosa, CA  95402-1658 | Water<br>Acct# 008817 | Newman Center 1798 E Cotati Ave, Penngrove and 1240 Manhattan Way, Santa Rosa |
| Comcast<br>P.O. Box 60533<br>City Of Industry, CA  91716-0533 | Phone service<br>Acct# 960197914 | 24 Ursuline Rd., Santa Rosa<br>Phones for several offices (campus of Cardinal Newman High School, several chancery ministries have offices there) |
| Comcast Business<br>P.O. Box 37601<br>Philadelphia, PA  19101-0601 | Internet service<br>Acct# 815530021-0174793 | 24 Ursuline Rd., Santa Rosa<br>Internet for several offices (campus of Cardinal Newman High School, and several chancery ministries have offices there) |
| Mitel<br>P.O. Box 53230<br>Phoenix, AZ  85072-3230 | Phone system<br>Acct# 15222 | 985 Airway Ct, Santa Rosa |
| Penngrove Water<br>4982 Sonoma Hwy<br>Santa Rosa, CA  95409-4247 | Water<br>Acct# CM-685 | Newman Center 1798 E Cotati Ave, Penngrove, CA |
| PG&E<br>P.O. BOX 997300<br>Sacramento, CA  95899-7300 | Gas & Electric<br>Acct# 4780611722-3 & 3939888946-7 | 1240 Manhattan Way (bishop's residence) and Newman Center 1798 E Cotati Ave, Penngrove |
| Recology<br>P.O. BOX 51219<br>Los Angeles, CA  90051-5519 | Compost and recycling, waste<br>Acct# 1810791798 | 1240 Manhattan Way (bishop's residence) and Newman Center 1798 E Cotati Ave, Penngrove |
| Sonicnet Inc. | Internet<br>Ref# ssunewman | Newman Center 1798 E Cotati Ave, Penngrove, CA |
| TPX Communications<br>P.O. BOX 509013<br>San Diego, CA  92150-9013 | Internet (incl. hardware) and data storage<br>Acct# 166854 | 985 Airway Ct, Santa Rosa |