PAUL J. PASCUZZI, State Bar No. 148810
JASON E. RIOS, State Bar No. 190086
THOMAS R. PHINNEY, State Bar No. 159435
FELDERSTEIN FITZGERALD
WILLOUGHBY PASCUZZI & RIOS LLP
500 Capitol Mall, Suite 2250
Sacramento, CA 95814
Telephone: (916) 329-7400
Facsimile: (916) 329-7435
ppascuzzi@ffwplaw.com
jrios@ffwplaw.com
tphinney@ffwplaw.com

Proposed Attorneys for
The Roman Catholic Bishop of Santa Rosa

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SANTA ROSA DIVISION

| | |
|---|---|
| In re:<br><br>THE ROMAN CATHOLIC BISHOP OF SANTA ROSA,<br><br>    Debtor In Possession. | CASE NO. 23-10113<br><br>Chapter 11<br><br>Date: March 16, 2023<br>Time: 1:00 p.m.<br>Location: 1300 Clay Street, Ctrm. 215<br>    Oakland, CA<br>    [In person or via Zoom]<br>Judge: Hon. Charles Novack<br><br>Order Shortening Time |

**DECLARATION OF ADRIENNE MORAN IN SUPPORT OF CHAPTER 11 PETITON AND FIRST DAY MOTIONS**

I, Adrienne Moran, hereby declare under penalty of perjury as follows:

1. I am an attorney duly licensed to practice law in the State of California and a partner with Shapiro Galvin Shapiro & Moran ("SGSM"), proposed special corporate and litigation counsel for The Roman Catholic Bishop of Santa Rosa, the Debtor and Debtor in Possession herein (the "Debtor in Possession" or "RCBSR"). I have been an attorney licensed to practice in California since 1988. If called as a witness, I would and could testify competently to the matters stated herein.

-1-

First Day AM Declaration

2. SGSM is counsel of record for the RCBSR and certain other related Catholic entities in the Diocese of Santa Rosa (the "Diocese")[1] in the pending coordinated proceeding in Alameda Superior Court, JCP 5108, where all complaints against northern California diocesan entities are being jointly administered before Judge Evelio Grillo.

3. All facts set forth in this Declaration are based on my personal knowledge, upon information supplied to me by people who report to me, upon information supplied to me by RCBSR, upon my review of relevant documents, or upon my opinion based on my experience and knowledge with respect to RCBSR's operations and past and current litigation status. If I were called upon to testify, I could and would testify competently to the facts set forth herein.

4. In the past 20 years, the RCBSR and its insurers have paid more than $35 million in legal settlements, in an effort to fulfill the RCBSR's responsibility for abuse of minors by diocesan clergy.

5. On behalf of the RCBSR, I have defended the RCBSR and related entities in clergy abuse litigation since at least 2003, when the statute of limitations was first opened for a one-year window. At that time, the RCBSR defended approximately 14 cases, which were resolved through mediation. Through the years since 2003, I have continued to defend the RCBSR and related entities in clergy abuse litigation. For example, in 2007 and following, I defended the RCBSR in multiple claims involving Fr. Ochoa in Sonoma, CA. In 2009 and following, I defended the RCBSR and related entities against multiple claims of abuse by Fr. Oswald in Lake County, CA. In 2012 and following, I also defended the RCBSR and related entities in multiple claims of abuse by Fr. Gary Timmons, primarily relating to the operation of Camp St. Michael in Leggett, CA.

6. In addition to my services in defending the RCBSR and related entities against abuse claims, I have also defended the RCBSR and related entities against various other, non-abuse claims, such as employment claims. Also, as part of the services our firm provides to the Diocese and its related entities under our monthly retainer, I regularly advise parishes and schools on employment matters. In fact, each parish and school must obtain my permission before terminating

---

[1] The term "Diocese" is used herein exclusively to refer to geographic territory under the jurisdiction of the RCBSR, and the terms RCBSR, Debtor, or Debtor in Possession are used herein exclusively to refer to the secular legal embodiment of the Diocese.

any employee, as a condition of insurance coverage for any wrongful termination claim that might later be filed. I also advise the school administrators on problems with student discipline, parent relationship issues and school policies. I also provide general human resource information to these entities as well.

7. I am also aware that Assembly Bill 452 has recently been introduced into the California legislature that seeks to eliminate the statute of limitations entirely leaving the RCBSR vulnerable to potential abuse lawsuits forever.

8. In January 2020, California again re-opened the statute of limitations for child sexual abuse claims (California Code of Civil Procedure section 340.1) and revived claims previously barred by the statute of limitations. The statutory amendment created a 3-year window in which previously barred claims of child sexual abuse could be filed. Additionally, the new law also expands the statute of limitations for claimants to bring claims of child sexual abuse to age 40 or until five years from the time that a claimant became aware of his/her injury, whichever comes later. I am informed and believe that approximately 207 complaints have been filed in the JCP 5108 proceeding against the RCBSR and related entities in Alameda Superior Court, although we have been served with approximately 160 claims so far.

