PAUL J. PASCUZZI, State Bar No. 148810
JASON E. RIOS, State Bar No. 190086
THOMAS R. PHINNEY, State Bar No. 159435
FELDERSTEIN FITZGERALD
WILLOUGHBY PASCUZZI & RIOS LLP
500 Capitol Mall, Suite 2250
Sacramento, CA 95814
Telephone: (916) 329-7400
Facsimile: (916) 329-7435
ppascuzzi@ffwplaw.com
jrios@ffwplaw.com
tphinney@ffwplaw.com

The following constitutes the order of the Court.
Signed: March 17, 2023

_____
**Charles Novack
U.S. Bankruptcy Judge**

Proposed Attorneys for
The Roman Catholic Bishop of Santa Rosa

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SANTA ROSA DIVISION

| | |
|---|---|
| In re:<br><br>THE ROMAN CATHOLIC BISHOP OF SANTA ROSA,<br><br>Debtor In Possession. | CASE NO. 23-10113<br><br>Chapter 11<br><br>Date: March 16, 2023<br>Time: 1:00 p.m.<br>Location: 1300 Clay Street, Ctrm. 215<br>Oakland, CA<br>[In person or via Zoom]<br>Judge: Hon. Charles Novack<br><br>Order Shortening Time |

**ORDER (I) AUTHORIZING AND APPROVING THE APPOINTMENT OF DONLIN, RECANO & COMPANY, INC. AS CLAIMS AND NOTICING AGENT, AND (II) GRANTING RELATED RELIEF**

Upon the application (the "Application")[1] dated March 13, 2023, of the debtor and debtor in possession (collectively, the "Debtor") in the above-captioned chapter 11 case (the "Chapter 11 Case"), pursuant to section 156(c) of title 28 of the United States Code, sections 105(a) of title 11 of the United States Code (the "Bankruptcy Code"), and Rule 2002(f) of the Federal Rules of

---
[1] Each capitalized term used but not otherwise defined herein shall have the meaning ascribed to it in the Application.

Bankruptcy Procedures (the "Bankruptcy Rules") for entry of an order appointing Donlin, Recano & Company, Inc. ("DRC") as claims and noticing agent (the "Claims Agent") effective as of the Petition Date, all as more fully set forth in the Application; and upon consideration of the First Day Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, the Order Referring Bankruptcy Cases and Proceedings to Bankruptcy Judges, General Order 24 (N.D. Cal.), and Local Rule 5011-1(a) of the Bankruptcy Rules for the Northern District of California; and this matter being a core proceeding within the meaning of 28 U.S.C. § 157(b)(2); and the Court being able to issue a final order consistent with Article III of the United States Constitution; and venue of this case and the Application being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having found and determined that notice of the Application as provided to the Notice Parties is reasonable and sufficient under the circumstances, and no other or further notice need be provided; and the relief requested in the Application being in the best interests of the Debtor's estate, its creditors and other parties in interest and necessary to prevent immediate and irreparable harm; and the Court having determined that the legal and factual bases set forth in the Application establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT**:

1. The Application (docket no 9) is GRANTED as provided herein.

2. Notwithstanding the terms of the Engagement Agreement, attached hereto as Exhibit 1, the Application is approved solely as set forth in this Order.

3. The Debtor is authorized to retain the Claims Agent effective as of the Petition Date under the terms of the Engagement Agreement, and the Claims Agent is authorized and directed to perform noticing services, receive, maintain, docket, and otherwise administer the proofs of claim filed in the Debtor's Bankruptcy Case, and provide such other administrative services—as required by the Debtor—that would fall within the purview of services to be provided by the Clerk's Office, and (b) granting related relief, all as more fully set forth in the Application; and upon the Voorhies Declaration submitted in support of the Application; and upon the First Day Declaration. Notwithstanding anything contained in this Order or the Engagement Agreement to the contrary,

the Debtor shall be required to employ DRC under a separate application under 11 U.S.C. §327, and seek approval of fees and reimbursement of expenses pursuant to 11 U.S.C. §§330 or 331, as applicable, if DRC provides services that fall outside the scope of 28 U.S.C. §156(c).

