PAUL J. PASCUZZI, State Bar No. 148810
JASON E. RIOS, State Bar No. 190086
THOMAS R. PHINNEY, State Bar No. 159435
FELDERSTEIN FITZGERALD
WILLOUGHBY PASCUZZI & RIOS LLP
500 Capitol Mall, Suite 2250
Sacramento, CA 95814
Telephone: (916) 329-7400
Facsimile: (916) 329-7435
ppascuzzi@ffwplaw.com
jrios@ffwplaw.com
tphinney@ffwplaw.com

Attorneys for
The Roman Catholic Bishop of Santa Rosa

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SANTA ROSA DIVISION

| | |
|---|---|
| In re:<br><br>THE ROMAN CATHOLIC BISHOP OF SANTA ROSA,<br><br>　　　　　　　Debtor In Possession. | Case No. 23-10113<br><br>Chapter 11<br><br>Date: June 7, 2023<br>Time: 11:00 a.m.<br>Location: 1300 Clay Street, Ctrm. 215<br>　　　　　Oakland, CA 94612<br>　　　　　[In person or via Zoom]<br><br>Judge: Hon. Charles Novack |

**EXHIBITS TO MOTION FOR APPROVAL OF (1) TERMINATION OF PRIEST'S SUPPLEMENTAL RETIREMENT PLAN (SERP) (2) TRANSFER OF FUNDS, AND (3) PAYMENT OF TRUST TERMINATION EXPENSES**

| EXHIBIT | DESCRIPTION |
|---|---|
| A | Proposed Order Approving Motion for Approval of (1) Termination of Priest's Supplemental Retirement Plan (SERP) (2) Transfer of Funds, And (3) Payment Of Trust Termination Expenses (3 pages) |
| B | Stipulation for Termination of Diocese of Santa Rosa Priest's Supplemental Retirement Plan and Turnover of Funds (6 pages) |
| | Exhibit 1 to Stipulation:<br><br>The Diocese of Santa Rosa Priests Supplemental Retirement Plan (SERP) (effective January 1, 2007) (20 pages) |

EXHIBTIS TO MOTION FOR APPROVAL OF: (1) TERMINATION OF RETIREMENT SERP; (2) TRANSFER FUNDS, AND (3) PAYMENT OF TRUST TERMINATION EXPENSES

-1-

Case: 23-10113   Doc# 195-2   Filed: 05/10/23   Entered: 05/10/23 14:54:48   Page 1 of 50

| | | |
|---|---|---|
| | Exhibit 1 (part 2) to Stipulation: | |
| | Amendment No. 1 to SERP (February 1, 2010) (2 pages) | |
| | Exhibit 2 to Stipulation: | |
| | Trust Agreement for The Diocese of Santa Rosa Priests Supplemental Retirement Plan (effective January 1, 2007) (13 pages) | |

Dated: May 10, 2023

FELDERSTEIN FITZGERALD
WILLOUGHBY & PASCUZZI LLP


By _/s/ Paul J. Pascuzzi_
PAUL J. PASCUZZI
Attorneys for Debtor and Debtor In Possession

EXHIBTIS TO MOTION FOR APPROVAL OF: (1) TERMINATION
OF RETIREMENT SERP; (2) TRANSFER FUNDS, AND (3)
PAYMENT OF TRUST TERMINATION EXPENSES

-2-

Case: 23-10113    Doc# 195-2    Filed: 05/10/23    Entered: 05/10/23 14:54:48    Page 2
of 50

# EXHIBIT A

1  PAUL J. PASCUZZI, State Bar No. 148810
   JASON E. RIOS, State Bar No. 190086
2  THOMAS R. PHINNEY, State Bar No. 159435
   FELDERSTEIN FITZGERALD
3  WILLOUGHBY PASCUZZI & RIOS LLP
   500 Capitol Mall, Suite 2250
4  Sacramento, CA 95814
   Telephone: (916) 329-7400
5  Facsimile: (916) 329-7435
   ppascuzzi@ffwplaw.com
6  jrios@ffwplaw.com
   tphinney@ffwplaw.com
7
   Attorneys for
8  The Roman Catholic Bishop of Santa Rosa

9                    UNITED STATES BANKRUPTCY COURT

10                   NORTHERN DISTRICT OF CALIFORNIA

11                        SANTA ROSA DIVISION

12  In re:                              Case No. 23-10113

13  THE ROMAN CATHOLIC BISHOP OF        Chapter 11
    SANTA ROSA,
14
                                        Date:      June 7, 2023
15          Debtor In Possession.       Time:      11:00 a.m.
                                        Location:  1300 Clay Street, Ctrm. 215
16                                                 Oakland, CA 94612
                                                   [In person or via Zoom]
17
                                        Judge:     Hon. Charles Novack
18

19      **ORDER ON MOTION FOR APPROVAL OF (1) TERMINATION OF PRIEST'S**
20   **SUPPLEMENTAL RETIREMENT PLAN (SERP) (2) TRANSFER OF FUNDS, AND (3)**
              **PAYMENT OF TRUST TERMINATION EXPENSES**

21          The motion of The Roman Catholic Bishop of Santa Rosa ("Debtor"), debtor in

22  possession, for an order authorizing the Debtor to enter into a stipulation (the "Stipulation") with

23  U.S. Bank National Association ("U.S. Bank" or "Trustee") in its capacity as trustee under the

24  trust agreement for The Diocese of Santa Rosa Priests Supplemental Retirement Plan (SERP)

25  (the "Trust Agreement") for turnover of the trust funds currently in the Trustee's possession

26  pursuant to the Trust Agreement (the "SERP Trust Funds"), less the Trustee's reasonable

27

28

ORDER ON MOTION FOR APPROVAL OF: (1) TERMINATION
OF RETIREMENT SERP; (2) TRANSFER FUNDS, AND (3)
PAYMENT OF TRUST TERMINATION EXPENSES
-1-

Case: 23-10113   Doc# 195-2   Filed: 05/10/23   Entered: 05/10/23 14:54:48   Page 4
of 50

expenses and attorney fees (the "Motion"),[1] came on for hearing on June 7, 2023, at 11:00 a.m., in Courtroom 215 of the United States Bankruptcy Court for the Northern District of California. The Debtor appeared through its counsel, Paul J. Pascuzzi. Other appearances were noted on the record. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

Based upon the Motion and supporting pleadings, any other relevant papers filed in connection with the Motion, arguments of counsel appearing at the hearing on the Motion, and for good and sufficient cause appearing,

IT IS HEREBY ORDERED THAT:

1.     The Motion is GRANTED as set forth herein.

2.     The Stipulation for Turnover of SERP Trust Funds ("Stipulation") filed with the Motion as Exhibit B filed at Docket No. ___ is approved.

3.     As provided in the Stipulation, the Trustee is directed to turn over the SERP Trust Funds to the Debtor, minus the Trustee's reasonable expenses and attorney fees, within fifteen (15) days after entry of this order, provided that no appeal, motion for rehearing or other motion for relief from such order has been filed prior to the expiration of such period. The Court reserves the jurisdiction to resolve any dispute relating to the amount of the Trustee's expenses and fees.

4.     Upon receipt of the SERP Trust Funds by the Debtor, the Trust Agreement shall be deemed terminated, and all duties and obligations of the Debtor and the Trustee under the Trust Agreement shall be terminated.

5.     Pending further order of this Court, the Debtor shall hold the SERP Trust Funds in a segregated account and not use them for any purpose.

6.     All rights of all parties in interest to seek an Order of the Court that the SERP Trust Funds are property of the estate are reserved, and nothing in this Stipulation shall be construed to be a waiver of that claim.

---

[1] All capitalized terms used but otherwise not defined herein shall have the meanings set forth in the Motion.

Case: 23-10113   Doc# 195-2   Filed: 05/10/23   Entered: 05/10/23 14:54:48   Page 5
of 50

APPROVED AS TO FORM.

STINSON, LLP

_____
ROBERT T. KUGLER
Attorneys for the Official Committee
of Unsecured Creditors


FAEGRE BAKER DANIELS LLP


_____
MICHAEL R. STEWART
Attorneys for U.S. Bank National Association

*** **END OF ORDER** ***

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

ORDER ON MOTION FOR APPROVAL OF: (1) TERMINATION
OF RETIREMENT SERP; (2) TRANSFER FUNDS, AND (3)
PAYMENT OF TRUST TERMINATION EXPENSES

# EXHIBIT B

PAUL J. PASCUZZI, State Bar No. 148810
JASON E. RIOS, State Bar No. 190086
THOMAS R. PHINNEY, State Bar No. 159435
FELDERSTEIN FITZGERALD
WILLOUGHBY PASCUZZI & RIOS LLP
500 Capitol Mall, Suite 2250
Sacramento, CA 95814
Telephone: (916) 329-7400
Facsimile: (916) 329-7435
ppascuzzi@ffwplaw.com
jrios@ffwplaw.com
tphinney@ffwplaw.com

Attorneys for
The Roman Catholic Bishop of Santa Rosa

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SANTA ROSA DIVISION

| | |
|---|---|
| In re: | Case No. 23-10113 |
| THE ROMAN CATHOLIC BISHOP OF SANTA ROSA, | Chapter 11 |
| Debtor In Possession. | Date: June 7, 2023<br>Time: 11:00 a.m.<br>Location: 1300 Clay Street, Ctrm. 215<br>Oakland, CA 94612<br>[In person or via Zoom]<br>Judge: Hon. Charles Novack |

