PAUL J. PASCUZZI, State Bar No. 148810
JASON E. RIOS, State Bar No. 190086
THOMAS R. PHINNEY, State Bar No. 159435
FELDERSTEIN FITZGERALD
WILLOUGHBY PASCUZZI & RIOS LLP
500 Capitol Mall, Suite 2250
Sacramento, CA 95814
Telephone: (916) 329-7400
Facsimile: (916) 329-7435
ppascuzzi@ffwplaw.com
jrios@ffwplaw.com
tphinney@ffwplaw.com

Attorneys for
The Roman Catholic Bishop of Santa Rosa

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SANTA ROSA DIVISION

| | |
|---|---|
| In re:<br><br>THE ROMAN CATHOLIC BISHOP OF SANTA ROSA,<br><br>           Debtor In Possession. | Case No. 23-10113<br><br>Chapter 11<br><br>Date:     June 30, 2023<br>Time:    11:00 a.m.<br>Location: 1300 Clay Street, Ctrm. 215<br>              Oakland, CA 94612<br>              [In person or via Zoom]<br>Judge:   Hon. Charles Novack |

**DEBTOR'S MOTION FOR ORDER EXTENDING
EXCLUSIVITY PERIODS [11 U.S.C § 1121(d)]**

The Roman Catholic Bishop of Santa Rosa, the debtor and debtor in possession (the "RCBSR" or the "Debtor") files this motion (the "Motion") for entry of an order extending for an additional six months the exclusive period of time during which only the Debtor may file a plan of reorganization and the exclusive period of time to solicit acceptances thereof, without prejudice to the Debtor's right to seek further extensions of these periods. In support of this Motion, the Debtor relies upon the Declaration of Deacon Joe Oberting in support of Chapter 11 Petition and First Day Motion filed on March 13, 2023, at Docket No. 13 ("Oberting Background Decl."), the Declaration of Adrienne Moran in Support of Chapter 11 Petition and

First Day Motions filed on March 13, 2023, at Docket No. 12 ("Moran Decl."), the court filings in this case and the following points and authorities:

## JURISDICTION

This Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). The statutory basis for relief is 11 U.S.C. § 1121(d).[1]

## RELIEF REQUESTED

By this Motion, the Debtor asks the Court for entry of an order extending the exclusivity periods within which Debtor has the exclusive right to propose a plan (which currently expires on July 11, 2023) and obtain acceptance of such a plan (which currently expires on September 9, 2023), until January 8, 2024 (181 days), and March 7, 2024 (180 days), respectively. Attached hereto as Exhibit A is a proposed form of order.

## PRELIMINARY STATEMENT

Since the Petition Date, the Debtor has been diligently working to establish itself as a debtor in possession and set the case up administratively, including: (i) completed schedules have been filed, (ii) the initial and an adjourned first meeting of creditors have been conducted, (iii) all first day motions have been granted on a final basis, with the exception of limited issues relating to the cash management motion, (iv) the Debtor's applications to retain bankruptcy counsel and a claims and noticing agent have been approved, (v) the Debtor has filed a motion to vacate initial claims bar date, and filed with this Motion is a motion to set a new claims bar date and approve specialized claim forms and procedures for filing claims, (vi) discussions with respective counsel for the Creditors' Committee have occurred to facilitate requests for documents and information and responses by the Debtor, (vii) counsel for the Debtor has begun discussions with counsel for insurance carriers (the "Insurers") providing coverage to the

---

[1] The Debtor does not, by filing its petition for relief and other documents in this bankruptcy case, waive any of its rights under any applicable law, including, without limitation, the Code of Canon law, the First Amendment of the United States Constitution, the Constitution for the State of California, California's law on corporations sole (California Corporations Code §§ 10000-10015), the Religious Freedom Restoration Act, the church autonomy doctrine, charitable trust law, California trust law, and the rights to object to disclosure of information and to contend that certain assets are not property of the estate.

Debtor.

To some extent, the Debtor benefits from the experience of other dioceses who preceded the Debtor into Chapter 11. Of the approximately 32 Chapter 11 diocesan or religious organization cases filed prior to the Debtor's filing, approximately 22 of those cases have resulted in consensually confirmed reorganization plans. In virtually all of those cases, terms for a consensual reorganization plan were reached following a mediation process in which the Debtor, Non-Debtor Entities, Insurers and the creditors' committee representing the interests of survivors of sexual abuse participated. The Debtor is working to promote this process to determine the parties' interests and contributions to fund a plan to obtain the greatest possible recovery for creditors. Until those issues are resolved, the Debtor will not be in a position to file a proposed reorganization plan.