9. Many complaints filed against the RCBSR in the JCP 5108 proceeding have also named other diocesan related entities, such as the Roman Catholic Welfare Corp., parishes, schools and/or camps, for abuse which allegedly happened before such parishes were separately incorporated in approximately 2017. Under principles of equitable indemnity, the RCBSR has defended those related entities against such claims because they are in effect diocesan liabilities for claims of abuse which occurred before the parishes separately incorporated from the RCBSR.

10. It is the RCBSR's position that the automatic stay extends to stay all litigation against the RCBSR and related entities. These related entities are most often covered by the same insurance applicable to the RCBSR, so any incurring of defense costs or payment of settlements by the related entities with those mutual insurance assets also will impact the insurance coverage available to settle claims filed against the RCBSR. The representation of the related entities in the abuse claims litigation may continue to be necessary post-filing of bankruptcy, unless the plaintiffs'

11. The coordinated proceeding judge, Judge Grillo, has selected one case for trial which is pending against the RCBSR and its parish, St. Mary's Parish in Arcata. The RCBSR is defending St. Mary's Parish against this claim because the alleged abuse occurred in the late 1980's, before the parish was incorporated and it is in effect a diocesan only obligation. This case has been ordered remanded to Sonoma County Superior Court, effective June 15, 2023, for trial this summer in Sonoma County. However, there are impending deadlines for discovery, motions for summary judgment and the like already set and imminent. Therefore, unless the entire action is stayed, it will be necessary to continue to defend this case through trial. As noted above, the continued litigation will also impact available insurance assets of the RCBSR, since the alleged abuse pre-dated the parish's existence.

12. Judge Grillo also has stated in his orders the intention to set many, many more cases for trial soon, in order to get all cases pending in JCP 5108 tried within five years of the filing date. Unless the automatic stay is applied to these diocesan parishes, schools and/or camps, then it will be necessary to continue to defend the claims because they all pre-date the parish incorporations.

13. Mediation efforts have been initiated, with retired Judge Winnifred Smith serving as the Special Master for mediation, although no global mediations have taken place yet to my knowledge.

14. SGSM and the RCBSR have undertaken to review all the claims as best as possible given the limited information available. The claims of alleged abuse are all historical claims to our knowledge. The dates of alleged abuse range from 1959 (pre-diocesan incorporation) to approximately 2009. The most recent claims of abuse primarily were filed by former students of Hanna Boys Center, which is a separate corporation from the RCBSR. Those claims allege abuse by employees of Hanna Boys Center and/or the former Executive Director of Hanna Boys Center, who was a priest in the Diocese. The primary clergy members currently accused of abuse involve perpetrators previously accused in *Clergy III* dating back in 2003 and/or clergy members long since deceased.

15. SGSM has assisted the RCBSR in investigating and taking action as to any credible allegation of abuse. We are reviewing all of the information currently available regarding the 207 lawsuits under existing protocols to determine what action must be taken with respect to any allegations involving living clergy in service at this time. Some of the cases involve clerics for whom the RCBSR had no supervisory responsibility (*e.g.*, Christian Brothers), or employees of Hanna Boys Center only, for whom the RCBSR had no supervisory duty.

16. I am aware of two living former clerics who have been accused of misconduct. They have not been in ministry for around 10 years or more and are laicized (*i.e.*, dismissed from clerical status and secularized, becoming a layperson).

17. As to the one active cleric who has been named in the lawsuits, the matter was brought to the Diocesan Review Board's attention by Bishop Vasa and they determined that the claim was not substantiated, based on the information available, and they decided to leave that cleric in ministry. That claim was subsequently withdrawn by the plaintiff, as it was based on "mistaken identity." No previous claim had ever been made against this cleric in his 55 years of ministry. However, after there was publicity about this one claim against this cleric, one other person filed a claim of alleged abuse by this cleric and referenced the admittedly false claim made by the one other person.

18. Based on its experience in past situations, the RCBSR expects the initial demands to be more than $2 million per claim. Based on these demands, the RCBSR's total exposure likely will exceed its assets. The RCBSR is a not-for-profit religious organization with limited resources, including very limited or no insurance coverage for many of the 207 lawsuits pending against it. Thus, in my view, this avalanche of lawsuits puts the RCBSR in immediate financial distress and in need of a forum to resolve these claims while continuing to serve the faithful and those in need.

19. I understand the Bankruptcy Court provides a forum and the Bankruptcy Code provides a mechanism whereby all the claims can be determined and paid on a fair and equitable basis and ensures that all claimants with similarly situated claims are essentially treated the same. In my view, the RCBSR requires the Bankruptcy Court's immediate protection and the protection of the bankruptcy laws to make fair and equitable payment of the claims against it, including the

survivors of abuse, trade creditors, the Parishes and others.

I declare under penalty of perjury that the foregoing it true and correct. Executed on March 9, 2023, at Santa Rosa, California.

*/s/ Adrienne Moran*
Adrienne Moran