4. The Claims Agent shall serve as the custodian of the court records and shall be designated as the authorized repository for all proofs of claim filed in this Chapter 11 Case and is authorized and directed to maintain official claims registers for the Debtor and to provide the Clerk with a certified duplicate thereof upon the request of the Clerk.

5. The Claims Agent is authorized and directed to obtain a post office box or address for the receipt of proofs of claim.

6. The Claims Agent is authorized to take such other actions necessary to comply with all duties set forth in the Application.

7. The Debtor is authorized to compensate the Claims Agent for the Claims Services in accordance with the terms of the Engagement Agreement upon the receipt of reasonably detailed invoices setting forth the services provided by the Claims Agent and the rates charged for each, and to reimburse the Claims Agent for all reasonable and necessary expenses it may incur, upon the presentation of appropriate documentation, without the need for the Claims Agent to file fee applications or otherwise seek Court approval for the compensation of its services and reimbursement of its expenses.

8. With respect to the Claims Services, the Claims Agent shall maintain records of all services, showing dates, categories of services, fees charged, and expenses incurred, and shall serve monthly invoices on the Debtor, the office of the United States Trustee, counsel for the Debtor, counsel for any official committee, if any, monitoring the expenses of the Debtor, and any other party in interest who specifically requests service of the monthly invoices. The parties shall meet and confer in an attempt to resolve any dispute which may arise relating to the Engagement Agreement or monthly invoices for Claims Services, and the parties may seek resolution from the Court if resolution is not achieved.

///

9. Pursuant to section 503(b)(1)(A) of the Bankruptcy Code, the fees and expenses of the Claims Agent under this Order that relate to the Claims Services shall be an administrative expense of the Debtor's estate.

10. The application of DRC's retainer to all prepetition invoices and for the excess, if any, to thereafter be held as security for DRC's final invoice is hereby approved.

11. The Debtor shall indemnify the Claims Agent under the terms of the Engagement Agreement subject to the modifications set forth herein.

12. DRC shall not be entitled to indemnification, contribution, or reimbursement for services other than the services provided under the Engagement Agreement, unless such services and the indemnification, contribution or reimbursement therefor are approved by the Court.

13. All requests by the Claims Agent for the payment of an indemnity claim as set forth in the Engagement Agreement shall be made by means of an application to the Court and shall be subject to review by the Court to ensure that payment of such indemnity conforms to the terms of the Engagement Agreement and is reasonable under the circumstances of the litigation or settlement in respect of which indemnity is sought, provided however, that in no event shall the Claims Agent be indemnified in the case of its own bad-faith, self-dealing, breach of fiduciary duty (if any), gross negligence or willful misconduct.

14. In the event that the Claims Agent seeks reimbursement from the Debtor for attorneys' fees and expenses in connection with the payment of an indemnity claim pursuant to the Engagement Agreement, the invoices and supporting time records for the attorneys' fees and expenses shall be included in the Claims Agent's own applications, both interim and final, but determined by this Court after notice and a hearing.

15. All parties in interest shall retain the right to object to any demand by DRC for indemnification, contribution, or reimbursement.

16. In the event the Claims Agent is unable to provide the services set out in this Order, the Claims Agent will immediately notify the Clerk and the Debtor's counsel, and cause all original proofs of claim and computer information to be turned over to another claims and noticing agent with the advice and consent of the Clerk and the Debtor's counsel.

17. The Claims Agent shall not cease providing the Claims Services during this Chapter 11 Case for any reason, including nonpayment, without an order of the Court.

18. In the event of any inconsistency between the Engagement Agreement, the Application, and this Order, this Order shall govern.