**STIPULATION FOR TERMINATION OF DIOCESE OF SANTA ROSA PRIEST'S SUPPLEMENTAL RETIREMENT PLAN AND TURNOVER OF FUNDS**

This Stipulation is entered into by and between the Roman Catholic Bishop of Santa Rosa (the "RCBSR" or the "Debtor"), and U.S. Bank National Association ("U.S. Bank") in its capacity as trustee under the Trust Agreement (the "Trustee") as that term is defined below with respect to the following facts, which the Debtor has represented to the Trustee to be true and correct statements of fact, except for paragraph G, which Trustee has represented to Debtor to be true and correct statements of fact:

//

Case: 23-10113   Doc# 195-2   Filed: 05/10/23   Entered: 05/10/23 14:54:48   Page 8 of 50

A.      On March 13, 2023, the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").  The Debtor is authorized to continue to operate its business and manage its properties as a debtor in possession, pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

B.      The Diocese of Santa Rosa (the "Diocese")[1] was established in 1962 and comprises the six counties of Sonoma, Napa, Mendocino, Lake, Humboldt and Del Norte.  The RCBSR provides resources, spiritual leadership, direction, support, planning, programming, leadership development and other services to approximately 42 Parishes, other Catholic-based entities and organizations which operate in the Diocese, and individuals of the Roman Catholic faith.

C.      In December 2006, the RCBSR established the Diocese of Santa Rosa Priests Supplemental Retirement Plan ("Plan" also commonly referred to as the "SERP").  A copy of the SERP is attached as <u>Exhibit 1</u>, for the purpose of providing retirement benefits primarily for the Bishop of the Diocese (collectively, the "Participants").  On February 1, 2010, the Plan was amended as shown on Amendment No. 1 to the Plan, also attached as <u>Exhibit 1</u>.

D.      The SERP is structured as a nonqualified retirement benefit plan.  Under applicable rules and regulations, to secure this tax-sheltered status, the Participants' interests in the Plan are expressly subject to the claims of the Debtor's creditors.

E.      In January 2007, the RCBSR and Union Bank entered into the Trust Agreement for the Diocese of Santa Rosa Priests Supplemental Pension Plan ("Trust Agreement").  A copy of the Trust Agreement is attached as <u>Exhibit 2</u>.

F.      In 2012, U.S. Bank acquired Union Bank's trust business and succeeded to Union Bank's rights as Trustee under the Trust Agreement pursuant to California Financial Code § 4879.14.

/ /

---

[1]      For the avoidance of doubt, the term "Diocese" is used herein exclusively to refer to the juridic person of the Diocese under Canon Law, and the terms "RCBSR" or the "Debtor" are used herein exclusively to refer to the secular legal embodiment of the Diocese.

STIPULATION FOR TURNOVER OF TRUST FUNDS

-2-

G.     The Trust Agreement provides for the establishment of a "rabbi" trust (the "Trust")[2] to hold and invest contributions to, and assets received in connection with, the Plan. The Trust Agreement provides that the Trust is intended to be a "grantor trust" within the meaning of subpart E, part I, subchapter J, chapter 1, subtitle A of the Internal Revenue Code of 1986, as amended.  *See* Trust Agreement § 1.3.

H.     Sections 9.2 and 9.3 of the Trust Agreement provide that "the Trustee shall be entitled to reasonable fees for services rendered in the amounts agreed to be reimbursed out of the assets held in the Trust for reasonable expenses incurred upon from time to time by the Bishop and the Trustee," and that such fees, including attorney fees, may be paid out of the Trust Fund.

I.     Section 1.4 of the Trust Agreement provides in part that "[a]ny assets held by the Trust will be subject to the claims of the [RCBSR]'s general creditors under federal and state law in the event of Insolvency, as defined in Section 3.1, herein."  Trust Agreement § 1.4. Sections 3.1 and 3.2 of the Trust Agreement provide that upon the RCBSR being "subject to a pending proceeding as a debtor under the United States Bankruptcy Code [ ]" "[t]he Trustee shall cease payment of benefits to the Priests" and that the assets of the Trust are subject to the claims of the RCBSR's general creditors.  Trust Agreement §§ 3.1 and 3.2.  On or about March 13, 2023, the Debtor notified the Trustee of the commencement of the Debtor's chapter 11 case. The Trustee has not made any additional payment to the Participants from the Trust since receiving that notification.

J.     The SERP Trust funds are listed at ¶3.20 of Schedule B on the Debtor Schedules (US Bank account # 5400).  The SERP Trust holds cash in a Money Market Deposit Account, two Mutual Funds (holding Equity Assets), and two Mutual Funds holding Fixed Income Fund assets.   As of the date of this stipulation, the valuation of the assets is approximately $274,017.89 which value can fluctuate from time to time.  These funds, including any accruals

---

[2]     The term "rabbi" is applied to this type of trust because the Internal Revenue Service first addressed the tax treatment of such a trust in the context of a trust established by a congregation for its rabbi.

or changes in values, are referred to herein as the "SERP Trust Funds."

K.     The Debtor believes that the Trustee now holds the assets of the Trust for the benefit of the Debtor's creditors.

L.     The Debtor and the Trustee have agreed that the Trustee will return to Debtor all trust assets (the SERP Trust Funds) currently in the Trustee's possession pursuant to the Trust Agreement, less the Trustee's reasonable expenses and attorney fees.

M.     The Debtor will give notice of this Stipulation to all Participants, and such other creditors and parties in interest as required by the Bankruptcy Code.

N.     The Debtor and Trustee seek entry of an order pursuant to sections 105 and 542 of the Bankruptcy Code, approving this Stipulation and directing the Trustee to return to the Debtor all SERP Trust Funds in its possession pursuant to the Trust Agreement.

**NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED THAT**:

1.     The Trustee shall turn over the SERP Trust Funds to the Debtor, minus the Trustee's reasonable expenses and attorney fees, within fifteen (15) days after entry of an order in form and substance acceptable to the Trustee, approving this Stipulation, provided that no appeal, motion for rehearing or other motion for relief from such order has been filed prior to the expiration of such period.  Contemporaneously with the turnover of such funds to the Debtor, the Trustee is authorized to apply the funds remaining in the Trust in full satisfaction of the Trustee's reasonable expenses and attorney fees; provided, however, in the event the Debtor objects to the expenses and attorney fees sought by the Trustee, the Bankruptcy Court shall retain jurisdiction to resolve any dispute regarding the amount of said fees and expenses.

2.     Upon the receipt of the SERP Trust Funds by the Debtor, the Trust Agreement shall be deemed terminated and all duties and obligations of the Debtor and the Trustee under the Trust Agreement shall be terminated.

3.     Upon termination of the Trust Agreement and turnover of the SERP Trust Funds to the Debtor, minus the Trustee's reasonable expenses and attorney fees, the Trustee will have fulfilled its duties in administration of the Trust in accordance with its terms and applicable law,

/ /

STIPULATION FOR TURNOVER OF TRUST FUNDS

1   and shall not be liable to any Participant or creditor, with respect to the Trust Agreement, the

2   SERP Trust Funds, or the Trust.

3

4   Dated:  May __, 2023                         THE ROMAN CATHOLIC BISHOP
                                                 OF SANTA ROSA, a California corporation sole
5

6                                                By:_____
                                                 Its: Chief Financial Officer
7

8   Dated:  May 10, 2023                         U.S. BANK NATIONAL ASSOCIATION

9                                                By: _Vanessa Todd O'Neill_____

10
                                                 Its:Vice President and Relationship Manager
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

fulfilled its duties in administration of the Trust in accordance with its terms and applicable law,

/ /

and shall not be liable to any Participant or creditor, with respect to the Trust Agreement, the
SERP Trust Funds, or the Trust.

Dated:  May 10, 2023

THE ROMAN CATHOLIC BISHOP
OF SANTA ROSA, a California corporation sole

By: _____
Its: Chief Financial Officer


Dated:  May ___, 2023

U.S. BANK NATIONAL ASSOCIATION

By: _____
Its:

STIPULATION FOR TURNOVER OF TRUST FUNDS

# EXHIBIT 1



# THE DIOCESE OF SANTA ROSA PRIESTS

# SUPPLEMENTAL
# RETIREMENT PLAN (SERP)

*Final*
*12/5/06*

**Plan Sponsor**

# THE DIOCESE OF SANTA ROSA PRIESTS
# SUPPLEMENTAL RETIREMENT PLAN (SERP)

## TABLE OF CONTENTS

**SECTION**                                                     **PAGE NO.**

1.  **FOREWORD** ........................................................................................................ 1

2.  **DEFINITIONS** ................................................................................................... 2
    2.1   Bishop ......................................................................................................... 2
    2.2   Basic Plan .................................................................................................. 2
    2.3   Basic Plan Benefit ..................................................................................... 2
    2.4   Effective Date ............................................................................................ 2
    2.5   Normal Retirement Date ............................................................................ 2
    2.6   Other Benefits ............................................................................................ 2
    2.7   Part A Benefit ............................................................................................ 2
    2.8   Part A Memorandum .................................................................................. 2
    2.9   Part B Benefit ............................................................................................ 3
    2.10  Plan ............................................................................................................ 3
    2.11  Plan Sponsor ............................................................................................. 3
    2.12  Plan Year ................................................................................................... 3
    2.13  Priest .......................................................................................................... 3
    2.14  Prior Plan ................................................................................................... 3
    2.15  Service ....................................................................................................... 3
    2.16  Termination of Service .............................................................................. 3
    2.17  Termination of Service Date ...................................................................... 3
    2.18  Trust Agreement ....................................................................................... 3
    2.19  Trust Fund .................................................................................................. 3
    2.20  Trustee ...................................................................................................... 3
    2.21  Year of Service ......................................................................................... 3