The Debtor believes that the relief requested is necessary and appropriate given the early stage of the case, the complexity of the case, the steady progress in the postpetition management of the case, and the progress toward developing a process to facilitate a plan of reorganization. The requested relief is without prejudice to: (a) Debtor's right to seek further extensions and the rights of parties in interest with standing to oppose such requests, and (b) the rights of parties in interest with standing to seek to shorten or terminate Debtor's exclusivity periods and Debtor's right to oppose such requests.

**BACKGROUND OF THE DEBTOR AND THE BANKRUPTCY CASE**

On March 13, 2023 ("Petition Date"), the Debtor commenced its Chapter 11 reorganization case. Pursuant to sections 1107 and 1108 of Title 11 of the United States Code (the "Bankruptcy Code"), the Debtor continues to operate its business and manage its property as a debtor-in-possession. No trustee or examiner has been requested or appointed in this case.

On March 27, 2023, the Office of the United States Trustee for the Northern District of California appointed a statutory committee of unsecured creditors (the "Committee") in this case pursuant to section 1102 of the Bankruptcy Code.

///

///

The Diocese of Santa Rosa (the "Diocese")[2] was created from portions of the Sacramento Diocese and San Francisco Archdiocese in 1962, and now includes approximately 42 parishes some of which have missions associated with them ("Parishes"). The Diocese consists of approximately 178,443 Catholics in the counties of Sonoma, Napa, Mendocino, Lake, Humboldt, and Del Norte covering approximately 11,711 square miles. While the Diocese is geographically large and very diverse, demographically it remains the smallest of California's dioceses. Diocesan priests and permanent deacons, along with priests, brothers and nuns from multiple religious orders serve parishes, schools, Catholic hospitals and do other outreach within the Santa Rosa Diocese. Oberting Background Decl. ¶ 5.

The primary role of the RCBSR is to provide resources, spiritual leadership, direction, support, planning, programming, leadership development and other services to individuals of the Roman Catholic faith, the 42 Parishes, two Catholic high schools, numerous elementary schools, private schools, cemeteries and various other Catholic-based social and community service organizations that operate in the Diocese. *Id*. ¶ 6.

As a religious organization, the RCBSR has no significant ongoing for-profit business activities or business income. The RCBSR's receipts principally come from the annual ministry appeal (held in trust for named ministries only), fees for services provided to the Non-Debtor Catholic Entities (defined below), donations, grants, and RCBSR ministry revenue. The RCBSR's fiscal 2023 operating budget is approximately $12.5 million. *Id*. ¶ 7.

Until recently, the RCBSR has maintained financial viability while funding compensation for survivors and continued litigation regarding claims of abuse. However, there are currently approximately 207 lawsuits against the RCBSR. Based on these projected demands, RCBSR's total exposure is likely to exceed its assets, thus necessitating this bankruptcy. The RCBSR is a not-for-profit religious organization with limited resources, including very limited or no insurance coverage for many of the 207 lawsuits pending against it. Thus, the hundreds of lawsuits puts the RCBSR in immediate and dire financial distress and in

---

[2] The term "Diocese" is used herein exclusively to refer to geographic territory under the jurisdiction of the RCBSR, and the terms RCBSR, Debtor, or Debtor in Possession are used herein exclusively to refer to the secular legal embodiment of the Diocese.

need of a forum to resolve these claims while continuing to serve the faithful and those in need. *Id*. ¶ 29-31.

The RCBSR's goals in seeking chapter 11 relief are twofold: to protect and preserve the RCBSR's assets that are properly available for distribution to the RCBSR's creditors and ensure that assets are marshaled to be distributed equitably to all creditors; and to continue the work of the Church within the Diocese to the fullest extent possible using the resources dedicated to those purposes. *Id*. ¶ 37. The RCBSR seeks to negotiate a plan of reorganization as early as practicable which will: (a) allocate the RCBSR's remaining assets fairly among the legitimate competing interests for such property; (b) provide a process to fully, fairly and expeditiously liquidate claims of survivors; and (c) permit the RCBSR to carry on the RCBSR's essential ministries and services so the RCBSR can continue to meet the needs of the Non-Debtor Catholic Entities, parishioners, and others who rely on the RCBSR's ministry, education, and charitable outreach. *Id*. ¶ 38.