19. Notwithstanding anything to the contrary contained in the Engagement Agreement or this Order, any payment made or other action taken by the Debtor pursuant to the authority granted herein, as well as the exercise of any and all other rights and authorizations granted or approved hereunder, shall be subject in all respects to any interim and/or final orders regarding the Debtor's use of cash collateral and/or postpetition debtor in possession financing facilities, approved by this Court in this Chapter 11 Case.

20. Notice of the Application as provided therein shall be deemed good and sufficient notice of such Application under the circumstances and such notice satisfies the notice requirements of Bankruptcy Rule 2002 and the Bankruptcy Local Rules.

21. Notwithstanding any term in the Engagement Agreement to the contrary, the Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, and/or enforcement of this Order.

APPROVED AS TO FORM.

OFFICE OF THE UNITED STATES TRUSTEE

By: __/s/ Jason Blumberg_____
    Jason Blumberg

**\*\*\* END OF ORDER \*\*\***

# EXHIBIT 1

Case: 23-10113   Doc# 33   Filed: 03/17/23   Entered: 03/17/23 16:24:51   Page 6 of 15



# STANDARD CLAIMS ADMINISTRATION AND NOTICING AGREEMENT

## TERMS AND CONDITIONS

**Donlin, Recano & Company, Inc**. (hereinafter called "DRC") agrees to provide **The Roman Catholic Bishop of Santa Rosa, a corporation sole,** including but not limited to any and all bankruptcy cases filed by any affiliate of The Roman Catholic Bishop of Santa Rosa, a corporation sole (hereinafter called the "Client") and Client agrees to purchase Services, (as defined below) upon the terms and conditions and other provisions stated herein. Client agrees and understands that none of the services constitute legal advice.

**1. <u>SERVICES:</u>** DRC agrees to provide the Client with consulting services regarding noticing and claims management and reconciliation, and any other services agreed upon by the parties or otherwise required by applicable law, government regulations, or court rules or orders. A more detailed description of the types of services offered by DRC, as well as the fees charged for such services, is annexed hereto as Schedule A.

**2. <u>CHARGES</u>**: All charges shall be based upon the time and materials incurred by DRC, billed at the DRC then prevailing standard rate unless another rate schedule is specifically and mutually agreed upon herein. DRC reserves its rights to adjust its standard rates in January of each year to reflect changes in the business and economic environment. In the event that rates are based other than on time and materials, and such other basis for rates is set forth herein, the Client agrees to pay, in addition to those rates, for all charges, incurred by DRC as a result of Client error or omission as determined by DRC. Such charges shall include but shall not be limited to re-runs and any additional clerical work, phone calls, travel expenses, or any other disbursements. When possible, DRC will notify Client in advance of any additional charges. Checks are accepted subject to collection and the date of collection shall be deemed the date of payment. Any check received from Client may be applied by DRC against any obligation owing by Client to DRC, and an acceptance by DRC of any partial payment shall not constitute a waiver of DRC's right to pursue the collection of any remaining balance. DRC requires advance deposits for all noticing, newspaper publishing or other significant expenditures as defined by DRC. In addition, Client shall reimburse DRC for all actual out-of-pocket expenses reasonably incurred by DRC. The out-of-pocket expenses may include, but are not limited to, postage, delivery services, travel, meals and other similar costs and expenses. In addition to all charges for services and materials hereunder, Client shall pay to DRC all taxes, however designated, levied or based that are applicable to this Agreement or are measured directly by payments made under this Agreement and are required to be collected by DRC or paid by DRC to taxing authorities. This provision, includes but is not limited to, sales, use and excise taxes, but does not include personal property taxes or taxes based on net income. In the event the Client files for protection pursuant to chapter 11 of title 11 of the United States Code, the parties intend that DRC shall be employed pursuant to 28 U.S.C §156(c), and that all fees and expenses due under this agreement shall be paid as administrative expenses of the Client's chapter 11 estate(s). In the event the Client's bankruptcy case(s) is converted to a chapter 7 case(s), any unpaid fees and costs with respect to this Agreement shall be treated as a chapter 11 administrative expense claim.