3.  **ELIGIBILITY** ...................................................................................................... 4
    3.1   Part A Benefit ............................................................................................ 4
    3.2   Part B Benefit ............................................................................................ 4

4.  **BENEFITS** ......................................................................................................... 5
    4.1   Part A Benefit ............................................................................................ 5
    4.2   Part B Benefit ............................................................................................ 5
    4.3   Rounding into Whole Dollars ..................................................................... 6

5.  **VESTING AND DISTRIBUTION OF BENEFITS** ............................................... 7
    5.1   Vesting ....................................................................................................... 7
    5.2   Form of Benefit .......................................................................................... 7
    5.3   Time of Benefit Commencement ................................................................ 7
    5.4   Modification or Redetermination of Benefits in Pay Status ........................ 7
    5.5   Suspension of Benefits .............................................................................. 7
    5.6   Housing Allowance .................................................................................... 8

-i-

6.   **SURVIVOR BENEFITS:  THERE ARE NO SURVIVOR BENEFITS** ................................ 9
     6.1    Pre-Retirement Survivor Benefits ................................................................. 9
     6.2    Post-Retirement Survivor Benefits ............................................................. 9

7.   **FUNDING** .............................................................................................................. 10
     7.1    Funding Policy and Procedure .................................................................. 10
     7.2    Amount of Contributions ........................................................................... 10
     7.3    Paid to Trustee ......................................................................................... 10
     7.4    Application of Trust Fund .......................................................................... 10
     7.5    Forfeitures ................................................................................................ 10

8.   **PRIEST CONTRIBUTIONS** ................................................................................... 11
     8.1    Mandatory ................................................................................................. 11
     8.2    Voluntary ................................................................................................... 11

9.   **AMENDMENT OR TERMINATION OF PLAN** ....................................................... 12
     9.1    Amendment or Termination ...................................................................... 12
     9.2    Plan Termination Date .............................................................................. 12
     9.3    Procedure Upon Plan Termination ........................................................... 12
     9.4    Merger of Plans ........................................................................................ 12

10.  **ADMINISTRATIVE PROVISIONS** ........................................................................ 13
     10.1   Plan Administrator ..................................................................................... 13
     10.2   Plan Administrator's Powers and Duties ................................................... 13
     10.3   Delegation of Plan Administrator Responsibilities .................................... 13
     10.4   Records and Reports ................................................................................ 13
     10.5   Information to Be Furnished to Plan Sponsor ........................................... 13
     10.6   Application (Claim) for Benefits ................................................................ 13
     10.7   Notice of Decision .................................................................................... 13
     10.8   Priest's Right of Appeal ............................................................................ 14
     10.9   Copies of Documents, Etc. ....................................................................... 14
     10.10  Allocation of Functions ............................................................................. 14
     10.11  Factors ...................................................................................................... 14
     10.12  Payment of Plan Expenses ...................................................................... 14
     10.13  Benefits Payable Hereunder .................................................................... 14

11.  **MISCELLANEOUS** ............................................................................................... 15
     11.1   Entire Agreement ...................................................................................... 15
     11.2   Nature of Rights ........................................................................................ 15
     11.3   Nonassignability/Nonalienation ................................................................ 15
     11.4   Jurisdiction ................................................................................................ 15
     11.5   Construction .............................................................................................. 15

**Appendix A – Part A Benefits** ..................................................................................... 16

**Appendix A (1) – Format of Part A Memorandum** ...................................................... 17

Case: 23-10113   Doc# 195-2   Filed: 05/10/23   Entered: 05/10/23 14:54:48   Page 17 of 50

# THE DIOCESE OF SANTA ROSA PRIESTS
# SUPPLEMENTAL RETIREMENT PLAN (SERP)

| SECTION 1.0 FOREWORD |
| --- |

The Diocese of Santa Rosa Priests Supplemental Retirement Plan, also known as the "SERP," as set forth herein, is intended to provide for the following retirement benefits:

(1)   **Part A Benefits.**  Part A provides for retirement benefits to certain priests on a case-by-case basis.

(2)   **Part B Benefits.**  Part B provides a retirement benefit for certain Bishops taking into account other specified benefits to which the Bishop may be entitled.

In some cases benefits under this Plan may be in addition to benefits under The Diocese of Santa Rosa Priests Pension Plan (the "Basic Plan").

This Plan is intended to be a "church plan", as defined in Section 414(e) of the Internal Revenue Code, and thus to be exempt from the Employee Retirement Income Security Act of 1974 as amended (ERISA).  The Plan Sponsor **does not elect,** and has not previously elected, under Section 410(d) of the Internal Revenue Code, that the Plan be subject to Title I of ERISA and Sections 410, 411, and 412 of the Internal Revenue Code, nor any other section or provision of ERISA or the Code under which the Plan Sponsor, or the Plan is exempt.

This Plan is not intended to be a "qualified plan" under Section 401(a) of the Internal Revenue Code.

To record adoption of this Plan, I hereby affix my signature.

By:   DANIEL F. WALSH

Title:   Bishop of Santa Rosa

Signature: *Daniel F Walsh*

Date: *12.8.06*

Case: 23-10113   Doc# 195-2   Filed: 05/10/23   Entered: 05/10/23 14:54:48   Page 18 of 50

| SECTION 2.0 | DEFINITIONS |
|---|---|

2.1 **Bishop.** Bishop means a person who was diocesan bishop of the Diocese of Santa Rosa under the canon law of the Roman Catholic Church and Incumbent of The Roman Catholic Bishop of Santa Rosa, a Corporation Sole, on or after the Effective Date.

2.2 **Basic Plan.** The Diocese of Santa Rosa Priests Pension Plan effective January 1, 2007, including any successor to such Plan maintained by the Bishop.

2.3 **Basic Plan Benefit.** Basic Plan Benefit means the total benefit payable to a Priest from the Basic Plan, determined under Section 6.1 of the Basic Plan, without regard to the provisions of this Plan.

2.4 **Effective Date.** This Plan will be effective January 1, 2007.

2.5 **Normal Retirement Date.** As defined in Section 2.16 of the Basic Plan.

2.6 **Other Benefits.** Other Benefits means benefits to which a Bishop is entitled (whether or not actually paid) under any formal or informal pension plan, deferred compensation plan, tax-sheltered annuity plan under Section 403(b) of the Code, or a benefit under Section 401(k) of the Code, or any other arrangement sponsored by any other arch/diocese in which the Bishop has a ministry assignment, any other organization of the Raman Catholic Church or any other church, or any lay employer, that provides for his retirement, payable as an annuity, in installments, as a lump sum, or in any combination thereof. Other Benefits shall not include Social Security, contributory individual retirement accounts, or, notwithstanding the preceding sentence, the Bishop's interest in any Section 403(b) tax-sheltered annuity or Section 401(k) cash or deferred arrangement attributable solely to salary deferrals or personal contributions made by the Bishop.

2.7 **Part A Benefit.** Part A Benefit refers to the benefit described in Section 4.1.

2.8 **Part A Memorandum.** Part A Memorandum means a memorandum in the form set forth in Appendix A(1) on which all information has been filled out and which has been signed by the Plan Sponsor and by the affected Priest.

Case: 23-10113   Doc# 195-2   Filed: 05/10/23   Entered: 05/10/23 14:54:48   Page 19

2.9    **Part B Benefit.**   Part B Benefit refers to the benefit described in Section 4.2.

2.10   **Plan.**   The Diocese of Santa Rosa Priests Supplemental Pension Plan (SERP) as set forth in this document and in any amendments from time to time made hereto.

2.11   **Plan Sponsor.**   The Plan Sponsor is The Roman Catholic Bishop of Santa Rosa, a Corporation Sole.

2.12   **Plan Year.**   The first Plan Year shall start on January 1, 2007 and end on June 30, 2007. Thereafter, a Plan Year shall be the twelve-month period beginning each July 1 and ending the following June 30.

2.13   **Priest**.  As defined in Section 2.22 of the Basic Plan.

2.14   **Prior Plan.**  As defined in Section 2.23 of the Basic Plan.

2.15   **Service.**  As defined in Section 3.2 of the Basic Plan.

2.16   **Termination of Service.**  As described in Section 3.5 of the Basic Plan.

2.17   **Termination of Service Date.**  As described in Section 3.6 of the Basic Plan.

2.18   **Trust Agreement.**  Trust Agreement means the agreement between the Plan Sponsor and the Trustee with respect to funds held for the exclusive benefit of Priests entitled to benefits under this Plan, subject only to the claims of creditors of the Bishop in the event of his bankruptcy or insolvency (as defined in the Trust Agreement).

2.19   **Trust Fund**.  Trust Fund refers to the assets accumulated under the Trust Agreement.