On June 2, 2023, the RCBSR filed a motion to, among other things, set a claims bar date for Survivor Claimants (and all claims) of October 20, 2023 ("Claims Bar Date Motion"). The hearing on the Claims Bar Date Motion is set for June 30, 2023, the same date and time as this Motion. Until the bar date has passed for the filing of survivor claims, the RCBSR cannot reasonably estimate the number and dollar amounts of claims to be addressed in its anticipated pot plan.

**LEGAL ARGUMENT**

**A.  Legal Standard**

Section 1121(b) of the Bankruptcy Code provides that a debtor has the exclusive right to file a plan of reorganization for an initial period of 120 days after commencement of its Chapter 11 case (the "Exclusivity Period"). Section 1121(c)(3) of the Bankruptcy Code provides that if a debtor files a plan of reorganization within the 120-day initial period under section 1121(b), the debtor has 180 days after commencement of the Chapter 11 case within which to solicit and obtain acceptances of its plan, during which time competing plans may not be filed by any party in interest (the "Exclusive Solicitation Period"). The Debtor's initial

Exclusivity Period and Exclusive Solicitation Period (collectively, the "Exclusive Periods") are currently set to expire on July 11, 2023, and September 9, 2023, respectively.

Section 1121(d)(1) of the Bankruptcy Code provides:

> Subject to paragraph (2), on request of a party in interest made within the respective periods specified in subsections (b) and (c) of this section and after notice and a hearing, the court may for cause reduce or increase the 120-day period or the 180-day period referred to in this section.

11 U.S.C. § 1121(d)(1). Bankruptcy Code section 1121(d)(2) provides that any such extension cannot extend beyond 18 months after the Petition Date for the 120-day period and 20 months after the Petition Date for the 180-day period. The relief requested by the Debtor in the Motion does not exceed these restrictions.

The Exclusive Periods under Bankruptcy Code section 1121 are intended to afford a debtor a meaningful opportunity to develop and confirm a consensual plan of reorganization. *See In re Ames Dep't Stores, Inc.*, 1991 U.S. Dist. LEXIS 17074, at *8, 1991 WL 259036, at *3 (S.D.N.Y. Nov. 25, 1991) ("The purpose of the Bankruptcy Code's exclusivity period is to allow the debtor flexibility to negotiate with its creditors."). The Bankruptcy Code does not define "cause" for an extension of the Exclusivity Period. However, the legislative history of section 1121(d) indicates that the initial 120-day period established by section 1121(b) merely represents a baseline from which bankruptcy courts are free to deviate, particularly in complex cases such as that of the Debtor:

> The court is given the power . . . to increase or reduce the 120-day period depending on the circumstances of the case. For example, if an unusually large company were to seek reorganization under chapter 11, the court would probably need to extend the time in order to allow the debtor to reach an agreement.

H.R. Rep. No. 95, 95th Cong., 1st Sess. 232 (1977).

Extensions of the Exclusive Periods are matters committed to the discretion of the Court. *First Am. Bank of New York v. Southwest Gloves & Safety Equip., Inc.*, 64 B.R. 963, 965 (D. Del. 1986). Courts have developed a list of several factors to consider in determining whether a debtor has had an adequate opportunity to negotiate a Chapter 11 plan and thus whether cause exists to extend the Exclusive Periods under Bankruptcy Code section 1121(d). Those factors

are:

    (a) the size and complexity of the case;

    (b) the necessity for sufficient time to permit the debtor to negotiate a plan of reorganization and prepare adequate information;

    (c) the existence of good faith progress toward reorganization;

    (d) the fact that the debtor is paying its bills as they become due;

    (e) whether the debtor has demonstrated reasonable prospects for filing a viable plan;

    (f) whether the debtor has made progress in negotiations with its creditors;

    (g) the amount of time which has elapsed in the case;

    (h) whether the debtor is seeking an extension of exclusivity in order to pressure creditors to submit to the debtor's reorganization demands; and

    (i) whether an unresolved contingency exists.

*In re Adelphia Communications Corp.*, 352 B.R. 578, 587 (Bankr. S.D.N.Y. 2006).

Although a court need not find the existence of each and every one of these factors to justify an extension of the Exclusive Periods, taken as a whole, these factors favor granting the Debtor its requested extension of the Exclusive Periods.

**B.    Cause Exists to Extend the Exclusive Periods**

As discussed in more detail below, the factors cited above support granting the Debtor's request for a six-month extension of the Exclusive Periods.