**3. TRANSPORTATION OF DATA**: Data submitted by the Client to DRC for processing shall be transported at the Client's risk and expense to and from the DRC office. In the event the Client fails to deliver the input data to DRC at the time scheduled, the Client agrees that DRC may extend, as necessary, the time for the completion of processing of such data. Client further agrees that the time for the completion or processing of such data may be extended because of the following holidays in addition to any Bank holidays recognized in the city in which DRC is located: New Year's Day, Memorial Day, Independence Day, Labor Day, Thanksgiving Day and Christmas Day. In any event, DRC does not warrant or represent that shipment or availability dates will be met, but will use its best efforts to do so. If DRC is required to stay open to perform required tasks on such days, an additional mutually agreed upon cost may be required by DRC.

**4. EVERGREEN RETAINER & INVOICES**: At the commencement of this engagement, the Client shall pay to DRC an advance payment retainer (the "Retainer") in the amount of $20,000. The Retainer shall be an "evergreen" retainer and shall be applied to the payment of the final invoice from DRC for this engagement. DRC may apply the Retainer to any other invoice in its absolute discretion, and upon notice thereof from DRC, the Client shall replenish the Retainer. Invoices for pre-petition services shall be paid in full, and may be satisfied, in the absolute discretion of DRC, out of the Retainer, which shall be replenished upon notice thereof to the Client. DRC, in its absolute discretion, may suspend or discontinue services after filing of a petition if pre-petition invoices are not paid in full, or if the Retainer is not replenished when request therefore is made. DRC may require the Client to increase the Retainer if the average amount of monthly invoices for three consecutive months is 10% greater than the amount of the Retainer. Client shall pay the charges set forth in Schedule A, attached hereto. DRC shall invoice the Client monthly for all services rendered during the preceding month. Charges for a partial month's service shall be prorated based on a thirty (30) day month. Terms are net 20 days following the date of billing. Failure to pay any fees, costs or other amounts to DRC shall be a breach of this Agreement (a "Failure to Pay"). Notwithstanding anything else contained in this Agreement, in the event of a Failure to Pay, DRC reserves the right to withhold reports and materials of the Client, in addition to all other remedies available to DRC. Upon a Failure to Pay, DRC may assess a late charge at a rate of one and one-half percent (1-1/2%) per month or the highest rate permitted by law, whichever is less, on all unpaid amounts until paid in full. DRC shall also have the right, at its option, to terminate this agreement for non payment of invoices after 30 days from the date unpaid invoices are rendered (a "Non-Payment Breach"). If the invoice amount is disputed, notice shall be given to DRC within ten (10) days of receipt of the invoice by the Client. The undisputed portion of the invoice will remain due and payable. Late charges shall not accrue on any amounts in dispute. Notwithstanding anything contained in this agreement to the contrary, a Failure to Pay shall under no circumstances be construed as an agreement by DRC to reduce or waive DRC's fees and expenses. The Client shall not agree or otherwise consent to a unilateral reduction or waiver of DRC fees and expenses without the explicit written consent of DRC and any such agreement or consent to such reduction or waiver by the Client without DRC's explicit written consent shall be deemed null and void and constitute a breach of this Agreement (a "Material Breach"). Notwithstanding anything contained in this agreement to the contrary, upon the occurrence of a Material Breach, DRC shall have the right, at its option, to terminate this agreement upon five (5) business days notice to the Client.



**5. STORAGE**: Client shall assume the risks and DRC shall not be responsible for any damages, liability or expenses incurred in connection with any delay in delivery of or damage to cards, disks, magnetic tapes or any input data furnished by Client unless DRC has agreed in writing to assume such responsibility. Forms storage at DRC beyond a normal 90 day supply will be billed at standard warehousing rates established by DRC.