2.20   **Trustee.**  Trustee means Union Bank of California or any successor or substitute bank or trust company appointed by the Plan Sponsor, in accordance with the terms of the Trust Agreement.

2.21   **Year of Service.**  As defined in Section 2.32 of the Basic Plan.

Case: 23-10113    Doc# 195-2    Filed: 05/10/20    Entered: 05/10/23 14:54:48    Page 20

## SECTION 3.0    ELIGIBILITY

3.1     ***Part A Benefit.***  Each Priest for whom a Part A Memorandum is in effect shall be eligible for a Part A Benefit under this Plan.

3.2     ***Part B Benefit.***  Each Bishop, whose Service terminates on or after the Effective Date, shall be eligible for a Part B Benefit under this Plan.

## SECTION 4.0   BENEFITS

4.1   ***Part A Benefit.***  Each Priest for whom a Part A Memorandum is in effect shall receive a benefit as described in such Memorandum. The Plan Sponsor may from time to time attach hereto an Appendix A listing the Priests for whom Part A Memoranda are in effect.

4.2   ***Part B Benefit.***  Each Bishop eligible under Section 3.2 shall receive a Part B Benefit as described in this Section, subject to the relevant provisions of Section 5.0.

(a)   **Benefit Upon Termination of Service.**  If Bishop's Service terminates for any reason other than retirement from full-time service with the Diocese of Santa Rosa on or after his Normal Retirement Date, he shall be entitled to 100% of his Basic Plan Benefit on his Termination of Service Date assuming ---

(i)   he had been a participant in the Basic Plan at all times from the commencement of his Service in the Diocese (or the inception of the Basic Plan if later) until his Termination of Service Date (taking into account any benefits he accrued under the Prior Plan before the effective date of the Basic Plan), and

(ii)   his Basic Plan Benefit was not limited by Section 415(b)(1)(B) of the Internal Revenue Code.

(b)   **Benefit Upon Retirement.**  If a Bishop's Service terminates by reason of retirement on or after his Normal Retirement Date, he shall be entitled to 100% of his Basic Plan Benefit on his Normal Retirement Date or postponed Retirement Date, whichever is applicable calculated by:

(i)   assuming he was a participant in the Basic Plan on his retirement date, and

(ii)   substituting his total service in the Roman Catholic priesthood for "Years of Service" * in Section 6.1 of the Basic Plan, disregarding periods which would constitute "Breaks-in-Service"* or "Service Elsewhere"* if those definitions applied to all his in the Roman Catholic priesthood, and

(iii)   reducing the resulting benefit by the actuarial equivalent of his Other Benefits, determined by reference to the actuarial factors set forth in Section 14.15 of the Basic Plan.

(c)   **Future Benefit Increases.**  Section 6.6(a) of the Basic Plan shall apply to a Bishop retiring under subsection (b) of this section.  Subsection 6.6(b) of the Basic Plan shall apply to a Bishop terminating Service under subsection (a) of this section.

*\* Years of Service, Break-In-Service and Service Elsewhere  are defined in the Basic Plan.*

Case: 23-10113    Doc# 195-2    Filed: 05/10/23    Entered: 05/10/23 14:54:48    Page 22

(d) **Interpretation.** The Plan Administrator's interpretation of this Section 4.2 and other Plan provisions affected hereby shall be binding on each Bishop in accordance with Section 10.2.

4.3 *Rounding into Whole Dollars.* Any benefit determined under this Section 4.0, if not in whole dollars, shall be rounded up to the next highest whole dollar amount.

5.1   *Vesting.*

    (a)    *Part A Benefit.*  Subject to Section 5.4(b), each Part A Benefit shall be fully vested unless the Part A Memorandum creating such benefit provides otherwise.

    (b)    *Part B Benefit.*  A Bishop shall automatically be 100% vested in his benefit under the Plan by virtue of his installation as Bishop of the Diocese of Santa Rosa.

5.2   *Form of Benefit.*

    (a)    *Part A Benefit.*  Each Part A Benefit shall be paid in the form specified in the Part A Memorandum creating such benefit.

    (b)    *Part B Benefit.*  Each Part B Benefit shall be paid in the form of payment described in Section 6.7 (or Section 6.10 if applicable) of the Basic Plan.

5.3   *Time of Benefit Commencement.*

    (a)    *Part A Benefit.*  Payment of a Part A Benefit shall commence on the date specified in the Part A Memorandum creating such benefit.

    (b)    *Part B Benefit.*  Payment of a Bishop's Part B Benefit upon Termination of Service (under Section 4.2(a)) shall commence on his Normal Retirement Date.  Payment of a Bishop's Part B Benefit upon retirement (under Section 4.2(b)) shall commence upon his retirement from full-time service with the Diocese of Santa Rosa on or after his Normal Retirement Date.

5.4   *Modification or Redetermination of Benefits in Pay Status.*

    (a)    *Part A Benefit.*  Modification or redetermination of a Part A Benefit shall be governed by the Part A Memorandum creating such benefit.  Notwithstanding the preceding sentence, a Part A Memorandum shall have no further force or effect after it is superseded by a subsequent Part A Memorandum signed by the Plan Sponsor and by the affected Priest.

    (b)    *Part B Benefit.*  Modification or redetermination of a Part B Benefit shall be in accordance with Section 4.2(c).

5.5   *Suspension of Benefits.*

    (a)    *Part A Benefit.*  Suspension of a Part A Benefit shall be governed by the Part A Memorandum creating such benefit and by such other equitable considerations as the Plan Sponsor shall determine.

Case: 23-10113   Doc# 195-2   Filed: 05/10/23   Entered: 05/10/23 14:54:48   Page 24 of 50

(b) **Part B Benefit.** Suspension of a Part B Benefit due to reassignment of a Bishop to a ministry assignment with the Roman Catholic Church (within the Diocese or elsewhere) following commencement of such benefit shall be determined equitably by the Plan Sponsor.

(c) **Redetermination of Benefit.** Upon cessation of the ministry assignment or other condition causing suspension of a benefit, the benefit shall be redetermined and shall recommence. Redetermination of a Part B Benefit shall not result in a benefit lower than the benefit previously in pay status under this Plan, except to the extent that a Bishop's Other Benefits have increased.

5.6 **Housing Allowance.** The Plan Sponsor may designate a portion of a Priest's or Bishop's benefit payable hereunder as a housing allowance for purposes of Section 107 of the Internal Revenue Code. Such designation, which shall be in writing, shall take effect on the date signed by the Plan Sponsor or on a later date specified therein, and shall continue in effect until modified or revoked.

## SECTION 6.0   SURVIVOR BENEFITS:  THERE ARE NO SURVIVOR BENEFITS

6.1   ***Pre-Retirement Survivor Benefits.***  If a Priest dies *prior* to the date payment of his retirement benefits under this Plan begins, no survivor benefits will be payable.

6.2   ***Post-Retirement Survivor Benefits.***   If a Priest dies *on or after* the date payment of his retirement benefits under this Plan has commenced, no survivor benefits will be payable.

| SECTION 7.0   FUNDING |
| --- |

7.1 **_Funding Policy and Procedure._** The Plan Sponsor shall make or cause to be made an annual actuarial valuation of the liabilities of the Plan, future cash flow, and an actuarial determination of total contributions required to fund current costs as accrued and amortize any unfunded liability over not more than thirty years from the date such liability was initially determined, or redetermined thereafter.

The actuarial assumptions and method used in such actuarial valuation shall be determined and approved by the Plan Sponsor in consultation with the Plan's actuary.

7.2 **_Amount of Contributions._** The Plan Sponsor intends to contribute to the Trust Fund at least the minimum specified in the actuarial valuation conducted in accordance with Section 7.1 above, but he is not obliged to do so.

7.3 **_Paid to Trustee._** Contributions will be paid by the Plan Sponsor to the Trustee under the Trust Agreement to provide benefits in accordance with the terms and conditions of this Plan and the Trust Agreement.

7.4 **_Application of Trust Fund._** Plan Sponsor contributions under the Plan shall be held by the Trustee under the Trust Agreement for the exclusive benefit of Priests covered under the Plan, subject only to the claims of creditors of the Bishop as set forth in the Trust Agreement.

7.5 **_Forfeitures._** Any forfeitures arising under this Plan will not be applied to increase the benefits any Priest would otherwise receive under this Plan but will be applied to reduce the Plan Sponsor's liabilities under this Plan.

Case: 23-10113    Doc# 195-2    Filed: 05/10/23    Entered: 05/10/23 14:54:48    Page 27

## SECTION 8.0    PRIEST CONTRIBUTIONS

8.1    **Mandatory.**  None required at any time.

8.2    **Voluntary.**  None permitted at any time.

## SECTION 9.0    AMENDMENT OR TERMINATION OF PLAN

9.1    ***Amendment or Termination.***  Although the Plan Sponsor expects this Plan to remain in effect indefinitely, the Plan Sponsor reserves the right to amend or terminate this Plan and to discontinue contributions hereunder at any time, or suspend contributions from time to time without the consent of any Priest, provided, that the Plan Sponsor will notify the College of Consultors, in advance, and provided further that the Plan Sponsor will not have the right to amend this Plan in any way that will deprive any Priest of his right to any benefits then vested.

9.2    ***Plan Termination Date.***  The date of termination of this Plan will be the date established by the Plan Sponsor.