*Factor 1: Size and Complexity of the Case*

In order to move forward with a plan of reorganization, certain complex issues must first be resolved. The Debtor is not in a position to formulate a plan of reorganization because the bar date for Survivor claims has not been established or passed. As such, the Debtor cannot reasonably estimate the number and dollar amounts of claims against its estate and the available insurance coverage for such claims. Moreover, until the amount of claims and available insurance coverage is at least generally known, the Debtor contends that limited estate resources should not be consumed with extensive discovery and litigation and the interests of all parties are served by progressing toward a global mediation process. Consequently, this factor supports

granting the requested extension.

*Factors 2; 3; 5 and 6: Time to Permit the Debtor to Negotiate a Plan of Reorganization; Good Faith Progress Toward Reorganization; Prospects of Filing a Viable Plan; Progress in the Debtor's Negotiations with Creditors*

In each diocesan bankruptcy where a plan of reorganization has been confirmed, the plan confirmed by the bankruptcy court was a pot plan negotiated among the interested parties in the case which settled disputes over insurance coverage, property of the bankruptcy estate, and estimated claims of survivors. The Debtor intends to propose a similar type of pot plan. The process generally takes over a year. Key to the achievement of this goal is progress toward a process to resolve the amount and nature of claims, and available insurance coverage.

Since the inception of this case, the Debtor has steadily progressed in good faith towards reorganization. For instance, the Debtor has (i) filed its schedules of assets and liabilities and statement of financial affairs, (ii) filed a motion to approve claims procedures and a deadline for filing claims, (iii) filed numerous motions to allow the Debtor to comply with its postpetition obligations as a Debtor-in-Possession, and (iv) has actively worked with the parties in the case to lay the groundwork for plan negotiations. The Debtor is also working on producing documents in response to informal discovery requests from the Committee.

The Debtor is seeking an extension of the Exclusive Periods to focus on resolving key issues that will make formulating a plan of reorganization possible, while continuing to maintain an open dialogue with its creditor constituencies. The good faith progress toward resolving the issues that need to be resolved before a plan can be proposed and prospects of a viable plan support granting the requested extension.

*Factor 4: Payment of Obligations as They Become Due*

Since the Petition Date, the Debtor has been paying its debts as they have come due. This practice will continue, and thus, the requested extension of the Exclusive Periods will not prejudice the interests of creditors. This factor also favors approval of the requested extension.

*Factor 7: Amount of Time that Has Elapsed in the Case*

This request for an extension of the Exclusive Periods comes less than three months after the commencement of this bankruptcy case. During this period, the Debtor has worked with the

Committee and insurers on a comprehensive procedure for setting and noticing the claims bar date for Survivor claims, which has not yet been approved by the Court. The relatively short period of time from the Petition Date to this request favors an extension of the Exclusive Periods.

*Factor 8*: *No Pressure on Creditors*

This is not a case in which the Debtor is seeking to extend the Exclusive Periods in order to maintain leverage over a group of creditors whose interests are being harmed by the Chapter 11 case. To the contrary, as described above, the Debtor has been diligently working to resolve critical issues in this case for the benefit of its creditors as a whole, and to lay the groundwork for an anticipated global mediation process. The Debtor is not seeking an extension of the Exclusive Periods in order to pressure creditors to acquiesce to its reorganization demands and, therefore, this factor also supports the extension.

*Factor 9*: *Unresolved Contingency*

The composition of the Debtor's proposed plan will be based in significant part on addressing the Survivor claims, and the amount and nature of the claims will not be known until a claims bar date is established and passes, as well as investigation of available insurance coverage and property of the estate issues. This factor also favors the requested extension.

Similar motions have been approved in other diocesan bankruptcy cases across the country. See, e.g., Order Further Extending Its Exclusive Periods to File a Chapter 11 Plan and Solicit Acceptances Thereto Pursuant to Section 1121(d) of the Bankruptcy Code, *In re Roman Catholic Diocese of Harrisburg*, No 20-00599 (Bankr. Middle Dist. Penn. July 20, 2021) (Docket No. 665) (Fourth Extension of Exclusivity Period, granted in increments of approximately 6 months, 3 months, 3 months, and 37 days, respectively; Order Further Extending Exclusive Periods for the Filing and Solicitation of Acceptance of a Chapter 11 Plan, *In re The Norwich Roman Catholic Diocesan Corporation*, No. 21-20687 (Bankruptcy District of Connecticut, November 15, 2021) (Dkt. No. 912) (Fifth Extension of Exclusivity Period); *In re Roman Catholic Church of the Diocese of Gallup, et al.*, Case No. 13-13676 (Bankr. D.N.M. Mar. 11, 2014) (Dkt. No. 200) (extending Exclusive Periods for additional 180 days)