**6. E-MAIL COMMUNICATIONS**: DRC and the Client and its agents acknowledge that they may wish to communicate electronically with each other at a business e-mail address. However, the electronic transmission of information cannot be guaranteed to be secure or error free and such information could be intercepted, corrupted, lost, destroyed, arrive late or incomplete or otherwise be adversely affected or unsafe to use. Accordingly, each party agrees to use commercially reasonable procedures to check for the then most commonly known viruses and to check the integrity of data before sending information to the other electronically, but each party recognizes that such procedures cannot be a guarantee that transmissions will be virus-free. It remains the responsibility of the party receiving an electronic communication from the other to carry out a virus check on any attachments before launching any documents, whether received on disk or otherwise.

**7. SUPPLIES**: All supplies shall be furnished at Client's expense.

**8. WARRANTY AND RELIANCE**: Client acknowledges and agrees that DRC will take direction from the Client's representatives, employees, agents and/or professionals (collectively, the "Client Parties") with respect to services being provided under this Agreement. Client and DRC agree that DRC may rely upon, and the Client agrees to be bound by, any requests, advice or information provided by the Client Parties to the same extent as if such requests, advice or information were provided by the Client. DRC shall have the right to rely on the accuracy of all data provided by the Client and the Client Parties to DRC. Client is responsible for the accuracy of all programs, data and other information it submits to DRC. The DRC warranty under this agreement shall be limited to the re-running at its expense, of any inaccurate reports provided that such inaccuracies were caused solely as a result of performance hereunder and provided further that DRC shall receive written notice of such inaccuracies within thirty (30) days of delivery of such report. If said notice is not made to DRC within the prescribed time limit Client is due and liable for all charges. Client agrees that the foregoing constitutes the exclusive remedy available to it.

**9. TERM**: This agreement shall be effective from the date upon which it is accepted by DRC as set forth herein and shall remain in force until terminated by either party upon thirty days' written notice to the other party or by DRC upon occurrence of a Non-Payment Breach or a Material Breach, as defined in paragraph 4 above. In the event that a chapter 7 trustee, chapter 11 trustee or chapter 11 liquidating trustee is appointed, this agreement will remain in effect until an order of the Bankruptcy Court is entered discharging DRC from service and responsibility under this Agreement. The payment obligation and the indemnity obligation set forth in sections 4 and 11 herein, respectively, shall survive termination of this Agreement. In the event this Agreement is terminated, DRC shall coordinate with the Client and, to the extent applicable, the Office of the Clerk of the Bankruptcy Court, for an orderly transfer of record keeping functions and shall provide all necessary staff, services and assistance required for such orderly transfer. Client agrees to pay for such services in accordance with DRC's then existing fees for such services. If termination of this Agreement occurs following entry of an order by

www.donlinrecano.com

Case: 23-10113    Doc# 33    Filed: 03/17/23    Entered: 03/17/23 16:24:51    Page 9 of 15



the Bankruptcy Court approving DRC's retention under 28 U.S.C. § 156 (c), then the Client shall immediately seek entry of an order (in form and substance reasonably acceptable to DRC) that discharges DRC from service and responsibility under this Agreement and 28 U.S.C. § 156 (c).

**10. TERMS OF AGREEMENT**: The terms of this Agreement prevail over any and all terms contained in Client's purchase order or authorization and no waiver, discharge, or modification of the terms of this Agreement shall bind DRC unless in writing and signed by an authorized representative of DRC.

**11. INDEMNIFICATION**: The Client shall indemnify and hold DRC and its affiliates, officers, directors, agents, employees, consultants, and subcontractors (collectively, the "Indemnified Parties") harmless, to the fullest extent permitted by applicable law, from and against any and all losses, claims, damages, liabilities, costs, obligations, judgments, causes of action, charges (including, without limitation, costs of preparation and attorneys' fees) and expenses as incurred (collectively, "Losses"), arising out of or relating to (a) this Agreement or DRC's rendering of services pursuant hereto (including any erroneous instructions or information provided to DRC by the Client or the Client Parties for use in providing services under this Agreement), (b) any breach or alleged breach of this Agreement by Client, or (c) any negligence or willful or reckless actions or misconduct of Client or Client Parties with respect to this Agreement, other than Losses resulting solely from DRC's gross negligence or willful misconduct. Without limiting the generality of the foregoing, "Losses" includes any liabilities resulting from claims by third persons against any Indemnified Parties. The Client shall notify DRC in writing promptly of the institution, threat or assertion of any claim of which the Client is aware with respect to the services provided by DRC under this Agreement. Such indemnity shall remain in full force and effect regardless of any investigation made by or on behalf of DRC and shall survive the termination of this Agreement until the expiration of all applicable statutes of limitation with respect to DRC's liabilities.