9.3    ***Procedure Upon Plan Termination.***  Upon termination of the Plan prior to payment of all vested accrued benefits hereunder, the Plan Sponsor shall proceed to allocate the assets of the Trust Fund, if any, to provide benefits under the Plan in an equitable manner.  The Plan Sponsor may, but shall not be required to, utilize the procedures in  Section 12.4 of the Basic Plan in allocating assets of the Trust Fund.

9.4    ***Merger of Plans.***  This Plan shall not be merged or consolidated with, nor any assets transferred to, any other plan or arch/diocese, unless the benefit after such merger or consolidation is equal to or greater than the benefit the Priest would have received had this Plan terminated on the day before such merger or consolidation.

Case: 23-10113    Doc# 195-2    Filed: 05/10/23    Entered: 05/10/23 14:54:48    Page 29

## SECTION 10.0  ADMINISTRATIVE PROVISIONS

10.1    ***Plan Administrator.***  As Plan Administrator, the Plan Sponsor is responsible for the general administration of the Plan.  The Plan Sponsor is entitled to rely on all valuations, tables and reports furnished by a consultant or actuary retained by the Plan Sponsor.

10.2    ***Plan Administrator's Powers and Duties.***  The Plan Sponsor has the power and duty to interpret and construe the Plan and to determine all questions of eligibility and of the status, rights and benefits of Priests under the Plan.  In all such cases, the Plan Sponsor's determination will be based on uniform rules and practices and will be binding on all Priests, subject to Section 10.8.

10.3    ***Delegation of Plan Administrator Responsibilities.***  The Plan Sponsor may appoint a delegate, or delegates and/or a committee or committees to assist him in administration, and to delegate such responsibilities and duties as he determines advisable for the efficient operation of the plan.  All such delegations will be made in writing.

10.4    ***Records and Reports.***  The Plan Sponsor will keep a record of all his proceedings and acts and will keep all books of account, records and other data as may be necessary for proper administration of this Plan.

10.5    ***Information to Be Furnished to Plan Sponsor.***  A Priest must furnish all information which the Plan Sponsor may reasonably require in the administration of the Plan.

10.6    ***Application (Claim) For Benefits.***
        (a)    ***Part A Benefit.***  An application for a Part A Benefit under this Plan shall be made under rules and procedures prescribed by the Plan Sponsor on a case-by-case basis.
        (b)    ***Part B Benefit.***  An application for a Part B Benefit under this Plan shall be made on such forms, and in accordance with such procedures, as the Plan Sponsor shall determine.

10.7    ***Notice of Decision.***  A decision as to the disposition of an application for benefits will be made as soon as practical after submission and the decision will be communicated in writing to the applicant by the Plan Sponsor.

Case: 23-10113    Doc# 195-2    Filed: 05/10/23    Entered: 05/10/23 14:54:48    Page 30

10.8    **_Priest's Right of Appeal._**  Any Priest who has had a claim for a benefit under this Plan denied shall be entitled to receive notice, in writing, of such denial setting forth the specific reasons for such denial, and such Priest shall be given a period of not less than sixty (60) days in which he may request and receive a full and fair review. Any request for review must be made in writing to the Plan Sponsor.

10.9    **_Copies of Documents, Etc._**  Copies of all plan documents, annual financial reports, plan summaries and other relevant data will be available for inspection by appointment with the Plan Sponsor.

10.10    **_Allocation of Functions._**  Any person, or group of persons, may serve in more than one fiduciary or administrative capacity with respect to the Plan. Such persons may agree in writing to allocate among themselves the various powers and duties delegated to them, provided all such persons sign such agreement. A copy of any such agreement shall be promptly filed with the Plan Sponsor.

10.11    **_Factors._**  Factors, mortality tables, and interest rates for determining commuted values and actuarial equivalent benefits, if any, will be on a basis which will be established by the Plan Sponsor in accordance with generally accepted actuarial methods which are reasonable and appropriate to the provisions of this Plan. Notwithstanding the preceding sentence, where specifically required by the terms of this Plan, actuarial determinations shall be made by using the factors set forth in Section 14.15 of the Basic Plan.

10.12    **_Payment of Plan Expenses._**  The Plan Sponsor may pay all expenses in administration of this Plan, including but not limited to expenses and fees of the Trustee, Investment Manager, consultants, advisors, actuaries, and attorneys engaged by the Plan Sponsor, but, to the extent that sufficient assets are available in the Trust Fund, he shall not be obligated to do so, and any such expenses and fees not paid by the Plan Sponsor will be paid from the Trust Fund.

10.13    **_Benefits Payable Hereunder._**  The Plan Sponsor shall be responsible to see that no benefits are paid hereunder except as provided as a Part A Benefit, or Part B Benefit.

Case: 23-10113    Doc# 195-2    Filed: 05/10/23    Entered: 05/10/23 14:54:48    Page 31

## SECTION 11.0  MISCELLANEOUS

11.1  ***Entire Agreement.***  Neither this Plan nor any action taken by the Plan Sponsor hereunder will be construed as giving any Priest any right, legal or equitable, under this Plan against the Plan Sponsor, or any officer thereof, or any right to benefits under this Plan, except as specifically provided for in this Plan.  Nothing herein will be construed to give any Priest any right to any benefit under the Basic Plan.  Nothing herein will be construed to give any Priest the right to remain ordained, incardinated, or appointed by the Plan Sponsor or to challenge or change the duration or terms of his appointment or assignments by the Plan Sponsor.

11.2  ***Nature of Rights.***  To the extent that any Priest acquires a right to receive benefits from the Plan Sponsor under this Plan, at all times prior to actual payment of such benefits such right shall be no greater than the right of an unsecured general creditor of the Plan Sponsor.  A Priest shall have the rights of a general creditor of the Diocese with respect to the full amount of his vested accrued benefit hereunder.  A Priest shall have the rights of a general creditor of the Plan Sponsor with respect to the full amount of his Vested Accrued Benefit hereunder, notwithstanding any insufficiency of the assets of the Trust Fund for full payment of such benefit.

11.3  ***Nonassignability/Nonalienation.***  To the extent permitted by law, benefits of any Priest under the Plan may not be anticipated, assigned (either at law or in equity), alienated, pledged, encumbered, or subject to attachment, garnishment, levy, execution or other legal or equitable process.  Any attempt to anticipate, assign, alienate, pledge, encumber, or subject to attachment, garnishment, levy, execution or other legal or equitable process any benefit under the Plan shall be void.

11.4  ***Jurisdiction.***  This Plan will be construed and enforced in accordance with the laws of the State of California.

11.5  ***Construction.***  The singular may include the plural; and vice versa unless the context clearly indicates to the contrary.

◆ ◆ ◆ ◆ ◆ ◆ ◆ ◆

Case: 23-10113    Doc# 195-2    Filed: 05/10/23    Entered: 05/10/23 14:54:48    Page 32 of 50

## APPENDIX A – PART A BENEFITS

### PRIESTS RECEIVING BENEFITS UNDER APPENDIX A MEMORANDA

A Priest will be listed herein if and only if his Appendix A Memorandum is in the form set forth in Appendix A(1) and is completely filled out and signed by the Priest and by the Bishop.

| NAME OF PRIEST | DATE OF SIGNED APPENDIX A MEMORANDUM |
|---|---|

Case: 23-10113    Doc# 195-2    Filed: 05/10/23    Entered: 05/10/23 14:54:48    Page 33 of 50

## APPENDIX A(1) – PART A BENEFITS

### FORMAT OF PART A MEMORANDUM

| PART 1 – BASIC DATA | |
|---|---|
| 1.1 | Name of Priest |
| 1.2 | Social Security No. |

| PART 2 – COMMENCEMENT OF BENEFIT |
|---|
| 2.1    Specify date benefit will commence or event triggering commencement of benefit. (Benefits cannot commence before the Priest ceases to perform services in a full-time ministry assignment.) |

| PART 3 – TERMINATION OF BENEFIT |
|---|
| 3.1    If benefit will terminate on a date certain or the occurrence of a particular event (other than the death of the Priest), specify the date or event. (Benefits must cease not later than the first day of the month in which the Priest's death occurs.) |

| PART 4 – DOLLAR AMOUNT OF INITIAL MONTHLY BENEFIT |
|---|
| 4.1    Dollar amount of initial monthly benefit or method for determining amount of initial monthly benefit. |

| PART 5 – FUTURE ADJUSTMENTS TO INITIAL MONTHLY BENEFIT |
|---|
| 5.1    Explain how adjustments are to be calculated. |

| PART 6 – COORDINATION WITH BASIC PLAN OR PART B |
|---|
| 6.1    Explain and/or attach calculation worksheet. |

| PART 7 – SIGNATURE | |
|---|---|
| **Date** _____ | **Date** _____ |
| **Priest Signature** _____ | **Bishop Signature** _____ |

Case: 23-10113   Doc# 195-2   Filed: 05/10/23   Entered: 05/10/23 14:54:48   Page 34
Page 34 of 50

AMENDMENT NO. 1 TO THE

DIOCESE OF SANTA ROSA PRIESTS

SUPPLEMENTAL RETIREMENT PLAN (SERP)


The Diocese of Santa Rosa Priests Supplemental Retirement Plan (SERP), as adopted effective January 1, 2007, is hereby amended as set forth herein.