(unopposed); *In re Archdiocese of Milwaukee*, Case No. 11-20059 (Bankr. E.D. Wis. May 18, 2011), (Dkt. No. 237) (extending Exclusive Periods for additional 180 days) (unopposed); *In re Catholic Diocese of Wilmington, Inc.*, Case No. 09-13560 (Bankr. D. Del. Mar. 1, 2010) (Dkt. No. 360) (extending Exclusive Periods for additional 165 days) (limited opposition to factual predicates in motion but not as to relief requested); *In re Catholic Bishop of Northern Alaska*, Case No. 08-00110 (Bankr. D. Alaska June 19, 2008) (Dkt. No. 213) (extending Exclusive Periods for additional 200 days) (per stipulation with the creditors' committee); *In re The Diocese of Davenport*, Case No. 06-02229 (Bankr. S.D. Iowa Mar. 16, 2007) (Dkt. No. 99) (extending Exclusive Periods for additional 189 days) (unopposed); *In re Roman Catholic Archbishop of Portland in Oregon*, Case No. 04-37154 (Bankr. D. Or. Oct. 28, 2004) (Dkt. No.497) (extending Exclusive Periods for additional 210 days) (unopposed).

## CONCLUSION

The requested extension should be granted because each of the factors indicates that cause exists for the requested six-month extension. The Motion is without prejudice to the Debtor's right to seek further extensions of the Exclusive Periods.

WHEREFORE, the Debtor respectfully requests that the Court enter its order:

1. Granting the Motion;

2. Extending the exclusive period for the Debtor to file a plan of reorganization to January 5, 2024;

3. Extending the exclusive period for the Debtor to solicit acceptances of such a plan to and including March 4, 2024; and

4. Granting such other and further relief as the Court deems just and proper under the circumstances.

Dated: June 2, 2023

        FELDERSTEIN FITZGERALD
        WILLOUGHBY PASCUZZI & RIOS LLP

        By */s/ Paul J. Pascuzzi*
        PAUL J. PASCUZZI
        Attorneys for Debtor and Debtor in Possession
        The Roman Catholic Bishop of Santa Rosa

# EXHIBIT A

PAUL J. PASCUZZI, State Bar No. 148810
JASON E. RIOS, State Bar No. 190086
THOMAS R. PHINNEY, State Bar No. 159435
FELDERSTEIN FITZGERALD
WILLOUGHBY PASCUZZI & RIOS LLP
500 Capitol Mall, Suite 2250
Sacramento, CA 95814
Telephone: (916) 329-7400
Facsimile: (916) 329-7435
ppascuzzi@ffwplaw.com
jrios@ffwplaw.com
tphinney@ffwplaw.com

Attorneys for
The Roman Catholic Bishop of Santa Rosa

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SANTA ROSA DIVISION

In re:

THE ROMAN CATHOLIC BISHOP OF SANTA ROSA,

           Debtor In Possession.

Case No. 23-10113

Chapter 11

Date: June 30, 2023
Time: 11:00 a.m.
Location: 1300 Clay Street, Ctrm. 215
Oakland, CA 94612
[In person or via Zoom]
Judge: Hon. Charles Novack

**ORDER GRANTING DEBTOR'S MOTION
TO EXTEND EXCLUSIVITY PERIODS
[11 U.S.C. § 1121(d)]**

Having considered the motion ("Motion") filed by The Roman Catholic Bishop of Santa Rosa, the debtor and debtor in possession (the "RCBSR" or the "Debtor") for entry of an order extending the exclusive period of time during which only the Debtor may file a plan of reorganization and the exclusive period of time to solicit acceptances thereof, and good cause appearing therefor;

IT IS ORDERED:

1.     The motion is granted.

2. The exclusive period for the Debtor to file a plan of reorganization is extended to January 5, 2024;

3. The exclusive period for the Debtor to solicit acceptances of such a plan is extended to March 4, 2024;

4. The Motion is without prejudice to the Debtor's right pursuant to 11 U.S.C. § 1121(d) to seek a further increase of the exclusive periods.

APPROVED AS TO FORM.

STINSON, LLP

_____
ROBERT T. KUGLER
Attorneys for the Official Committee
of Unsecured Creditors

OFFICE OF THE UNITED STATES TRUSTEE

By: _____
     Jason Blumberg

***END OF ORDER***