**12. CONFIDENTIALITY:** Each of DRC and the Client, on behalf of themselves and their respective employees, agents, professionals and representatives, agrees to keep confidential all non-public records, systems, procedures, software and other information received from the other party in connection with the services provided under this Agreement; provided, however, that if either party reasonably believes that it is required to produce any such information by order of any governmental agency or other regulatory body, it may, upon not less than five (5) business days' written notice to the other party, release the required information.

**13. OWNERSHIP OF PROGRAMS**: Unless otherwise agreed in writing, all programs developed by DRC in connection with any services to be performed under this Agreement shall remain the sole property of DRC. All programs and/or systems documentation in the possession of DRC which DRC has agreed in writing to return to the Client, prepared for the Client by DRC, shall be returned to the Client upon demand providing all charges for such programming and/or systems documentation have been paid in full.

**14. SYSTEMS IMPROVEMENTS:** DRC's policy is to provide continuous improvements in the quality of service to its clients. DRC, therefore, reserves the right to make changes in operating procedures, operating systems, programming languages, application programs, time period of accessibility, equipment, and the DRC data center serving the Client, so long as any such changes do not materially

Case: 23-10113    Doc# 33    Filed: 03/17/23    Entered: 03/17/23 16:24:51    Page 10 of 15

www.donlinrecano.com



interfere with ongoing services provided to the Client in connection with the Client's chapter 11 case.

**15. UNUSUAL MEASURES**: Where the Client requires measures that are unusual and beyond the normal business practice and hours of DRC such as, but not limited to, CPA Audit, Errors and Omissions Insurance, and/or Off-Premises Storage of Data, the cost of such measures, if provided by DRC, shall be charged to the Client. Said charges may be required in advance if DRC deems it appropriate.

**16. JURISDICTION.** In the event that Client commences a case under title 11 of the United States Code, this Agreement shall be subject to approval by the United States Bankruptcy Court for the district in which the Client commences its case (the "Bankruptcy Court") and such court shall retain jurisdiction over all matters regarding this Agreement.

**17. FORCE MAJEURE.** Whenever performance by DRC of any of its obligations hereunder is substantially prevented by reason of any act of God, strike, lock out or other industrial or transportational disturbance, fire, lack of materials, law, regulation or ordinance, war or war conditions, or by reasons of any other matter beyond DRC's reasonable control, then such performance shall be excused and this Agreement shall be deemed suspended during the continuation of such prevention and for a reasonable time thereafter.

**18. NOTICE.** Any notice or other communication required or permitted hereunder shall be in writing and shall be delivered personally, or sent by registered mail, postage prepaid, or overnight courier. Any such notice shall be deemed given when so delivered personally, or, if mailed, five days after the date of deposit in the United States mail, or, if sent by overnight courier, one business day after delivery to such courier, as follows:

| | |
|---|---|
| if to DRC, to: | Donlin, Recano & Company, Inc., 6201 15th Avenue, Brooklyn, NY 11219, Attention: Nellwyn Voorhies, Esq.; |
| if to the Client, to: | Felderstein Fitzgerald Willoughby Pascuzzi & Rios LLP 500 Capital Mall, Suite 2250 Sacramento, CA 95814 Attention: Paul J. Pascuzzi, Esq. |

**19. GOVERNING LAW.** This Agreement will be governed by and construed in accordance with the laws of the State of New York (without reference to its conflict of laws provisions).