FIRST: Item (iii) of subsection (b) of Section 4.2 ("Part B Benefit") is amended to read as follows:


    (iii)  reducing the resulting benefit by the dollar amount
           of his Other Benefits.

SECOND: This Amendment is effective as of January 1, 2007. Except as otherwise set forth herein, The Diocese of Santa Rosa Priests Supplemental Retirement Plan (SERP) shall continue in full force and effect.


IN WITNESS WHEREOF, the Bishop has executed this Amendment No. 1 to The Diocese of Santa Rosa Priests Supplemental Retirement Plan (SERP) this *1ST* day of *FEBRUARY* , ~~2009~~ *2010*.


By:_____ DANIEL F. WALSH _____

Title:_____ Bishop of Santa Rosa _____

Signature: *† Daniel F Walsh*

sep092a


**Plan Sponsor Copy**

 M E M O R A N D U M

Date: January 27, 2010

To: Mike Urick, CFO, Diocese of Santa Rosa

From: Nic Nicolay

RE: **PRIESTS SUPPLEMENTAL PENSION PLAN**

Enclosed are two copies of Amendment No. 1 to the Priests Supplemental Pension Plan for Bishop Walsh's signature.

Bishop Walsh is collecting a pension from his service at the Diocese of Las Vegas. The supplemental plan provides that his future Santa Rosa pension benefit will be offset by the *actuarial equivalent* of his benefit from other arch/diocesan priest plans, like Las Vegas.

In practice we do not use the *actuarial equivalent;* we use the actual dollar amount of his benefit from other priest plans. It's much smaller than the *actuarial equivalent* and less of a reduction in benefit for the bishop.

Therefore, please ask Bishop Walsh to sign both copies of the amendment; keep the plan sponsor copy and return the Trustee Copy to us for distribution.

If you have any questions, please call us.

\*\*\*\*\*\*\*\*\*\*

NICOLAY CONSULTING GROUP

PENSION CONSULTANTS AND ACTUARIES

575 MARKET STREET, SUITE 2450, SAN FRANCISCO, CALIFORNIA 94105-2854

TEL: 415 512-5300    FAX: 415 512-5314

# EXHIBIT 2

TRUST AGREEMENT FOR

THE DIOCESE OF SANTA ROSA PRIESTS SUPPLEMENTAL RETIREMENT  PLAN


THIS AGREEMENT, made effective January 1, 2007 by and between The Roman Catholic Bishop of Santa Rosa (hereinafter called the "Bishop"), a Corporation Sole organized under the laws of the State of California, and Union Bank of California, N.A., a national banking association (hereinafter called the "Trustee"),

WITNESSETH:

WHEREAS, the Bishop and Union Bank of California, N. A. entered into that certain trust agreement made effective as of October 1, 2000, to provide for assets to be held thereunder, subject as specified therein to the claims of the Bishop's creditors in the event of the Bishop's insolvency, until paid to certain priests incardinated in the Diocese of Santa Rosa (the "Priests") in the form of retirement benefits under the  Diocese of Santa Rosa Priests Pension Plan (the "Prior Plan"); and

WHEREAS, effective January 1, 2007, the Prior Plan is replaced by two plans, The Diocese of Santa Rosa Priests Pension Plan ("Basic Plan"), a qualified pension plan under Section 401(a) of the Internal Revenue Code ("Code") which is a "church plan" in Section 414(e) of the Code, and The Diocese of Santa Rosa Priests Supplemental Retirement Plan (the "Plan," also called the "SERP"), a nonqualified church pension plan; and

WHEREAS, assets subject to the October 1, 2000  trust agreement have been allocated between the Basic Plan and the SERP, and assets allocated to the Basic Plan have been made subject to a separate trust agreement; and

WHEREAS, the Bishop intends that assets allocated to the SERP continue to be held in trust for the exclusive benefit of participating priests, subject to the claims of the Bishop's creditors in the event of the Bishop's insolvency, under a trust agreement substantially identical to that dated October 1, 2000;

NOW, THEREFORE, the Bishop and Union Bank of California, N. A. hereby amend and restate the October 1, 2000 trust agreement as set forth herein, to provide that the Trust shall be comprised, held and disposed of as follows:


ARTICLE I. ESTABLISHMENT OF TRUST

1.1.  The Bishop hereby deposits with the Trustee in trust the sum of ONE HUNDRED DOLLARS, which shall become the principal of the

Case: 23-10113    Doc# 195-2    TRUSTEE   COPY   Entered: 05/10/23 14:54:48    Page 38 of 50

Trust to be held, administered and disposed of by the Trustee as provided in this Trust Agreement.

1.2. Assets subject to the October 1, 2000 trust agreement which are not transferred to the Basic Plan trust on or before the effective date specified on page 1 hereof shall, subject to the claims of creditors as set forth in Article III, be held, administered and disposed of by the Trustee as provided in this Trust Agreement.

1.3. The Trust is intended to be a grantor trust, of which Bishop is the grantor, within the meaning of subpart E, part I, subchapter J, chapter 1, subtitle A of the Internal Revenue Code of 1986, as amended, and shall be construed accordingly.

1.4. The principal of the Trust and any earnings thereon shall be held separate and apart from other funds of the Bishop and shall be used exclusively for the uses and purposes of Priests and general creditors as herein set forth. Priests shall have no preferred claim on, or any beneficial ownership interest in, any assets of the Trust. Any rights created under the Plan and this Trust Agreement shall be mere unsecured contractual rights of Priests against the Bishop. Any assets held by the Trust will be subject to the claims of the Bishop's general creditors under federal and state law in the event of Insolvency, as defined in Section 3.1 herein.

1.5. The Bishop, in his sole discretion, may at any time, or from time to time, make additional deposits of cash or other property in trust with the Trustee to augment the principal to be held, administered and disposed of by the Trustee as provided in this Trust Agreement. Neither the Trustee nor any Priest shall have any right to compel such additional deposits.

1.6. The Trust hereby established shall be irrevocable.


ARTICLE II. PAYMENTS TO PRIESTS

2.1. The Bishop shall deliver to the Trustee a schedule (the "Payment Schedule") that indicates the amounts payable in respect of each Priest, that provides a formula or other instructions acceptable to the Trustee for determining the amounts so payable, the form in which such amount is to be paid (as provided for or available under the Plan), and the time of commencement for payment of such amounts. Except as otherwise provided herein, the Trustee shall make payments to the Priests in accordance with such Payment Schedule. The Trustee shall make provision for the reporting and withholding of any federal, state or local taxes that may be required to be withheld with respect to the payment of benefits pursuant to the terms of the Plan and shall pay amounts withheld to the appropriate taxing authorities.

2.2. The entitlement of a Priest to benefits under the Plan

shall be determined by the Bishop or such party as he shall designate under the Plan, and any claim for such benefits shall be considered and reviewed under the procedures set out in the Plan.


## ARTICLE III. TRUSTEE RESPONSIBILITY REGARDING PAYMENTS TO PRIESTS WHEN THE BISHOP IS INSOLVENT

3.1. The Trustee shall cease payment of benefits to Priests if the Bishop is Insolvent. The Bishop shall be considered "Insolvent" for purposes of this Trust Agreement if (i) the Bishop is unable to pay his debts as they become due, or (ii) the Bishop is subject to a pending proceeding as a debtor under the United States Bankruptcy Code.

3.2. At all times during the continuance of this Trust, as provided in Section 1.4 hereof, the principal and income of the Trust shall be subject to claims of general creditors of the Bishop under federal and state law as set forth below.

a. The Bishop shall have the duty to inform the Trustee in writing of the Bishop's Insolvency. If a person claiming to be a creditor of the Bishop alleges in writing to the Trustee that the Bishop has become Insolvent, the Trustee shall determine whether the Bishop is Insolvent and, pending such determination, the Trustee shall discontinue payment of benefits to Priests.

b. Unless the Trustee has actual knowledge of the Bishop's Insolvency, or has received notice from the Bishop or a person claiming to be a creditor alleging that the Bishop is Insolvent, the Trustee shall have no duty to inquire whether the Bishop is Insolvent. The Trustee may in all events rely on such evidence concerning the Bishop's solvency as may be furnished to the Trustee and that provides the Trustee with a reasonable basis for making a determination concerning the Bishop's solvency.

c. If at any time the Trustee has determined that the Bishop is Insolvent, the Trustee shall discontinue payments to Priests and shall hold the assets of the Trust for the benefit of the Bishop's general creditors. Nothing in this Trust Agreement shall in any way diminish any rights of Priests to pursue their rights as general creditors of the Bishop with respect to benefits due under the Plan or otherwise.

d. The Trustee shall resume the payment of benefits to Priests in accordance with Article II of this Trust Agreement only after the Trustee has determined that the Bishop is not Insolvent (or is no longer Insolvent).

3.3. Provided that there are sufficient assets, if the Trustee

discontinues the payment of benefits from the Trust pursuant to
Section 3.2 hereof and subsequently resumes such payments, the first
payment following such discontinuance shall include the aggregate
amount of all payments due to Priests under the terms of the Plan for
the period of such discontinuance, less the aggregate amount of any
payments made to Priests by the Bishop in lieu of the payments
provided for hereunder during any such period of discontinuance.


ARTICLE IV. PAYMENTS TO THE BISHOP

4.1.  Except as provided in Article III hereof, the Bishop shall
have no right or power to direct the Trustee to return to the Bishop
or to divert to others any of the Trust assets before all payment of
benefits have been made to Priests pursuant to the terms of the Plan.