**20. SEVERABILITY.** All clauses and covenants contained in this Agreement are severable and in the event any of them are held to be invalid by any court, such clause or covenant shall be valid and enforced to the maximum extent as to which it may be valid and enforceable, and this Agreement will



be interpreted as if such invalid clauses or covenants were not contained herein.

**21. ASSIGNMENT.** This Agreement and the rights and obligations of DRC and the Client hereunder shall bind and inure to the benefit of any successors or assigns thereto.

**22. GENERAL**: The terms and conditions of this Agreement may be modified by DRC upon one (1) month's prior written notice to Client. Client will not employ any DRC employee within two (2) years from the termination of this Agreement. The term "this Agreement" as used herein includes any future written amendments, modifications, supplements or schedules duly executed by Client and DRC. This Agreement contains the entire agreement between the parties with respect to the subject matter hereof. This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one in the same instrument. A facsimile copy, photocopy or imaged copy of this Agreement shall be considered an original copy. The Client shall file an application with the Bankruptcy Court seeking approval of this Agreement (the "Application"), the form and substance of which shall be reasonably acceptable to DRC. If an order is entered approving such Application (the "Order"), any discrepancies between this Agreement, the Application and the Order shall be controlled by the Application and Order.



Accepted and Approved:

Donlin, Recano & Company, Inc.
6201 15th Avenue
Brooklyn, New York 11219

By: _____

Signature: _____

Title: _____

Date: _____


Accepted and Approved:

The Roman Catholic Bishop of Santa Rosa, a corporation sole

By: _____Dr. Joseph Oberting_____

Signature: _____Dr. Joseph Oberting_____

Title: _____CFO_____

Date: _____Feb. 23, 2023_____

This Agreement is subject to the terms and conditions set forth herein. Client acknowledges reading and understanding it and agrees to be bound by its terms and conditions and further agrees that it is the complete and exclusive statement of the Agreement between the parties, which supersedes all proposals oral or written and other prior communications between the parties relating to the subject matter of this Agreement.



## SCHEDULE A
## The Roman Catholic Bishop of Santa Rosa, a corporation sole
### Fee Schedule

| Professional Service | Hourly Rates |
|---|---|
| Executive Management | No charge |
| Senior Bankruptcy Consultant | $158 - $194 |
| Case Manager | $144 - $158 |
| Consultant/Analyst | $117 - $140 |
| Technology/Programming Consultant | $86 - $108 |
| Clerical | $35 - $45 |

| Noticing Service | |
|---|---|
| Laser Printing/ Photocopies | $.10 per Image |
| Personalization/ Labels | WAIVED |
| Fax (Incoming) | WAIVED |
| Fax Noticing | $.08 per Page |
| Postage and Overnight Delivery | At Cost |
| Electronic Noticing | WAIVED |
| Publication Services | At Cost |

| Solicitation, Balloting, Schedule/SOFA | |
|---|---|
| Print and Mail Ballots/Plan Disbursements | Print/hourly fees above – Plan/DS media varies |
| Set-up Tabulation & Vote Verification | $81 - $203 as needed |
| Public Securities Solicitation | $81 - $203 per Hour |
| Schedule/SOFA preparation | $81 - $203 per Hour |

| Claims Docketing and Management | |
|---|---|
| Website Development | WAIVED |
| Web Hosting | WAIVED |
| Creditor Data Storage/ Electronic Document Storage | $.08 per record monthly |
| Document Imaging | $.08 per Image |
| Electronic Claims filing | No Set-up charge or per claim charge |

| Data Room Services | |
|---|---|
| DRC DocuLinks™ Virtual Data Room Services | Hosting WAIVED |
| Data Room Development | $81 per Hour |

| Miscellaneous | |
|---|---|
| Escrow Agent Services | Competitive Interest Rates |
| Out-of-Pocket Expenses (including any required travel) | At Cost |
| Call Center Operators | $65 per hour |

<u>Court Service List</u>

No service required.