ARTICLE V. INVESTMENT AUTHORITY

5.1.  Unless authority for direction of investments shall have
been allocated to the Trustee pursuant to Section 5.2 or to an
Investment Manager pursuant to Section 5.3, the assets of the Trust
shall be invested by the Trustee as directed by the Bishop. The assets
of the Trust shall be held and invested without distinction between
principal and income.  The Trustee shall have legal title to all of
the assets of the Trust and shall retain, administer, hold, and
control the Trust in accordance with the terms and conditions of this
Agreement.  All income, profits, recoveries, contributions,
forfeitures, and any and all moneys, securities and properties of any
kind at any time received or held by the Trustee hereunder shall be
held for investment purposes as a commingled trust fund.

5.2.  The Bishop may allocate all or any part of his authority and
responsibility to direct the Trust Fund investments conferred on him
by Section 5.1 to the Trustee. Any such allocation of investment
authority to the Trustee under this section shall be made in writing
and shall be accepted in writing; shall take effect upon such
acceptance; and shall terminate upon receipt by the Trustee of written
notice of termination executed by the Bishop, or receipt by the Bishop
of written notice of termination executed by the Trustee.

5.3.  (a) Except to the extent that authority for directing Trust
Fund investments has been allocated to the Trustee under Section 5.2,
the Bishop may appoint, and allocate all or any part of his authority
and responsibility to direct the Trust Fund investments conferred on
him by Section 5.1 to, an Investment Manager or Managers to manage any
assets of the Trust.

(b) For purposes of this Agreement, an Investment Manager
shall be a person or entity which is (i) registered as an investment

advisor under the Investment Advisers Act of 1940, (ii) a bank as
defined in that Act, or (iii) an insurance company qualified to
manage, acquire or dispose of any assets of the Trust Fund under the
laws of more than one State including the State of California, and who
is duly appointed under subsection (a).

(c) No appointment as an Investment Manager under this
section shall become effective until the Bishop enters into a written
agreement with the person or entity appointed which specifies its
duties and acknowledges its status as a fiduciary under this Trust
Agreement, and until the Bishop notifies the Trustee in writing of
such appointment. The delegation of the Bishop's authority and
responsibility shall take effect upon such notice to the Trustee (or
at such later date as may be specified therein) and shall terminate
upon receipt by the Trustee of written notice of termination executed
by the Bishop or the Investment Manager.

(d) To the extent that the assets of the Trust are subject
to the management and control of an Investment Manager, neither the
Bishop nor the Trustee shall have any duty to question any act or
direction or any failure to give directions of the Investment Manager.

5.4  The Bishop shall establish, and review from time to time, an
investment policy to carry out the objectives of the Trust in
providing benefits under the Plan. The investment policy, together
with any revisions from time to time, shall be communicated in writing
to the Trustee if the Trustee has been allocated investment authority
under Section 5.2 and any Investment Manager to which authority has
been allocated under Section 5.3.

5.5  The Trustee may (in accordance with proper investment
directions if authority and responsibility for investments has been
retained by the Bishop under Section 5.1 or allocated to an Investment
Manager under Section 5.3) invest uninvested cash in any common or
collective investment fund maintained by the Trustee or an affiliate
of the Trustee for which the Trust is an eligible participant.
Nothing in this section shall be construed to prohibit the Trustee
from maintaining balances of uninvested cash for a commercially
reasonable time.

5.6  The assets of the Trust may be invested and reinvested, in
whole or in part, in any common or collective investment fund
(referred to as "Fund") maintained by the Trustee or an affiliate of
the Trustee or, in the case of assets of the Trust with respect to
which an Investment Manager has been allocated investment
responsibilities, by such Investment Manager, for which the Trust is
an eligible participant; provided, however, that notwithstanding any
other provisions of this Agreement, to the extent that Trust assets
are invested in any such Fund, the terms of the Fund's governing
instrument solely shall govern the investment responsibilities and
powers of the entity responsible for management of the Fund (referred

to as "Fund Manager"), and the terms of such governing instrument shall be incorporated into this Agreement. With respect to any Fund maintained by an Investment Manager which is not selected by the Trustee, the Trustee shall be responsible solely for the safekeeping of the physical evidence, if any, of the Trust's ownership of or participation in such common or collective investment fund. The value of any interest in a Fund held by the Trust shall be the fair market value of the interest as determined by the Fund Manager in accordance with the Fund's governing instrument. For purposes of valuation of the Trust assets, the Trustee shall be entitled to rely conclusively on the value reported by the Fund Manager.

5.7. The Trustee is authorized and empowered to invest in any mutual fund, whether sponsored or advised by the Trustee or any of its affiliates, and the Trustee and its affiliates may be compensated for providing investment advice and other services to such fund, in addition to any Trustee fees received under this Trust Agreement.

ARTICLE VI. DISPOSITION OF INCOME

6.1. During the term of this Trust, all income received by the Trust, net of expenses and taxes, shall be accumulated and reinvested.

ARTICLE VII. ACCOUNTING BY TRUSTEE

7.1. The Trustee shall keep accurate and detailed records of all investments, receipts, disbursements, and all other transactions of the Trust, including such specific records as shall be agreed upon in writing between the Bishop and the Trustee. All such accounts, books and records shall be open to inspection and audit at all reasonable times by the Bishop. Within sixty (60) days following the close of each fiscal year of the Plan and within sixty (60) days after the removal or resignation of the Trustee, the Trustee shall deliver to the Bishop a written account of its administration of the Trust during such fiscal year or during such period from the close of the last preceding fiscal year to the date of such removal or resignation, setting forth all investments, receipts, disbursements and other transactions effected by it, including a description of all securities and investments purchased and sold with the cost or net proceeds of such purchases or sales (accrued interest paid or receivable being shown separately), and showing all cash, securities and other property held in the Trust at the end of such fiscal year or as of the date of such removal or resignation, as the case may be.

7.2 Except as specifically set forth in this Agreement or in the Plan, or as reasonably necessary for the enforcement of rights of creditors as set forth in Article III hereof, no person other than the Bishop shall have any right to receive information, from the Trustee

or any other person, as to the assets, liabilities, income, or expenses of the Trust Fund. If Section 16062 of the California Probate Code is held to apply to the Trust Fund, its provisions are waived to the fullest extent permitted under Section 16064 of such Code.

7.3.   The assets of the Trust shall be valued at their fair market value on the date of valuation, as determined by the Trustee based upon such sources of information as it may deem reliable; provided, however, that the Bishop shall instruct the Trustee as to asset valuations which are not readily determinable on an established market. The Trustee may rely conclusively on such valuations provided by the Bishop and shall be indemnified and held harmless by the Bishop with respect to such reliance.   If the Bishop fails to provide such values, the Trustee may take whatever action it deems reasonable, including employment of attorneys, appraisers or other professionals, the expense of which will be an expense of administration of the Trust.

ARTICLE VIII.  RESPONSIBILITY OF TRUSTEE AND INVESTMENT MANAGER

8.1.   The Trustee and any person having responsibility for investment management under Article V shall act with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims, provided, however, that the Trustee shall incur no liability to any person for any action taken pursuant to a written direction, request or approval given by the Bishop or an Investment Manager which is contemplated by, and in conformity with, the terms of the Plan or this Trust.

8.2. If the Trustee has knowledge that any directive of the Bishop or any Investment Manager constitutes a breach of such party's fiduciary duties under the Plan or the Trust, or if any directive of the Bishop or any Investment Manager is contrary to the terms of the Plan or this Trust Agreement, then the Trustee shall not be obligated to follow such directive and shall have the full power and authority to take such action as the Trustee deems necessary to remedy the breach.

8.3.   The Trustee shall be responsible solely for its own acts or omissions and shall not incur any liability for a breach of fiduciary responsibility by the Bishop, any Investment Manager, or any other fiduciary of the Plan unless the Trustee participates knowingly in such breach, knowingly undertakes to conceal such breach, has actual knowledge of such breach and fails to take reasonable action to remedy such breach or, through its own negligence in performing its fiduciary responsibilities with respect to the Plan, has enabled the Bishop, an Investment Manager, or such other fiduciary to commit a breach of the latter's fiduciary responsibilities.

8.4.   The Trustee may consult with legal counsel (who may also be counsel for the Trustee or the Bishop generally) with respect to any of its duties or obligations hereunder.

8.5. The Trustee has no obligation to determine the existence of any conversion, redemption, exchange, subscription, or other rights relating to any securities the Trustee is directed to purchase for the Trust Fund of which notice was given prior to the purchase of such securities. Nor does the Trustee have any obligation to exercise any such right unless it is informed of the existence of the right and is instructed to exercise such right, in writing, by the Investment Manager, if applicable, within a reasonable time prior to the expiration of such right.

8.6. Securities trades the Trustee is directed to make shall be effected through such broker(s) as the Bishop (or the Investment Manager, if one shall have been appointed) shall specify. If the Bishop or Investment Manager does not specify the broker(s) to effect directed securities trades, the Trustee shall select the broker(s), subject to any instructions from the Bishop.

8.7.   The Trustee may hire agents, accountants, actuaries, investment advisors, financial consultants or other professionals to assist it in performing any of its duties or obligations hereunder.

8.8.   The Trustee shall have, without exclusion, all powers conferred on Trustees by applicable law, unless expressly provided otherwise herein, provided, however, that if an insurance policy is held as an asset of the Trust, the Trustee shall have no power to name a beneficiary of the policy other than the Trust, to assign the policy (as distinct from conversion of the policy to a different form) other than to a successor Trustee, or to loan to any person the proceeds of any borrowing against such policy. Without limiting the generality of the foregoing, the Trustee shall have the following powers:

a.     To hold, manage, improve, repair and control all trust property, real or personal; and to sell, convey, transfer, exchange, partition, lease, and otherwise dispose of the same from time to time in such manner, for such consideration and upon such terms and conditions, including credit, as the Trustee shall determine in its discretion;

b.     To exercise any option, conversion privilege or subscription right given the Trustee as the owner of any security held in the Trust; to vote any corporate stock either in person or by proxy, with or without power of substitution; and to consent to or oppose any reorganization, consolidation, merger, readjustment of financial structure, sale, lease or other disposition of the assets of any corporation or other organization, the securities of which may be an asset of the Trust and to take any action in connection therewith and

receive and retain any securities resulting therefrom;

c. To deposit any security with any protective or reorganization committee, to delegate to such committee such power and authority with respect thereto as the Trustee may deem proper, and to agree to pay out of the Trust such portion of the expenses and compensation of such committee as the Trustee, in its discretion, shall deem appropriate;

d. To renew or extend the time of payment of any obligation due or to become due;

e. To commence or defend suits or legal or administrative proceedings, and to compromise, arbitrate, or settle claims, debts or damages in favor of or against the Trust and to deliver or accept, in either total or partial satisfaction of any indebtedness or other obligation, any property, and to continue to hold for such period of time as the Trustee may deem appropriate any property so received, and to pay all costs and reasonable attorneys' fees in connection therewith out of the assets of the Trust;

f. To foreclose any obligation by judicial proceeding or otherwise; and

g. To deposit any securities held in the Trust with a securities depository.

8.9. Notwithstanding any powers granted to Trustee pursuant to this Trust Agreement or to applicable law, Trustee shall not have any power that could give this Trust the objective of carrying on a business and dividing the gains therefrom, within the meaning of section 301.7701-2 of the Procedure and Administrative Regulations promulgated pursuant to the Internal Revenue Code.


ARTICLE IX.  COMPENSATION AND EXPENSES OF TRUSTEE

9.1. The Trustee shall deduct from and charge against the Trust Fund any taxes paid by the Trustee which may be imposed upon the Trust Fund or the income thereof or which the Trustee is required to pay with respect to the interest of any person therein.

9.2. The Trustee shall be entitled to reasonable fees for services rendered in the amounts agreed upon from time to time by the Bishop and the Trustee. Such fees may be paid out of the Trust Fund unless paid by the Bishop within sixty (60) days after receipt of the written billing.

9.3. Reasonable expenses incurred in the administration of the Trust, including counsel, appraisal or accounting fees and the

brokerage costs and transfer taxes incurred in the investment and reinvestment of the Trust Fund, may be paid out of the Trust Fund unless paid by the Bishop within thirty (30) days after receipt of the written billing.

9.4    Reasonable expenses incurred in the proper administration of the Plan which are approved and submitted to the Trustee for payment by the Bishop shall be paid when due from the assets of the Trust; provided, however, that the Bishop may pay such expenses directly.

ARTICLE X. RESIGNATION AND REMOVAL OF TRUSTEE; SUCCESSOR TRUSTEE

10.1.    The Trustee may resign at any time by written notice to the Bishop, which shall be effective 30 days after receipt of such notice unless the Bishop and the Trustee agree otherwise.

10.2.    The Trustee may be removed by the Bishop on 30 days notice or upon shorter notice accepted by the Trustee.

10.3.    Upon resignation or removal of the Trustee and appointment of a successor Trustee, all assets shall subsequently be transferred to the successor Trustee. The transfer shall be completed within 45 days after receipt of notice of resignation, removal or transfer, unless the Bishop extends the time limit.

10.4.    If the Trustee resigns or is removed, a successor shall be appointed, in accordance with Section 10.5 hereof, by the effective date of resignation or removal under paragraphs (a) or (b) of this section. If no such appointment has been made, the Trustee may apply to a court of competent jurisdiction for appointment of a successor or for instructions. All expenses of the Trustee in connection with the proceeding shall be allowed as administrative expenses of the Trust.

10.5. Upon resignation or removal of a Trustee under Section 10.1, the Bishop shall appoint a successor Trustee. Notwithstanding any other provision of this Trust Agreement, no person shall serve as Trustee hereunder who is not a corporation which has been granted corporate trustee powers under the laws of the state of California. The appointment of a successor Trustee shall be effective when accepted in writing by the new Trustee. The new Trustee shall thereupon succeed to all the powers and duties given to the resigning or removed Trustee by this Trust Agreement, and there shall be transferred to such Trustee all right, title and interest to the property then held in the Trust Fund. The former Trustee shall execute any instrument necessary or reasonably requested by the Bishop or the successor Trustee to evidence the transfer. However, a reasonable sum may in its discretion be reserved by the resigning or removed Trustee

for payment of the expenses incurred in connection with the settlement of accounts upon the resignation or removal of such Trustee, and any balance of such reserve remaining after the payment of such expenses shall be paid to the successor Trustee.

10.6. Within sixty (60) days after the resignation or removal of the Trustee, the resigning or removed Trustee shall render to the Bishop an account in the form and manner prescribed by Article 7 hereof.

10.7. Any successor Trustee appointed under this Trust shall not incur any liability by reason of, or have any duty or responsibility to inquire into or undertake any action with respect to, any acts performed or omitted to be performed under this Trust by any predecessor Trustee prior to the date of appointment hereunder of such successor Trustee.


ARTICLE XI.  AMENDMENT OR TERMINATION

11.1.  This Trust Agreement may be amended by a written instrument executed by the Trustee and the Bishop. Notwithstanding the foregoing, no such amendment shall conflict with the terms of the Plan or shall make the Trust revocable.

11.2.  The Trust shall not terminate until the date on which Priests are no longer entitled to benefits pursuant to the terms of the Plan. Upon termination of the Trust any assets remaining in the Trust shall be returned to the Bishop.


ARTICLE XII. MISCELLANEOUS

12.1.  Any provision of this Trust Agreement prohibited by law shall be ineffective to the extent of any such prohibition, without invalidating the remaining provisions hereof.

12.2.  Benefits payable to Priests under this Trust Agreement may not be anticipated, assigned (either at law or in equity), alienated, pledged, encumbered or subjected to attachment, garnishment levy, execution or other legal or equitable process.

12.3.  Except as specified in Section 3.2(a) hereof, the duties hereunder of the Bishop may be exercised on his behalf by another party under a written delegation subject to revocation at any time by the Bishop. To the extent permitted under the preceding sentence, the term "Bishop", as used herein, shall refer to his duly appointed delegate.  The Bishop shall certify in writing to the Trustee the names and specimen signatures of all those who are authorized to act as or on behalf of the Bishop, and those names and specimen signatures

shall be updated as necessary by a duly authorized officer of the Bishop. The Bishop shall promptly notify the Trustee if any person so designated is no longer authorized to act on behalf of the Bishop. Until the Trustee receives written notice that a person is no longer authorized to act on behalf of the Bishop, the Trustee may continue to rely on the Bishop's designation of such person.

12.4.  a. Subject to subsection b, all words and phrases used herein shall have the same meaning as in the Plan, and this Trust Agreement and the Plan shall be read and construed together.  Whenever in the Plan it is provided that the Trustee shall act as therein prescribed, the Trustee shall be and is hereby authorized and empowered to do so for all purposes as fully as though specifically so provided herein or so directed by the Bishop.

b. Nothing in subsection a shall obligate the Bishop to fund the Trust or impair the rights of creditors of the Bishop as set forth in Article III of this Trust Agreement.

c. In the event of any conflict between the terms of the Plan and Trust Agreement with respect to the rights and duties of the Trustee, this Trust Agreement shall control.

12.5  This Trust Agreement shall be governed by and construed in accordance with the laws of the State of California.

******** Signature Page Follows ********

The Diocese of Santa Rosa Priests Supplemental Retirement Plan
Trust Agreement

IN WITNESS WHEREOF, the Bishop and the Trustee have executed this Agreement effective as of the day and year first above written.

THE ROMAN CATHOLIC BISHOP OF SANTA ROSA,
a Corporation Sole

By: _____ DANIEL F. WALSH _____

Title: _____ Bishop of Santa Rosa _____

Signature: + *Daniel F Walsh*
12·8·06

UNION BANK OF CALIFORNIA, N.A.
TRUSTEE

By: *Jane L. Erwin*

Title: _____ JANE L. ERWIN VP & TRUST OFFICER _____

Signature: *Jane L. Erwin* 12.1.06

By: *Katherine M. Olson* 12.1.06

Title: _____ Katherine M. Olson Vice President Trust Officer _____

Signature: _____

UNION BANK OF CALIFORNIA
BUSINESS TRUST
COMPLIANCE APPROVAL
BY *Brian Sorg*
DATE 12/1/06

Case: 23-10113    Doc# 195-2    Filed: 05/10/30    Entered: 05/10/23 14:54:48    Page 50 of 50